UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NICOMEDES TUBAR, III,<br><br>Plaintiff,<br><br>v.<br><br>JASON CLIFT; and THE CITY OF KENT, WASHINGTON, a municipal corporation,<br><br>Defendants. | CASE NO. C05-1154JCC<br><br>ORDER |

This matter comes before the Court on (1) Defendants' motion to stay certain discovery (Dkt. No. 10) ("Defs.' Mot."), Plaintiff's Response thereto (Dkt. No. 12) ("Pl.'s Opp'n"), and Defendants' Reply (Dkt. No. 13) ("Defs.' Reply"); and (2) Defendants' Motion to Quash Plaintiff's Subpoena Duces Tecum (Dkt. No. 16) ("Defs.' Mot. to Quash"), Plaintiff's Response thereto (Dkt. No. 23) ("Pl.'s Quash Opp'n"), and Defendants' Reply (Dkt. No. 25) ("Defs.' Quash Reply"). The Court, having carefully considered all of the papers submitted and determined that oral argument is not necessary, hereby GRANTS IN PART and DENIES IN PART the motions as follows.

I.    BACKGROUND

On June 25, 2003, Defendant Jason Clift ("Clift"), a City of Kent Police Officer, discovered a stolen vehicle in the parking lot of Plaintiff's apartment building. (Pl.'s Opp'n 3.) Clift placed a "rat

ORDER – 1

trap"[1] under one of the tires of the stolen vehicle and hid in several bushes near the exit of the parking lot to await the driver's return. (*Id.* at 3.) Approximately 30 to 60 minutes later, Defendant Clift observed Plaintiff, along with driver Heather Morehouse, exit the apartment building and enter the stolen vehicle. (Defs.' Mot. 2.) As Ms. Morehouse began backing the vehicle out of the parking spot, the rat trap punctured the vehicle's tires, and Clift emerged from the bushes with his flashlight and gun and announced that he was a police officer. (*Id.*) Ms. Morehouse continued to steer towards the exit of the parking lot.[2] (Pl.'s Opp'n 4.) As the car approached the parking lot exit, Clift fired his weapon at the vehicle three times. (Defs.' Mot. 2.) The first two bullets entered the hood and front windshield of the vehicle. (*Id.*) Clift's third shot came as the vehicle was passing him. (*Id.*) The third bullet entered through the driver's side window and struck Plaintiff in the upper left shoulder area.[3] (*Id.*)

Plaintiff filed the current action on June 24, 2005 against Officer Clift in his individual capacity and the City of Kent ("City") for damages arising from an alleged violation of his civil rights under 42 U.S.C. § 1983, along with pendent common law claims for negligent hiring, training, supervision, and retention. (Compl. (Dkt. No. 1) ¶ 5.2.) In his Answer, Defendant Clift pled qualified immunity as an affirmative defense. (Defs.' Answer (Dkt. No. 9) ¶ 9 (Affirmative Defenses).) Defendants jointly now seek to stay the following categories of discovery: (1) discovery requests propounded to Defendant Clift;

---

[1] According to the parties, a rat trap is a device used to deflate tires. (Pl.'s Opp'n 3 n.1.)

[2] The parties' versions of the events leading up to the shooting generally are consistent with one another up until this point. Plaintiff alleges that Ms. Morehouse backed the vehicle out of the parking spot, that she slowly drove towards the exit, and that Plaintiff believed that Clift was directing them out of the lot (Pl.'s Opp'n 5), while Defendant Clift alleges that Ms. Morehouse "decided to run," performed a "right u-turn maneuver," and began to accelerate. (Defs.' Mot. 2.) Clift further alleges that rather than veering around him, Ms. Morehouse purposefully positioned the car "as if to run [Defendant Clift] over." (*Id.*)

[3] The parties also appear to dispute the timing of the shooting event. Defendant Clift alleges that he believed that he was in immediate peril and that "all bullets were fired within seconds" (Defs.' Mot. 2), whereas Plaintiff alleges that there was a pause between the second and third shots and that Defendant "took careful aim and fired his third shot as the car drove safely past him." (Pl.'s Opp'n 5.)

ORDER – 2

(2) Defendant Clift's deposition; and (3) discovery requests directed to the City of Kent seeking personal information concerning Defendant Clift.[4] (Defs.' Mot. 3.) Defendants have also filed a motion to quash Plaintiff's Subpoena Duces Tecum ("Subpoena") that seeks "personnel records" in the possession of Todd Maybrown, the criminal defense attorney who represented Ms. Morehouse in a separate criminal proceeding for assault on Clift. Defendants argue that many of these personnel records are subject to a state-court protective order, which Mr. Maybrown should not be ordered to violate.

