HON. JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NICOMEDES TUBAR, III,

                Plaintiff,

v.

JASON CLIFT; and THE CITY OF KENT, WASHINGTON, a municipal corporation,

                Defendants.

No. C05-1154 JCC

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OPPOSING MOTION FOR PARTIAL SUMMARY JUDGMENT

Noted for: June 30, 2006

      The Court has renoted the defense Motion for Partial Summary Judgment (DMPSJ) (Dkt. 30), to permit counsel for plaintiff Nico Tubar to obtain and submit additional evidence relevant to the issues it raises. Minute Order, Dkt. 68. Although plaintiff's counsel have endeavored to complete the discovery and investigation necessary to obtain all such evidence in the time alloted, some more remains to be done. *See* Declaration of C. Josh Alex ("Alex Supp. SJ Dec.") filed herewith (Dkt. #78). However, the evidence plaintiff has obtained to date overwhelmingly refutes defendant Jason Clift's version of the events surrounding the shooting and the defense summary judgment arguments that rest on it.

      This evidence is contained and described in the declarations and exhibits that are being filed with this memorandum. It is much too extensive to recount in detail here. This memorandum will merely describe and summarize the basic points it supports.

PL'S SUPPL. MEM. OPP. PART. S.J.- 1
USDC WDW No.C05-1154 JCC

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

1. *The physical evidence contradicts the defendants' version of the shooting.*

The defendants' legal and factual arguments are all based on Jason Clift's statement that he shot the plaintiff and Heather Morehouse in self defense after the car swerved off its original path toward the parking lot exit and came straight at him at 15-20 mph, in an apparent effort to hit him. See DMPSJ (Dkt. 30) at 3. Nico Tubar and Heather Morehouse have testified that never happened, that they simply were driving at ordinary speed toward the exit when they were shot. Morehouse Dec. (Dkt. #35) at ¶ 5; Tubar Dep. (Dkt. 43 Ex. 1) at 17:21-18:1.

The evidence obtained since plaintiff submitted his summary judgment opposition—primarily, the Total Station data gathered by the Auburn police investigators—shows that what Officer Clift says happened did not happen. Specifically, the Kia never swerved and never came "straight at" Officer Clift See Third Declaration and Report of Dr. A. Abrous (Dkt. 72) ["3d Abrous Dec."] at ¶ 3a (p. 2) and Rpt. at 8.[1] The alleged "swerve" mark on the scene diagram submitted by the defendants and relied on by their investigators and experts does not actually reflect the Total Station data, but instead is made by 33 data points which were added to the Total Station data by someone after the fact. Id. at Rpt. at 8. The six data points actually plotted during the Total Station investigation plots a smooth curve with no swerve (id. at Report 8-9), as described by Mr. Tubar and Ms. Morehouse and drawn by Auburn Det. Randy Clark, who himself saw the mark in the pavement. See Clark drawing, Alex Supp. SJ Dec. Ex. 2.

This same data shows that the Kia never curved away from the parking lot exit and came "straight at" Officer Clift, as he claims it did. The defendants' own expert calculates that Officer Clift was positioned directly between the Kia and the exit when he fired the first shot. See 3d

---

[1] For clarity, page references in Dr. Abrous' Third Declaration and Report refer to the page of the document as filed and, where appropriate, also to the page of the report ("Rpt.").

PL'S SUPPL. MEM. OPP. PART. S.J.- 2
USDC WDW No. C05-1154 JCC

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

1   Abrous Dec. at Rpt. 11-12). The defendants have now said Officer Clift fired the first shot from

2   four different places.[2] All of those lie right between the defendants' location of the Kia and the

3   exit, but one. The one is Officer Clift's "Point Y", which no one now accepts because it

4   contradicts the physical evidence. Plaintiff's evidence indicates Officer Clift was actually east of

5   the exit and the car was turning away from him toward it. 3d Abrous Dec. at 2 and Rpt. at 10-12

6       Moreover, the Total Station data show that the Kia never at any point went "straight at"

7   Officer Clift or anything else, but was curving the whole time; and it certainly never turned to the

8   left, as it would have to do if it were true (as Clift says) that he was moving to the right as the

9   Kia was doing this. 3d Abrous Dec. at 3 and Rpt. 10. The Total Station data also show that the

10  Kia was pointed at Officer Clift, if at all, for less time than it took him to tell the dispatcher it

11  was doing that—so that by the time he finished his radio call and before he fired the first shot the

12  Kia had already turned away from him. Id. at Rpt. p. 10.

13      In addition to that, the physical evidence—and plaintiff's own testimony, made possible

14  by the ability to recreate the event using the Total Station data—show that even at the time of the

15  first shot the Kia was moving much slower than the 20 mph or more claimed by the defendants.

