THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NICOMEDES TUBAR, III,<br><br>                    Plaintiff,<br><br>         v.<br><br>JASON CLIFT; and THE CITY OF KENT, WASHINGTON, a municipal corporation,<br><br>                    Defendants. | No.  C05-1154JCC<br><br>DEFENDANT CITY OF KENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON CIVIL RIGHTS MUNICIPAL LIABILITY CLAIMS<br><br>**NOTED ON MOTION CALENDAR: FRIDAY, SEPTEMBER 22, 2006** |

## I.   RELIEF REQUESTED

This is defendant City of Kent's motion for partial summary judgment on plaintiff Tubar's §1983 municipal liability claims.  Plaintiff cannot meet the substantial burden of proof required in a civil rights municipal liability claim: showing that the City of Kent has an unconstitutional policy or custom manifesting deliberate indifference that caused defendant Officer Jason Clift to violate plaintiff's civil rights.  Thus, plaintiff's civil rights municipal liability claim should be dismissed.

## II.   FACTUAL SUMMARY AND PROCEEDING HISTORY

This is a §1983 civil rights lawsuit arising from a shooting on June 26, 2003, when Officer Clift fired shots at a stolen vehicle driven directly at him by Heather Morehouse. Mr. Morehouse subsequently pleaded guilty to assaulting defendant Clift.  Plaintiff Tubar, a passenger in the vehicle, was injured in the shooting.

Officer Clift's motion for dismissal of §1983 claims is currently pending before the Court (Dkt. 30).  If the Court agrees with Officer Clift's position that firing shots did not

KENT'S MTN FOR PARTIAL SUMMARY JUDGMENT - 1
Cause No. C05-1154
U:\CLinder\slt\wcia03107\p-081606-mtn part summ jdgmt.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

violate plaintiff Tubar's civil rights, the Court need not address the municipal liability issues. If, after consideration of Officer Clift's motion, the Court concludes that Officer Clift's shooting decision could be deemed a violation of civil rights, the Court must then address municipal liability issues raised in this motion.

### III. STATEMENT OF FACTS

The facts of the underlying shooting incident were thoroughly recounted in Defendants' Motion For Partial Summary Judgment (Dkt. 30). In order to proceed on a §1983 municipal liability theory against the City, plaintiff Tubar must show that (1) Officer Clift violated his civil rights; (2) the City had custom or policy manifesting "deliberate indifference" and (3) such policy or custom was the moving force behind the violation. *Gibson v. Washoe Cty.*, 290 F.3d 1175, 1185 (9th Cir. 2000).

**A.   Plaintiff Cannot Carry The Heavy Burden Of Proof Needed To Move Forward On A Municipal Liability Theory.**

Plaintiff Tubar's complaint alleges that the City failed to take disciplinary or corrective action toward Officer Clift despite "numerous shooting incidents and complaints against him" and that the City's inaction "was the proximate and foreseeable result of the policies, customs, and usages of the City of Kent and its police department." Plaintiff alleges violation of Fourth and Fourteen Amendment rights. *See,* Complaint, ¶¶ 3.5 – 3.8 and 5.1.

Defendant does not know exactly how plaintiff believes he can prove municipal liability given the difficult factual and legal hurdles he must overcome. Defendants have previously submitted the Declaration of William T. Curtright (Dkt. 83) covering numerous issues and arguments raised touching on municipal liability in earlier briefing. However, it appears that plaintiff's argument may be twofold: (1) some City act or omission relating to prior shooting incidents involving Officer Clift manifests deliberate indifference and/or (2) the department was deliberately indifferent by not forcing Officer Clift to obtain counseling following prior incidents and concerns raised by fellow officers. He must persuade the

KENT'S MTN FOR PARTIAL SUMMARY JUDGMENT - 2
Cause No. C05-1154
U:\CLinder\slt\wcia03107\p-081606-mtn part summ jdgmt.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423

Court that the City's actions or omissions can be fairly considered to be policy or custom *and* were the moving force behind Clift's unconstitutional conduct. These arguments cannot withstand summary judgment.