## II.   ANALYSIS

The discovery issues presented here necessarily implicate qualified immunity law. Government officials are entitled to qualified immunity from liability for civil damages under § 1983 when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of . . . whether the conduct of which the plaintiff complains violated clearly established law." *Siegert v. Gilley*, 500 U.S. 226, 223 (1991) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The defense of qualified immunity is based on the recognition that "permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). To lessen the potentially burdensome effects of litigation, the U.S. Supreme Court has characterized the applicability of a qualified immunity defense as a threshold matter that a court should resolve before permitting the full range of discovery. *Harlow*, 457 U.S. at 818.

The seemingly broad prohibition on discovery announced in *Harlow* has not gone unqualified,

---

[4] Defendants have identified twelve specific requests for written discovery and documents. These requests generally seek background information on Clift, including results from psychological examinations, disciplinary and training records, and documents relating to internal investigations conducted by the City regarding Clift's previous shooting incidents. (Defs.' Mot. 3–4.)

ORDER – 3

however. First, qualified immunity is available only to individual government officials, not governmental entities. *Owen v. City of Independence*, 445 U.S. 622, 638 (1980) ("[T]here is no tradition of immunity for municipal corporations."). Second, where there is a dispute as to both the reasonableness of the official's actions and the factual characterization of those actions, the U.S. Supreme Court has acknowledged that a plaintiff may be permitted to carry out a limited amount of discovery "tailored specifically to the question of [an official's] qualified immunity." *Anderson*, 483 U.S. at 646 n.6; *see also Brown v. Li*, 308 F.3d 939, 946 (9th Cir. 2002) (where district court permitted plaintiff to conduct limited discovery); *Whisman v. Rinehart*, 119 F.3d 1303, 1308 (8th Cir. 1997) ("Qualified immunity is usually raised by a motion for summary judgment after a limited amount of discovery has been conducted."). In effect, the defense of qualified immunity only protects government officials from "broad-reaching" discovery. *See Crawford-El v. Britton*, 523 U.S. 574, 588 (1998).

### A. Discovery as to Defendant Clift Individually

With respect to the first and second categories of discovery requests that Defendants seek to stay, the Court finds that Defendant Clift is entitled to protection against discovery requests propounded to him personally. However, because there appears to be a factual dispute as to the underlying events in this case, Defendant Clift should be required to answer any discovery seeking information relating to the actual events giving rise to his qualified immunity defense. Therefore, Clift individually is required to provide responses to requests for written discovery and documents if those requests specifically relate to the parties' factual disputes concerning the shooting incident at issue in the present case. Further, Defendant Clift *may* be deposed, but the scope of the deposition must be strictly limited to questioning regarding the events giving rise to his qualified immunity defense. Any discovery that is outside this limited inquiry will be stayed.

### B. Discovery as to Defendant City

The Court must undertake a more detailed analysis with respect to the written discovery requests propounded to Defendant City. At the outset, the Court notes that Defendants' motion to stay has been

ORDER – 4

filed on behalf of both Officer Clift and the City.  However, Defendant City is not permitted to assert a defense of qualified immunity and is accordingly not entitled to a stay of discovery on the written discovery enumerated in the motion, even if such requests seek personal information concerning Defendant Clift, as discussed *infra* section II.C.  Although the Court is mindful of the various policy justifications for the *Harlow* rule, the Court does not read *Harlow* so broadly as to necessarily prohibit any and all discovery *relating* to a government official asserting a defense of qualified immunity.  In any event, as set forth *supra* section II.A, Defendant Clift will be protected from the costs and burdens of overreaching discovery directed to him—an outcome that does respond to the policy concerns described in *Harlow*.  457 U.S. at 817 n.29 (noting that lawsuits against government officials often involve discovery that is wide-ranging, time-consuming, and involves considerable cost).  Accordingly, a stay on Plaintiff's written discovery requests to Defendant City merely because the information concerns Defendant Clift would exceed the proper reach of a stay justified by Defendant Clift's assertion of qualified immunity in this case.

Defendant City argues, however, that certain items of discovery directed to it can only be answered by Defendant Clift and that the mere fact that Plaintiff has directed discovery to the City in name only should not undermine Defendant Clift's protection from discovery in this matter.  (Defs.' Mot., Thorsrud Decl. ¶ 10.)  This argument has merit, because allowing such conduct would circumvent the policy underlying *Harlow*.  Accordingly, the Court finds that Defendant City is required to answer Plaintiff's requests for written discovery.  However, in keeping with the protection from discovery of Defendant Clift himself, the Court makes the following exception to the City's requirement to answer discovery.  To the extent that an answer to any of Plaintiff's requests (1) legitimately would require Defendant Clift's personal knowledge or consultation of documents exclusively under his control, *and* (2) bears upon matters *beyond* an inquiry into the actual events giving rise to the qualified immunity defense, Defendant City need not include that information in its responses.  However, as to requests that *do* bear upon the actual events giving rise to the qualified immunity defense, Defendant City must provide

ORDER – 5

answers, *even if* such answers require consulting Defendant Clift, because Defendant Clift is not protected from such discovery. Further, in the event that Defendant Clift's qualified immunity defense is denied, Defendant City will be required to supplement its responses in accordance with the discovery rules.