16  3d Abrous Dec. at 2 and Rpt. 4; Tubar Dec. (Dkt. #74); Talbott Dec. (Dkt. # 73) ¶ 8. At the time

17  of the last shot—the shot from the drivers' side that hit Nico Tubar—the Total Station data show

18  the Kia was barely moving, going less than 6mph and visibly decelerating. 3d Abrous Dec. at 3

19  and Rpt. 5. In deposition, Officer Clift himself admitted this. Clift Dep. at 154:3-16; 155:6-11.

20

21

---

[2] Officer Clift first told Det Clark that he shot from a point identified as point Y on a drawing he made at the time. See Clift Dep. (Alex. Supp. SJ Dec. Ex. 3) Dep Ex. 3 at 14 and Dep. Ex. 7. In deposition, Officer Clift testified to a different place, point "S". See id. at 68:21-69:4; 96:19-24. The drawing made by Det. Clark and submitted by defendants (Dkt 33, Ex. 2) puts him at a different place. And defendants' expert John Hunter puts him at a fourth location. Hunter Rpt.(Alex Supp. SJ Dec. Ex. 8) at 3.

PL'S SUPPL. MEM. OPP. PART. S.J.- 3
USDC WDW No.C05-1154 JCC

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

1 At the time of this third shot, all the evidence shows Officer Clift was well to the east of the car, completely out of danger. 3d Abrous Dec. at p. 3, Rpt. at 12.

The Total Station data also indicate that, contrary to what he has sworn, at the time of the third shot Officer Clift was moving south, in the same direction of the car, following alongside as it came to a stop. Id. at 3 and Rpt. 7, 12. This corroborates what Heather Morehouse says (see Dkt. #35 ¶ 4) and contradicts the claim that Officer Clift was in danger and was not shooting to stop the vehicle or its occupants. It also shows that Officer Clift had ample time between the first and last shot to walk alongside the Kia, adjust his aim and fire—2.15 to 2.94 seconds. 3d Abrous Dec. at 3 and Rpt. 7, 12. Officer Clift was not in danger but had time to choose to fire or not fire, even according to the defense expert's alleged reaction time data. See Van Blaricom Supp. Dec. (Dkt. 77); Fountain Rpt. (Alex. Supp. SJ Dec. Ex. 9) at 27.

The evidence now available demolishes the defense claim that Officer Clift did not shoot the car in order to stop it.[3] Officer Clift admitted in deposition that throughout the incident—up to and possibly including the moments he was firing the shots—he was yelling "stop, police." Clift Dep. (Alex Supp. SJ Dec. Ex. 3) at 42:12-43:10. In deposition he said he waited for the persons to return to the car (rather than calling for an impound) in order to apprehend them. Id. at 104:6-18. He also said that is also why he approached the car, why he said "stop, police," and why he moved toward the parking lot exit when the car started moving. Id. at 42:12-43:10;

---

[3] Officer Clift's deposition testimony also undermined the defendants' attempt to discount his statement in the Clark interview that he chose not to "step to the curb" because he was "doing [his] job trying to stop them." Defendants say this was a "reference to his intent in approaching the car from the rear." DRMPSJ (Dkt. 53) at 6. But in deposition, Officer Clift admitted that as he approached the car from the rear he was walking on a planting strip adjacent to the parking lot on the north, up on a curb. Clift Dep. (Alex Supp. SJ Dec. Ex. 3) at 76:7-19; 48:15-49:6. Officer Clift actually drew a diagram showing that same thing for Det. Clark. Id. at Clift Dep. Ex. 6. That diagram was not included in the copy of the Clark interview submitted in support of the summary judgment motion. See Clift Dec. (Dkt. 32) Ex. B. That means that when he was approaching the car Officer Clift was already on the curb, and thus could not have "stepped to" it. Clift Dep. 109:14-110:6. Thus, in deposition, Officer Clift changed this testimony again, this time admitting that his decision to "do[] [his] job" and "stop them" was made after the Kia started moving, when he moved toward the exit to head it off. Id. at 109:21-110:13.

PL'S SUPPL. MEM. OPP. PART. S.J.- 4
USDC WDW No.C05-1154 JCC

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

58:16-59:7; 69:19-21; 77:24-78:1; 93:15-22; 96:2-5; 104:19-21; 110:7-13; 116:18-19. He also told Det. Clark he fired the shots to get the car to stop. Id. at Clift Dep. Ex. 7 p. 11.