**B.    Officer Clift's History With The Department Reflects That He Is Well Qualified And Has Performed His Job Duties Admirably.**

The declaration of Interim Chief Charles E. Miller describes Miller's review of Officer Clift's personnel history. Clift met all the application criteria for the department, and successfully completed physical agility testing, a background check, lie detector testing, and a psychological evaluation. He also received very good recommendations from a prior law enforcement employer and supervisors during his military experience. Officer Clift successfully completed all required training receiving excellent evaluations from his field-training officers. He has consistently received good performance evaluations since assuming his full duties as a patrol officer.

Despite plaintiff's allegations, there are few "complaints" involving Officer Clift. He received a citizen complaint relating to his driving, and he was disciplined for damaging a department vehicle in an accident deemed "preventable" by investigators. There was one claim of excessive force against the officer and his sergeant when they responded to a 911 hang up call. A woman in the residence refused to comply with commands to open the door for the officers' welfare check. After repeated efforts to get her to open the door, the officers broke it down. The woman, who appeared to be heavily intoxicated, claimed she was physically assaulted. She gave conflicting accounts, and a neighbor contradicted her version of events. Officer Clift and his sergeant were exonerated.

**C.    Shooting Incidents Involving Officer Clift Prior To Events Of This Lawsuit, Were Well Justified.**

Defendants expect plaintiff to focus heavily on Clift's two prior shootings. Defense expert William Curtright has personally reported that both incidents were properly investigated, and the shootings were justified (Dkt. 83). Defendant provided a description

KENT'S MTN FOR PARTIAL SUMMARY JUDGMENT - 3
Cause No. C05-1154
U:\CLinder\slt\wcia03107\p-081606-mtn part summ jdgmt.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423

of a November 2000 shooting incident involving Officer Clift. *See, Declaration of Bruce Weissich* (Dkt. 57). The suspect, Guadalupe Martinez, was initially contacted by police officers but left the scene of the contact almost hitting a police officer. Ms. Martinez was involved in a seventeen-minute pursuit with police officers and was reported to be driving "in excess of 70 mph at times." She drove on the wrong side of the road, onto the shoulder, swerved to avoid police spike strips, and attempted to ram officers driving close to her vehicle.

She was eventually stopped in heavy traffic while trying to pass vehicles on the shoulder. Her vehicle was pinned between two police vehicles, including a vehicle driven by Officer Clift. Nine people, including many citizens stopped in traffic nearby, were reported to have given "non-conflicting statements" regarding the shooting. Ms. Martinez refused to get out of her vehicle. Officers approached on either side attempting to gain entry to the vehicle and demanding that the driver get out. At the time, Martinez was rocking the vehicle back and forth using forward and reverse gears evidently attempting to push or ram police vehicles and get away.

Ms. Martinez suddenly opened a door and witnesses reported that she pointed a "large black semi-automatic handgun at Officer Clift and civilians caught up in traffic immediately behind the incident." Witnesses "heard officers order her to drop the gun. Instead, she aimed it directly at people." Both Clift and another Kent officer simultaneously fired their weapons, and Ms. Martinez was killed. Subsequently, investigators learned that Ms. Martinez had expressed a desire to die and that she was depressed by the death of a twin sister who shot herself when Idaho State Patrol officers attempted to stop her vehicle. The gun she displayed was a pellet gun; nevertheless, witnesses uniformly reported that it appeared to be an actual weapon at the time it was pointed at Clift. Investigators also found an empty bottle of vodka on the floorboard. All details described here are set forth in Exhibit A to Bruce Weissich's declaration (Dkt. 57).