The limited stay on discovery ordered here is not an invitation for Defendants to avoid legitimate discovery requests by trumpeting Defendant Clift's qualified immunity defense. Accordingly, Defendants are advised to review written discovery responses to ensure that they are consistent with the dictates of Federal Rules of Civil Procedure 26(g) and 37(g).

### C. Defendant Clift's Privacy Interest

The Court also will address briefly the point raised in Defendants' motion that the information Plaintiff seeks is protected from discovery because the information is personal in nature, rather than being general information about the incident at issue.[5] (Defs.' Mot. 3.) This discussion proceeds on the premise that the scope of discovery in federal court is very broad. Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1). While the rules do permit parties to be excused from certain discovery on the basis of "annoyance, embarrassment, oppression, or undue burden or expense," there is no generic "privacy" privilege. FED. R. CIV. P. 26(c).

The Court finds that Plaintiff's requests for written discovery meet the liberal standard of discoverability. Documents detailing Defendant Clift's prior employment history, training record, disciplinary proceedings and complaints filed against him are not of such a highly personal or sensitive nature as to merit precluding the discovery sought by Plaintiff on the basis of embarrassment or oppression. The same is true regarding documents concerning internal investigations or corrective action taken by the City with respect to Clift. Although the discovery requests with respect to psychological

---

[5] Neither party included any authority or substantive analysis with respect to this argument in the briefings.

ORDER – 6

examinations may merit more protection in some circumstances, in light of Defendant Clift's apparent history of shootings, the frequency of those shootings, and the ultimate importance of an evaluation of the City's response to these shootings for purposes of Plaintiff's negligence claim against the City, the Court finds that this information may lead to the discovery of relevant, admissible evidence concerning the circumstances of the shooting in the present case. *See Scott v. Edinburg*, 101 F. Supp. 2d 1017, 1022 (N.D. Ill. 2000) (permitting discovery of documents concerning officer's psychological evaluation). The parties are free to stipulate to a protective order regarding any confidential information contained in these documents.

### D. Defendants' Motion to Quash Subpoena Duces Tecum

The only issue for the Court to resolve regarding Plaintiff's Subpoena is whether any personnel files in Mr. Maybrown's possession encompassed within a state-court protective order can be subpoenaed. (Defs.' Quash Reply 2.) The Court finds that to the extent Plaintiff's Subpoena will require Mr. Maybrown to disclose information released under a state-court protective order, the Subpoena must be quashed pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iv). Rule 45(c)(3)(A)(iv) permits a court to quash a Subpoena if "[the Subpoena] subjects a person to undue burden." FED. R. CIV. P. 45(c)(3)(A)(iv). The protective order issued by Judge Cayce specifically prohibits Mr. Maybrown from disclosing internal affairs files "without leave of [the] Court, to any person other than an agent of the attorney." (Defs.' Mot. to Quash, McConaughy Decl. Ex. 2 ¶ 1.) Thus, to the extent Plaintiff's Subpoena seeks information encompassed within the protective order, the Court finds that compliance with Plaintiff's Subpoena would subject Mr. Maybrown to the undue burden of violating a state-court protective order. Accordingly, Plaintiff is not entitled to information that would require disclosure of information protected by the state-protective order; however, information not within the purview of the state-court order that meets the conditions described *supra* in section II.B is discoverable from Mr. Maybrown.

ORDER – 7

### III. CONCLUSION

For the reasons set forth in this Order, Defendants' motion to stay certain discovery is hereby GRANTED IN PART and DENIED IN PART, and Defendants' motion to quash is GRANTED IN PART as follows:

(1) All written discovery directed to Defendant Clift individually is hereby STAYED, pending resolution of the qualified immunity issue, EXCEPT to the extent that discovery seeks information relating to the disputed factual issues regarding the actual events giving rise to his qualified immunity defense;

(2) Defendant Clift may be deposed, provided that the scope of the deposition is strictly limited to questions regarding the actual events giving rise to his qualified immunity defense;

(3) Defendant City is hereby ORDERED to respond to Plaintiff's written discovery requests, but any answers that go beyond the facts underlying his qualified immunity defense *and* require Defendant Clift's personal knowledge or production of documents exclusively within his control are STAYED, pending resolution of the qualified immunity issue;

(4) Plaintiff's Subpoena is hereby QUASHED to the extent that it requires Mr. Maybrown to disclose information encompassed within the state-court protective order.

SO ORDERED this 2nd day of March, 2006.

John C. Coughenour
United States District Judge

ORDER – 8