Officer Clift's objective actions evince this same intention. When the Kia started moving he moved to a point between the Kia and the only exit from the parking lot, where the Kia was apparently headed.[4] According even to the defense reconstruction, the Kia was headed toward the exit when Officer Clift fired the first shot. The Kia visibly turned away, but he shot again. He then followed alongside as the Kia it came to a stop and shot into it from the side a third time.

This evidence also inferentially refutes the "no seizure" argument because, as noted above, it confirms that Officer Clift was never in danger of being hit. See also Van Blaricom Supp. Dec. (Dkt. #77). It also indicates that when he fired the first shot Officer Clift was either standing directly in front of the exit (according to the defense reconstructionist) or east of the exit (according to plaintiff's reconstructionist), see 3d Abrous Dec. at 2 and Rpt. at 10-12 —so he cannot have seen the Kia swerve threateningly away from the exit and toward him, as he claims. And, as noted above, when Officer Clift fired the critical third shot into Nico Tubar's body,[5] the evidence shows and Officer Clift now admits Kia was decelerating and almost stopped.

The newly available evidence shows other significant things, as well. One is that it calls into question Officer Clift's reliability as an observer and reporter of events. As previously noted, at the time of this shooting Officer Clift had just returned from an administrative leave ordered because of concerns about his mental and emotional condition. Officer Clift's fellow Kent patrol officer, Jon Shipman, testified in deposition that at the time of these events because

---

[4] See 3d Abrous Dec. Rpt. at 11-12; Hunter Report (Alex. Supp. SJ Dec. Ex. 8) at 3. Officer Clift acknowledged moving in this direction in his original statements, but now in deposition he says he is unable to specify where he was at any given time. Clift Dep. (Alex. Supp. SJ Dec. Ex. 3) at 90:13-91:22.

[5] Auburn Det. Randy Clark admitted in deposition that he was wrong and plaintiff's expert Don Van Blaricom was right about the order in which the three shots were fired. Clark. Dep. (Alex. Supp. SJ Dec. Ex. 1) at 74:9-22. This further undercuts the defense theories.

PL'S SUPPL. MEM. OPP. PART. S.J.- 5
USDC WDW No.C05-1154 JCC

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

of a divorce, custody battle, and affair with another married woman, Officer Clift's "head was not in the game" to the point he was a danger to himself and others. Shipman Dep. (Alex. Supp. SJ Dec. Ex. 4) at 15:13-17:15; also 11:21-24; 19:17; 30:9; 64:19-21. In deposition, Officer Clift admitted for the first time that in the moments before the shooting – while he was hiding behind a tree north of the parking lot—he was having an intimate midnight personal phone conversation with his paramour, who was in a motel room in Eastern Washington. Clift Dep. at 29:4-24; 31:7-14; 151:3-24. He also now admits he misjudged distances at the scene by as much as 100% and he has given widely conflicting estimates of critical distances. See id. at 114:19-115:8; 137:2-25; 90:8-15; Dep. Ex. 3 at p. 5. He now claims not to know where he was or where the car was at any critical time. Id. at 53:14-54:5; 65:19-24; 73:23-24; 81:5-11; 82:8-10; 82:25-83:2; 90:13-91:22; 128:19-25; 133:15; 133:5-6. And as noted above, he has completely changed his testimony regarding where he was at the time the first shot was fired. Id. at 68:21-69:4; 64:18-65:4; 130:22-132:6; Dep. Ex. 7 at 14.

Discovery and investigation in the last weeks has also added to the evidence supporting plaintiff's claim that this shooting predictably resulted from Kent's municipal policies and gross lack of proper supervision. See Reiter Dec.(Dkt. #75); Van Blaricom Supp Dec. (Dkt. #77 ). Further discovery and investigation will surely add more on all these points. But it is already clear that the most basic material facts are disputed here so summary judgment must be denied.

DATED this 22 day of June, 2006.

Respectfully submitted,

MacDONALD HOAGUE & BAYLESS
By **Timothy K. Ford**
   Timothy K. Ford, WSBA #5986
   Cristóbal Joshua Alex, WSBA #31993
Attorneys for Plaintiff

PL'S SUPPL. MEM. OPP. PART. S.J.- 6
USDC WDW No.C05-1154 JCC

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

## CERTIFICATE OF SERVICE

I hereby certify that on the 22d day of June, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to:

| | |
|---|---|
| Steven L. Thorsrud | sthorsrud@kbmlawyers.com |
| Mary Ann McConaughy | mmcconaughy@kbmlawyers.com |

**Rebecca Talbott**
Rebecca Talbott
Legal Assistant

PL'S SUPPL. MEM. OPP. PART. S.J.- 7
USDC WDW No. C05-1154 JCC

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961