KENT'S MTN FOR PARTIAL SUMMARY JUDGMENT - 4
Cause No. C05-1154
U:\CLinder\slt\wcia03107\p-081606-mtn part summ jdgmt.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423

The second shooting involving Officer Clift occurred on May 3, 2002 following a high-speed chase.  The following details are contained in Exhibit B of Weissich's declaration, *id*.  Des Moines police officers had stopped a vehicle associated with a felony warrant, and confirmed that the suspect inside was the subject of the warrant.  Despite the presence of four police officers attempting to take the suspect into custody, he managed to struggle with the officers, escape, return to his vehicle, and speed away.  As he was speeding away, one of the officers was still struggling with the suspect and pinned to the vehicle for a short time until he was able to break free and tumble to the ground.

The suspect led police on an erratic high-speed chase on I-5 and into the City of Federal Way.  Pursuit speeds reached 75 – 95 mph.  Other motorists were forced to swerve out of the way.  The suspect entered a construction zone occupied by workers on heavy equipment.

The suspect's speed in the business and residential streets of Federal Way was 50 – 80 mph.  Officer Clift was able to use his vehicle to impact the rear of the suspect's vehicle as it slowed to make a turn.  When the suspect's and Officer Clift's cars spun out, several police vehicles were able to partially surround the suspect vehicle when it came to a temporary stop.  The suspect refused to surrender and began revving the vehicle as high RPMs.  Three officers, including Clift, believed the suspect was attempting to run over a Federal Way officer who was in imminent danger of being seriously injured or killed.  All three fired their weapons at the vehicle simultaneously.  Both the suspect and a passenger were struck by bullets but recovered from their injuries.

The suspect had a history of robbery, assault, violations of no-contact orders, car theft, eluding, and drug crimes.  The suspect, Eric Jackson, was subsequently convicted by a jury of assaulting the Federal Way police officer that prompted officers to shoot.  His conviction was upheld on appeal. *State v. Jackson,* No. 52844-1-I (Ct. Apps. Div. I 2004). He is currently still incarcerated.

KENT'S MTN FOR PARTIAL SUMMARY JUDGMENT - 5
Cause No. C05-1154
U:\CLinder\slt\wcia03107\p-081606-mtn part summ jdgmt.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

**D.      Kent Police Department Took Appropriate Administrative Measures After Each Of The Shootings.**

The declaration of Charles E. Miller describes the process used by the Kent Police Department after officer-involved shootings.  Officers are immediately placed on administrative leave, and arrangements are made with outside agencies to conduct an investigation of incidents.  The department conducts its own internal investigation utilizing the factual matters established by assigned police investigators.  The purpose of the department's internal investigation is to review reported events and circumstances for compliance with department policy.  In each of the prior shootings, the department concluded that critical official policy had been followed—specifically, department policy on the appropriate use of deadly force.  In both instances, the record amply supported officers' conclusions that they, or others, were at imminent risk.  The department also routinely reviews tactical decisions, or as former Chief Crawford described it—"lessons learned"—in circumstances like this shooting event.  *Declaration of Mary Ann McConaughy,* Exhibit G.  Defense expert Curtright agreed with the department's approach and conclusions (Dkt. 83).

In addition, the department routinely took steps to insure that Officer Clift was psychologically ready to return to his duties.  After each prior shooting, he was sent to a police psychologist who was asked to render an opinion about Officer Clift's ability to resume his normal work activities.  In each case, police psychologists reported to the department that Officer Clift was fit to resume his normal duties.

**E.      Plaintiff's Experts Claims About Improper Tactics In Prior Shootings Fail To Meet The "Deliberately Indifferent" Standard For Municipal Liability.**

Plaintiff's expert D. P. Van Blaricom does not address the City's response to prior shooting incidents or raise issue that could serve as some basis for the claims of deliberately indifferent hiring, training, supervision, etc.

KENT'S MTN FOR PARTIAL SUMMARY JUDGMENT - 6
Cause No. C05-1154
U:\CLinder\slt\wcia03107\p-081606-mtn part summ jdgmt.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

Since municipal liability cannot be based upon *respondeat superior* liability, plaintiff cannot solely rely upon proof of the employee officer's conduct in the subject incident. The employer's unconstitutional deliberately indifferent hiring, training, supervision, etc., must be shown to be the cause of deprivation of plaintiff's rights. Here, plaintiff is evidently relying upon claims the City improperly trained officers' in approaching high-risk vehicles.

Plaintiff's second expert Lou Reiter has submitted a report (Dkt. 75) claiming that Officer Clift "failed to follow appropriate procedures in the [prior] cases, by approaching the subject vehicles after a high speed chase, rather than taking cover and ordering the occupant of the vehicle to exit." It appears that plaintiff realizes that he cannot reasonably criticize officers for firing in the two prior incidents given the obvious imminent risk posed by the suspects. Rather, Reiter claims that by approaching the high-risk vehicles, Officer Clift and other officers put themselves in situations where deadly force was necessary when suspects responded by assaulting officers.

In previous briefing, the defense pointed out significant criticism of Van Blaricom in a Ninth Circuit opinion. In *Billington v. Smith,* 292 F.3d 1177, 1185-1186 (9th Cir. 2002), the Court rejected Van Blaricom's "litany of tactical errors" and use of "padded numbers" summarizing his approach: "the theory is basically that Detective Smith shouldn't have gotten himself into the situation, so he couldn't constitutionally shoot his way out of it." That is essentially the argument raised by Reiter in this case.

Defendants have submitted a declaration of Joseph Fountain taking issue with Reiter. Plaintiff and defense experts do not agree about appropriate tactical training of officers. Plaintiff's expert will testify that officers should never approach a high-risk vehicle under any circumstances. Defendants' expert asserts that plaintiff's "no approach" theory is absolutely inconsistent with police training anywhere in the Puget Sound area, or elsewhere to his knowledge, and his approach would not eliminate threats to officers and public safety. Furthermore, Kent does not ascribe to a uniform method of handling high-

KENT'S MTN FOR PARTIAL SUMMARY JUDGMENT - 7
Cause No. C05-1154
U:\CLinder\slt\wcia03107\p-081606-mtn part summ jdgmt.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423

risk vehicles—as Reiter appears to suggest. The City's approach to training is not a "custom" or "policy" as the terms are understood in this context because the City trains officers to use a *variety* of approaches aimed at achieving appropriate law enforcement objectives. This can hardly amount to unconstitutional custom or policy. The City's training approach was not "deliberately indifferent", nor was it the "moving force" in causing plaintiff's injuries—much less, the violation of his rights.

**F.   The Department Properly Investigated Circumstances When Officers Brought Their Concerns About Clift To The Department And Followed Reasonable Recommendations Of A Police Psychologist To Return Him To Work.**

As described in the declaration of Charles E. Miller, the department promptly responded to concerns expressed by Clift's fellow officers in late May—early June 2003. The circumstances of these concerns and the information received have previously been provided to the Court under seal. *See, Declaration of Cristobal Joshua Alex*, Exhibit 16 (Dkt. 42) and additional records with the *Declaration of Mary Ann McConaughy* (*see,* Exhibit C). The department immediately addressed these concerns by providing written information to police psychologist Dr. Norman Mar, who subsequently advised, on June 17, 2003, that Officer Clift was capable of performing his normal duties.

Plaintiff has consulted with psychologist Dr. Randal Beaton who has reviewed records from the three police psychologists who examined Officer Clift after the shooting incident and on another occasion in June 2003. According to plaintiff's responses to discovery, Dr. Beaton "*may* testify" that police administrators should have required Officer Clift to "receive the additional peer and professional counseling recommended by its consulting psychologist as he resumed job duties that included the power to use deadly force, and Office Clift should have followed these recommendations even if not required to do so." *See, Declaration of Mary Ann McConaughy,* Exhibit D.

Obviously, even if Dr. Beaton *does* testify that such counseling should have been required, he does not (and cannot) claim that insufficient counseling was a "moving force" producing the outcome here—Officer Clift's decision to fire on the Morehouse vehicle as it

KENT'S MTN FOR PARTIAL SUMMARY JUDGMENT - 8
Cause No. C05-1154
U:\CLinder\slt\wcia03107\p-081606-mtn part summ jdgmt.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423

was bearing down on him in the early morning hours of June 26, 2003. Nothing in the disclosures concerning Dr. Beaton states that he disagrees with the other professional conclusions that Officer Clift *was* capable of performing his normal job duties. It seems unlikely he could reach that conclusion since he never examined Officer Clift and can hardly claim to have knowledge of Officer Clift's condition in 2003. The record is silent on what experience Dr. Beaton may have in consulting with police departments on officer fit-for-duty issues. Nor does Dr. Beaton state when and why a department should ignore a psychologist's professional opinion that an officer is fit and remove him from his normal job functions.

## IV.   AUTHORITY

**A.   Civil Rights Act Liability for Municipalities—A Stringent Standard.**

The Civil Rights Act allows suit to be brought against any "person" who has violated another's federal civil rights. 42 U.S.C. §1983. However, a municipal corporation is only considered to be a "person" in very limited circumstances.

A city cannot be held liable under a theory of *respondeat superior*. *Monell v. New York Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A city can only be liable if those whose edicts or acts "may fairly be said to represent official policy"—violate the constitution. *Id.*

**B.   No City "Policy" or "Custom" Caused Plaintiff' Injuries.**

There is no *respondeat superior* liability under the Civil Rights Act. Rather, the municipality itself must have *caused* the Plaintiff' injuries. *Monell, supra*, at 694. Municipal corporations can only act through policy or custom.

> Locating a 'policy' insures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or those officials whose acts may fairly be said to be those of the municipality.

*Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 117 S. Ct. 1388, 137 L. Ed. 2d 626 (1997).

KENT'S MTN FOR PARTIAL SUMMARY JUDGMENT - 9
Cause No. C05-1154
U:\CLinder\slt\wcia03107\p-081606-mtn part summ jdgmt.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423

Here, there is obviously no City official "policy" allowing the unlawful use of deadly force and, in fact, the applicable police department policy is consistent with prevailing law on the use of force, and plaintiff does not claim otherwise. Thus, plaintiff must identify some "custom" to represent official action. Specifically, plaintiff cannot hope to prove that Officer Clift was *not* at imminent risk when a prior suspect pointed what appeared to be a large caliber gun directly at him with innocent civilians hereby. Nor can plaintiff argue that suspect Eric Jackson was *not* assaulting Clift's fellow officer when Clift and two other officers fired their weapons in May 2002. Jackson was convicted of assault by a jury applying a "beyond a reasonable doubt" standard. *See, McConaughy Decl.,* Exhibit E.

Rather, plaintiff presumably tries to argue that Officer Clift (and his fellow officers) "caused" the suspects to assault officers. Plaintiff's expert Lou Reiter claims that officers' approaching the suspect vehicles resulted in assaultive conduct by suspects that in turn led to use of deadly force. Reiter ignores the fact that suspects are not always compliant, predictable, and benign. Implicit in his analysis is that suspects who do not comply can just be allowed to get away—without recognizing the obvious risk to the public and the increased likelihood that more suspects would routinely forcibly resist officers.

A "custom" is something that has "not been formally approved by an appropriate decision maker." *Bryan County, supra*. Rather, Plaintiff must show that "the relevant practices were so widespread as to have the force of law." *Id.* (emphasis supplied). As the Ninth Circuit has held:

> Absent a formal governmental policy, [a plaintiff] must show a longstanding practice or custom which constitutes the standard operating procedure of the local government entity. *The custom must be so persistent and widespread that it constitutes a permanent and well settled city policy.* Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out that policy. [Emphasis supplied.]

*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quotations and citations omitted).

KENT'S MTN FOR PARTIAL SUMMARY JUDGMENT - 10
Cause No. C05-1154
U:\CLinder\slt\wcia03107\p-081606-mtn part summ jdgmt.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423

There is no widespread practice in Kent that allows officers to use deadly force when no imminent risk to officers or others exists. Moreover, plaintiff is just wrong in claiming that Kent has a custom or policy of having officers always approach high-risk vehicles in the same way. Unlike plaintiff's expert, Kent trains officers to apply varying techniques and tactics in a flexible manner—approaching the vehicle if objectives would be served by doing so. This does not reflect "custom" or "practice" as those terms are applied in municipal liability cases. Holding otherwise would mean that one expert's preference for a tactical approach would assume a constitutional dimension, despite the fact that other qualified professionals disagree with the approach. In this case, plaintiff's expert ignores the fact that other risks flow from a decision never to confront noncompliant suspects in a vehicle.

It is interesting to note that plaintiff's expert D. P. Van Blaricom *criticized Kent officers for <u>not</u> approaching a high-risk vehicle* in a case that the City tried successfully in 2005.[1] This testimony illustrates the "damned if you do—damned if you don't" aspect of police liability cases. In the *Kembel* case, Van Blaricom criticized officers for allowing a young woman to get into a stolen vehicle and leave a parking lot. Yet in this case, plaintiff claims Officer Clift's attempts to stop Morehouse before she got away not only violated plaintiff's rights, but were caused by "deliberately indifferent" training in the use of the very tactic Van Blaricom recommended in *Kembel. See, McConaughy Decl.,* Exhibit F.

---

[1] The *Kembel* case involved a high-speed flight by a young female car thief, which resulted in a traffic accident killing two individuals, D. P. Van Blaricom testified:
    Q.  Do you have a belief or opinion as to whether the Kent police should have employed a Rat Trap to disable her vehicle prior to leaving the parking lot?
    A.  I don't care how they do it, but I would have done it. The technique I used to use was take a valve stem wrench and remove the valve stem from the left front tire.
    Q.  Well, you do care how they do it, because there would be a lot of ways you could try to stop that car that would be very dangerous, correct, or unsuccessful?
    A.  Well, I suppose there could be unsuccessful ways, but whether they puncture a tire or deflate a tire or *just walk up and tell her to get out of the car*, you know, those are options that are frequently exercised by police officers. ***The critical -- the critical issue is you never let it go mobile. The first responsibility of police officers at any incident is to contain the incident.*** That's across the board. (Emphasis supplied.) Deposition of D. P. Van Blaricom, *Kembel v. City of Kent, et al*; King Co. Sup. Ct. No. 03-2-24712-0 KNT taken December 6, 2004.

KENT'S MTN FOR PARTIAL SUMMARY JUDGMENT - 11
Cause No. C05-1154
U:\CLinder\slt\wcia03107\p-081606-mtn part summ jdgmt.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423

## C. The Challenged Actions Were Constitutional.

As the Supreme Court has stated, "claims that do not involve an allegation that the municipal policy itself violated federal law present much more difficult problems of proof." *Bryan County, supra*, at 1389.

The approach to training described by Interim Chief Miller and Joseph Fountain is entirely logical and appropriate. It cannot reasonably be argued that by preparing officers to use a flexible approach to the many unpredictable situations they must face, the City is violating suspects' rights. Rather the City trains officers as much as possible to quickly assess complex, dangerous situations in a manner best suited to balance the need to apprehend suspects while protecting officers and the public. This approach to training is not a custom, practice or policy manifesting "deliberate indifference." The inherent risk and difficulty of police work will inevitably result in mistakes given the extreme stress and split-second timing of events. Recognition of this fact is one of the reasons for the qualified immunity doctrine. Yet, even if an officer does make a mistake, that in itself does not constitute proof of improper, much less unconstitutional, training.

Plaintiff may claim Officer Clift should have been retrained after earlier incidents to never approach high-risk vehicles. Retraining, of course, assumes the City shares Mr. Reiter assessment that officers should not have approached the Martinez and Jackson vehicles. As the City's submittals point out, plaintiff's expert's methods does not alleviate risk; it simply favors certain police responses over others. Each type of response has its risks: the strategy of avoiding engagement with violent and noncompliant suspects carries its attendant risk—that suspects will escape; and swift physical intervention on the part of officers carries a risk that the strategy will not succeed and officers may then have to resort to greater force. Training aimed at facing risks and trade-offs is not unconstitutional. This is a critical distinction. As the Supreme Court has stated:

> Some limitation must be placed on establishing municipal liability through policies that are not themselves unconstitutional, or the tests set out in *Monell* will become a dead letter.

KENT'S MTN FOR PARTIAL SUMMARY JUDGMENT - 12
Cause No. C05-1154
U:\CLinder\slt\wcia03107\p-081606-mtn part summ jdgmt.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423

*Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985).

Moreover, plaintiff's claims have exactly the same defect noted by the Ninth Circuit in *Billington v. Smith,* 292 F.3d 117 (9th Cir. 2002) when the Court emphatically rejected "a litany of tactical errors" asserted by D.P Van Blaricom that led up to a police shooting even though the use of deadly force was unquestionably necessary.

**D.    Plaintiff Must Establish Causation and Culpability.**

Before a municipal corporation can be held liable under §1983, a plaintiff must not only show the requisite degree of culpability ("deliberate indifference"), but also demonstrate a "direct causal link" between the municipal action and the violation of rights. *Bryan County, supra* at 1388.

The Supreme Court has held that there are only "limited circumstances" in which there can be liability under §1983. *City of Canton v. Harris*, 489 U.S. 378, 387, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). It is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. Rather:

> The plaintiff must also demonstrate that, through its *deliberate conduct*, a municipality was the 'moving force' behind the injury alleged.

*Bryan County, supra* at 1388 (emphasis in original).

In the police context, the Court has also held:

> The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the 'moving force' behind a *constitutional* violation. There must be at least an affirmative link between training inadequacies alleged, and a particular constitutional violation at issue.

*Tuttle*, 471 U.S. at 823, n. 8 (emphasis in original).

*Bryan County*, 117 S. Ct. at 1391. Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Here, plaintiff utterly failed to produce any evidence of a "conscious disregard of an obvious risk" that a constitutional violation would occur. *Bryan County*, 117 S. Ct. at 1393.

KENT'S MTN FOR PARTIAL SUMMARY JUDGMENT - 13
Cause No. C05-1154
U:\CLinder\slt\wcia03107\p-081606-mtn part summ jdgmt.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423

The alleged deliberate indifference must have "actually caused" the injury. *City of Canton*, 409 U.S. at 391 (requiring a "close causal connection"). It is not enough that the violation be "likely to happen in the long run," rather the violation must "**almost be bound to happen sooner or later**." *Jones v. Wellham*, 104 F.3d 620, 627 (4th Cir. 1997) (emphasis supplied).

The above cases demonstrate that the threshold for finding "deliberate indifference" by failing to address a pattern of police misconduct is quite high. The past misconduct must be "persistent and widespread," and must involve constitutional violations—not just torts or policy breaches. In this case, there was no "pattern" of misconduct by Officer Clift. Officer Clift had no history of using unlawful force. There was no deliberate indifference on the part of the City.

Here, plaintiff takes upon himself one of the most difficult cases to prove under §1983. He attempts to find the municipality liable for training techniques that were not unconstitutional or illegal—techniques that he claims precipitated *suspects* to take some action to which officers responded. Plaintiff cannot point to any training that Officer Clift should have received, and it is impossible for this Court to state whether the department's failure to train in certain areas was "deliberately indifferent."

Furthermore, the circumstances of Morehouse/Tubar incident are markedly different than the two earlier incidents because Officer Clift's alleged constitutionally defective approach to the vehicle was not the impetus for assaultive conduct by Morehouse. Officer Clift approached the vehicle from the rear, noting that both Morehouse and Tubar turned to look in his direction. Morehouse then slowly backed up the car and then pulled forward in a right turning motion. It was a few moments later when Morehouse steered the car in a manner that appeared to Officer Clift to be driving right him. In the circumstances of this case, Clift was not approaching the vehicle, but was trying to stay out of its way when Morehouse drove in his direction. Officer Clift's approach shortly before Morehouse's actions cannot rationally be deemed to have been a precipitating, much less

KENT'S MTN FOR PARTIAL SUMMARY JUDGMENT - 14
Cause No. C05-1154
U:\CLinder\slt\wcia03107\p-081606-mtn part summ jdgmt.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

unconstitutional, event. As stated in *Billington v. Smith, supra* at 1191:

> [Claims that] Detective Smith should have sat in his car until backup arrived, or donned all of his equipment before approaching [the suspect], or have taken precautions against [the suspect's] grabbing him by his throat and pulling himself out of the car window to attack the detective, or that Detective Smith should have dropped off his wife and daughter somewhere before dealing with [the suspect], *none of Detective Smith's supposed errors could be deemed intentional or reckless, much less unconstitutional, provocations that caused [the suspect] to attack him.* [Emphasis supplied.]

Similarly, the so-called unconstitutional conduct of the City in training officers to approach high-risk vehicles did not subsequently *cause* Ms. Morehouse to drive in the manner that resulted in the shooting.

E. **Plaintiff Cannot Establish Municipal Liability Through "Ratification" In This Case.**

The complaint alleges liability against the City because it "took no disciplinary or corrective action and in fact ratified defendant Clift's misconduct and the violation of plaintiff Tubar's constitutional rights." *Complaint,* ¶3.6. Plaintiff cannot prove "ratification" based upon alleged faulty investigation or other after-the-fact conduct. *See*, defendants' earlier briefing on qualified immunity motion (Dkt. 53, pp. 8-9).

**CONCLUSION**

For the reasons stated herein, plaintiff has not established any "custom" or "policy" of the City of Kent that was the "moving force" in violating plaintiff's civil rights, nor can he show any deliberate indifference in any acts of the City alleged to have caused his injury. The §1983 claims against the City should be dismissed with prejudice.

RESPECTFULLY submitted this 31st day of August 2006.

KEATING, BUCKLIN & McCORMACK, INC., P.S.

/s/ Mary Ann McConaughy
Mary Ann McConaughy, WSBA #8406
Steven L. Thorsrud WSBA #12861
Attorney for Defendants
800 Fifth Avenue, Suite 4141
Seattle, WA  98104-3175
(206) 623-8861    (206) 223-9423 Facsimile
mmcconaughy@kbmlawyers.com

KENT'S MTN FOR PARTIAL SUMMARY JUDGMENT - 15
Cause No. C05-1154
U:\CLinder\slt\wcia03107\p-081606-mtn part summ jdgmt.doc

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Tim Ford
MacDonald Hoague & Bayless
705 2nd Ave, #1500
Seattle, WA 98104-1745

/s/ Jean Young
Keating, Bucklin & McCormack, Inc., P.S.
800 Fifth Avenue, Ste. 4141
Seattle, WA 98104
206-623-8861
206-223-9423 Fax
jyoung@kbmlawyers.com

KENT'S MTN FOR PARTIAL SUMMARY JUDGMENT - 16
Cause No. C05-1154
U:\CLinder\slt\wcia03107\p-081606-mtn part summ jdgmt.doc

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
800 FIFTH AVENUE, SUITE 4141
SEATTLE, WASHINGTON 98104-3175
PHONE: (206) 623-8861
FAX: (206) 223-9423