UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NICOMEDES TUBAR, III,

　　　　Plaintiff,

　　v.

JASON CLIFT; and THE CITY OF KENT, WASHINGTON, a municipal corporation,

　　　　Defendants.

CASE NO. C05-1154JCC

ORDER

This matter comes before the Court on Defendants' Motion for Partial Summary Judgment (Dkt. No. 30), Plaintiff's Opposition (Dkt. Nos. 45, 48), Defendants' Reply (Dkt. Nos. 53, 58), and Plaintiff's Surreply (Dkt. No. 63), as well as the supplemental briefing allowed by this Court—Plaintiff's Supplemental Opposition (Dkt. No. 79), Defendants' Supplemental Reply (Dkt. No. 82), and Plaintiffs' Supplemental Surreply (Dkt. No. 89). The Court, having carefully considered all of the papers submitted and determined that oral argument is not necessary, hereby DENIES the motion as follows.

I.　BACKGROUND AND FACTS

On June 25, 2003, Defendant Jason Clift, a City of Kent Police Officer, discovered a stolen 2001 Kia automobile in the parking lot of Plaintiff's apartment building. Defendant Clift decided to watch the

ORDER – 1

vehicle because he believed that it had been driven recently. He placed a "rat trap"[1] under one of the tires of the stolen vehicle, moved his patrol car out of sight, and hid in the bushes to await the driver's return. Approximately thirty minutes later, just after midnight on June 26, 2003, Defendant Clift observed Plaintiff, along with driver Heather Morehouse, exit the apartment building and enter the stolen vehicle. As Ms. Morehouse began backing the vehicle out of the parking spot, the rat trap punctured the vehicle's tires. At the same time, Defendant Clift emerged from the bushes with his flashlight and gun and announced that he was a police officer. Plaintiff and Ms. Morehouse did not hear this announcement nor realize that Defendant Clift was a police officer, but Defendant Clift thought that the vehicle occupants perceived him.

According to Plaintiff, Ms. Morehouse began driving toward the only exit at a "normal" speed—approximately 15 miles per hour according to both parties as well as supporting testimony that indicates that the vehicle was not going very fast. Ms. Morehouse steered towards the exit of the parking lot, in what Plaintiff characterizes as a "steady right turn." In contrast, Defendant Clift maintains that it was a "sharp U-Turn" to the right. The tire puncture due to the rat trap caused the rim of the front passenger tire to mark the pavement as the vehicle moved, providing evidence of the Kia's path consistent with a steady right turn. Nevertheless, Defendant Clift's version of events is that Ms. Morehouse steered the car toward him, accelerated, and put him in fear for his life. However, Plaintiff claims that the car decelerated as events unfolded and that Ms. Morehouse consistently steered toward the parking lot exit and never accelerated toward Defendant Clift in an attempt to hit him. While Defendant Clift originally claimed that the car "swerved" toward him, none of the evidence indicates a "swerve" and Defendant Clift now seems to have retreated from that theory. Nevertheless, during the vehicle's undisputed curved path, it is clear that at some point the car was headed directly toward where Defendant Clift was standing, though the parties dispute how long this was.

---

[1] According to the parties, a rat trap is a mechanical device used to deflate tires.

ORDER – 2

1    As the car approached the parking lot exit, Defendant Clift fired his weapon at the vehicle three
2  times.  The first two bullets entered the hood and front windshield of the vehicle but did not strike either
3  Ms. Morehouse or Plaintiff.  Defendant Clift fired his third shot as the vehicle was passing him.  This
4  third bullet entered through the driver's side window and struck Plaintiff in the upper left shoulder area.
5  According to Plaintiff's expert, by the time the third shot was fired, the Kia was moving at about 6 miles
6  per hour and visibly decelerating.  (Pl.'s Supp. Opp'n, Abrous Decl. & Exs.)

7    It is undisputed that the three shots were fired in a matter of seconds.  One witness described the
8  succession of shots as "'bang, bang' (pause) 'bang.'"  (Pl.'s Opp'n, Ex. 7 (Recorded Statement of Officer
9  R. Joseph).)  It is undisputed that the third shot is the one that hit Plaintiff and that it came through the
10 side of the car as it was passing Defendant Clift.  According to Defendant Clift, he stopped firing when he
11 perceived that the car was no longer a threat to him.  Defendant Clift argues that all three shots were
12 reasonable under the circumstances.  According to Plaintiff, the car could not have been a threat when the
13 third shot was fired, yet Defendant Clift kept firing his weapon at a car that was passing him.  Plaintiff
14 argues that Defendant Clift was never in danger and that *none* of the three shots was reasonable.  Plaintiff
15 further argues that, regardless of the reasonableness of the first two shots, the third shot was
16 unreasonable under the circumstances because of the gap between shots two and three and because of the
17 clearly nonthreatening position of the car at the time the third shot was fired.

18   Plaintiff filed this action on June 24, 2005 against Defendant Clift in his individual capacity and
19 the City of Kent for damages arising from an alleged violation of his civil rights under 42 U.S.C. § 1983,
20 along with supplemental common law claims for negligent hiring, training, supervision, and retention.
21 (Compl. ¶ 5.2.)  In his Answer, Defendant Clift pled qualified immunity as an affirmative defense.  (Defs.'
22 Answer ¶ 9.)  Defendant Clift's qualified immunity defense is at issue on the instant motion.

23 //
24 //
25
26 ORDER – 3

## II. ANALYSIS

### A. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions, and provides in relevant part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The moving party bears the burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is in fact a genuine issue for trial. *Anderson*, 477 U.S. at 250.

### B. MOTIONS TO STRIKE

The parties move to strike various evidence submitted as part of the briefing on the instant motion. (*See* Pl.'s Opp'n (Dkt. No. 45) 9; Defs.' Reply (Dkt. No. 53) 12; Pl.'s Surreply (Dkt. No. 63) 1–3; Defs.' Supp. Reply (Dkt. No. 82) 3–4; Pl.'s Supp. Surreply (Dkt. No. 89) 1–3.) The Court has considered these evidentiary objections and notes that it has relied on evidence only for admissible purposes in considering the instant motion.

### C. CONSTITUTIONAL CLAIMS

To state a claim under 42 U.S.C. § 1983, Plaintiff must establish (1) that he was "deprived of a

ORDER – 4

right secured by the Constitution or laws of the United States" and (2) that "the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). No party disputes the existence of the second element—both Defendants Clift and the City of Kent are "state actors" for purposes of § 1983. Thus, the Court moves on to discuss the relevant alleged deprivation of Plaintiff's federal rights and Defendant Clift's claim of qualified immunity.

In the context of "government officials performing discretionary functions," as here, such officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This "qualified immunity" is determined in two steps. First, the Court must consider the threshold question of whether, taken in the light most favorable to Plaintiff, the facts alleged show that "the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Supreme Court has specified that

> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

*Id.* The second step requires evaluation of the law in the "specific context of the case." *Id.* Accordingly, this Court must determine (1) whether Plaintiff's facts, as alleged, could show violation of a constitutional right, and, if so, (2) whether such right was "clearly established" at the time of the incident.

Excessive force claims involving arrests, investigatory stops, and other "seizures" are governed by the Fourth Amendment, which secures the right against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "[A]pprehension by the use of deadly force is a seizure." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). The first issue this Court must determine is whether Defendant Clift's shooting of Plaintiff could have constituted a "seizure." The parties disagree about whether the shot aimed at Ms. Morehouse could have seized Plaintiff when it hit him.

ORDER – 5

The Supreme Court decided in *Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989), that a Fourth Amendment seizure occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied*." The *Brower* Court thus distinguished "seizures" from situations where an accident or unintentional action terminates freedom of movement, noting first that "the Fourth Amendment addresses misuse of power, not the accidental effects of otherwise lawful government conduct." *Id.* The Supreme Court applied the rule of *Brower* in *Sacramento v. Lewis*, 523 U.S. 833, 836, 843–44 (1998), finding that no seizure took place when a high-speed police chase ended with a police cruiser uncontrollably and unintentionally crashing into the suspect's wrecked motorcycle. Relying on *Brower* and *Lewis*, Defendants argue that Plaintiff's status as a passenger in the car precludes a finding of a seizure, because the bullet that hit Plaintiff was really meant for Ms. Morehouse. The Court is unconvinced by Defendants' argument.

First, the crux of the *Brower* decision is that unintentional acts cannot be the basis of a claim alleging an unconstitutional seizure. In finding that there could be no seizure as a matter of law, the *Brower* Court contrasted the facts of that case—a fleeing suspect crashing into a police roadblock—with a situation that *would* constitute a seizure—a police cruiser sideswiping a car and producing a crash. Under *Brower*, the fundamental characteristic of conduct giving rise to a seizure is that the means of harm is connected to an intentional act by the police that is done with the expectation that such harm will occur. Applied to the facts of the instant case, the Court finds that Defendant Clift's *intentionally applied* gunfire aimed at the car is exactly the type of conduct the *Brower* Court envisioned could underpin a claim for an unconstitutional seizure. It is not as if Defendant Clift's service weapon malfunctioned and accidentally fired, causing injury to Plaintiff. Rather, Defendant Clift fired his weapon on purpose and the injury at issue here resulted from that volitional act.

Also in support of their argument that the bullet meant for Ms. Morehouse could not have seized Plaintiff, Defendants cite cases from other circuits involving innocent or undetected bystanders and hostages. (Defs.' Mot. 11–13 (citing *Childress v. City of Arapaho*, 210 F.3d 1154 (10th Cir. 2000)

ORDER – 6

(hostages); *Claybrook v. Birchwell*, 199 F.3d 350 (6th Cir. 2000) (undetected passenger); *Medeiros v. O'Connell*, 150 F.3d 164 (2d Cir. 1998) (hostage); *Rucker v. Harford County*, 946 F.2d 278 (4th Cir. 1991) (bystander); *Landol-Rivera v. Cruz Cosme*, 906 F.2d 791 (1st Cir. 1990) (hostage).) However, these cases are inapposite, because, as Defendants concede, Ms. Morehouse *and* Plaintiff were potential suspects allegedly fleeing in the same vehicle. Defendants' argument that Defendant Clift's gunfire resulted in an unintended consequence is unpersuasive. Plaintiff was not a hostage and was not undetected. To the contrary, Defendant Clift *knew* that Plaintiff was in the car and intended to stop and seize the car and both occupants.

While Defendants rely on cases involving either (1) hostages, bystanders, or undetected vehicle occupants, as described *supra* or (2) cases involving unintended consequences such as *Brower*, *Lewis*, and *Troupe v. Sarasota County*, 419 F.3d 1160 (11th Cir. 2005) (vehicle crash due to gunshot hitting driver did not seize passengers), Plaintiff relies on the guiding principle of *Brower* and cites cases akin to the instant one, where a volitional act resulted in an intended consequence to known objects of that act. *See Vaughan v. Cox*, 343 F.3d 1323 (11th Cir. 2003) (bullet meant to stop car and its passengers seized passenger when it hit him); *Reed v. Hoy*, 909 F.2d 324 (9th Cir. 1990) (application of deadly force can seize whether applied in self defense or for purpose of effectuating arrest). Defendants' argument that *Vaughan* is inconsistent with *Troupe* is unpersuasive. In *Troupe*, the harm to two vehicle passengers was from a vehicle crash, not from the gunshot to the driver that led to the crash. The *Troupe* court found no seizure of the passengers when the driver was shot. The resulting crash was too attenuated from the volitional gunshot. In contrast, *Vaughan* involved a bullet fired to stop a vehicle, which not only stopped the vehicle but also hit a passenger inside. As in *Vaughan*, the instant case involves proximate cause sufficient to support a finding of a seizure according to the principles of *Brower*.

Further, Defendants' argument assumes that shooting at Ms. Morehouse was "otherwise lawful." In other words, even if the gunshot that hit Plaintiff could be construed as an "unintended consequence"—which it cannot—the initial act (shooting at Ms. Morehouse) must have been lawful to

ORDER – 7

1    conclude under *Brower* that Plaintiff was not seized. However, as explained below, Plaintiff has alleged
2    sufficient facts to show that the shot that hit him was unlawful in the first instance. For this additional
3    reason, the Court finds that the bullet that hit Plaintiff effected a seizure.
4        Having determined that Defendant Clift seized Plaintiff, the Court does not need to analyze the
5    gunshot under the Fourteenth Amendment's "shock-the-conscience" standard to determine whether it
6    could have violated Plaintiff's substantive due process rights. *Lewis*, 523 U.S. at 843–44 (applying the
7    Fourteenth Amendment only when the Fourth Amendment does not "cover" the claim due to lack of a
8    "seizure"). Accordingly, the Court moves on to the question of whether Plaintiff can prove that this
9    seizure was unconstitutional under the Fourth Amendment, as required to satisfy the first step in the
10   qualified immunity analysis.
11       The test under the Fourth Amendment is whether the force used in a seizure was "objectively
12   reasonable." *Graham*, 490 U.S. at 388. This calculus "requires a careful balancing of the nature and
13   quality of the intrusion on the individual's Fourth Amendment interests against the countervailing
14   governmental interests at stake." *Id.* at 396 (internal quotations omitted). The "'reasonableness' of a
15   particular use of force must be judged from the perspective of a reasonable officer on the scene, rather
16   than with the 20/20 vision of hindsight." *Id.* The "reasonableness" inquiry is objective and does not take
17   into account the officer's "underlying intent or motivation." *Id.* at 397.
18       On the facts of this case, the relevant question under the Fourth Amendment analysis is whether
19   the gunshot that struck Plaintiff resulted from a reasonable exercise of deadly force. The Court finds that
20   Plaintiff has submitted sufficient evidence to make out a constitutional violation. Plaintiff has raised
21   material issues of fact going to whether Defendant Clift acted unreasonably by firing his gun the third
22   time, whether that shot is analyzed separately or as part of the series of three shots. Taking all of
23   Plaintiff's allegations as true, Defendant Clift was never in danger, and even if Defendant Clift acted
24   reasonably by firing the first two shots, the vehicle was certainly no longer a threat when Defendant Clift
25   paused, aimed, and fired the third shot. A jury could find that Defendant Clift never was in fear for his

ORDER – 8

life and that the evidence produced by Plaintiff is convincing enough to find that deadly force was unjustified entirely. Alternatively, a jury could find that Defendant Clift might have reasonably fired the first two shots, but that Plaintiff's evidence shows that the third shot was an unreasonable use of deadly force when judged from the perspective of an officer on the scene, because the position of the car and the pause between the first and second shots indicated new circumstances that could not justify deadly force. *See, e.g.*, *Hopkins v. Andaya*, 958 F.2d 881 (9th Cir. 1992) (finding that separate uses of deadly force could be analyzed separately under the Fourth Amendment), *rev'd on other grounds as recognized in Felderman v. County of Kern*, 61 Fed. Appx. 438 (9th Cir. 2003) (noting that the *Hopkins* court's qualified immunity inquiry has been superseded by the two-step process of *Saucier*), *and Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994) (noting that the *Hopkins* court's suggestion that alternatives should be considered even when deadly force is justified is incorrect).

Not only has Plaintiff produced sufficient evidence to prove that Defendant Clift's use of deadly force amounted to a constitutional violation, the right to be free of such a violation was clearly established when Plaintiff was shot on June 26, 2003, satisfying the second prong of the qualified immunity analysis.

In 1985, the Supreme Court held in *Garner* that the "use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. . . . Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." 471 U.S. at 11. However, if an "officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Id.*; *see also Acosta v. City and County of San Francisco*, 83 F.3d 1143 (9th Cir. 1996). In the instant case, Plaintiff's presence in a stolen car likely made him a felony suspect. However, if no threat was ever posed to Defendant Clift, as Plaintiff alleges, use of deadly force against Plaintiff and Ms. Morehouse was unconstitutional as a matter of law.

ORDER – 9

1    The rule of *Garner* applies whether Plaintiff proves that no danger *ever* existed or if he merely
2    proves that any danger had subsided by the time Defendant Clift fired the third shot.  However, the
3    Supreme Court has noted that, while the general standard of *Garner* is sufficient in "obvious" cases,
4    additional, more particularized law is necessary in the not-so-obvious cases.  *Brosseau v. Haugen*, 543
5    U.S. 194 (2004); *see also Anderson v. Creighton*, 483 U.S. 635 (1987).  The Court finds this distinction
6    relevant only if the jury finds that the first two shots were constitutionally reasonable.  Thus, if all three
7    shots were unreasonable, this is an "obvious" case.  Further, even if the jury concludes that only the third
8    shot was a constitutional violation, the facts of *Brosseau* are distinguishable from the instant case and do
9    not dictate a finding that the high level of particularity required in *Brosseau* is required here as well.
10   Whereas the suspect in *Brosseau* struggled and resisted arrest and subsequently began to flee in a vehicle,
11   driving in a clearly threatening manner immediately before being shot, the vehicle in the instant case had
12   slowed and turned away from Defendant Clift by the time he fired his third shot.  Thus, even if Defendant
13   Clift perceived Ms. Morehouse and Plaintiff to be fleeing, dangerous suspects when he fired the first two
14   shots, a jury could find that they were in no sense "fleeing" or dangerous when the third shot was fired.

15   The rule of *Acosta* sufficiently establishes the right not to be shot in a slowly moving car and
16   provides sufficient particularity in the event that only the third shot could have been unconstitutional.  In
17   *Acosta*, the Ninth Circuit held that a reasonable jury could have "concluded that a reasonable officer, who
18   had positioned himself facing the driver so that he was standing closer to the side than the dead-center of
19   the car, would have recognized that he could avoid being injured when the car moved slowly, by simply
20   stepping to the side."  83 F.3d at 1146.  In *Acosta* the vehicle likely moved in the direction of the officer,
21   but it was "moving or rolling sufficiently slowly that a reasonable officer in [the defendant's] position
22   would not have perceived himself to be in danger of serious bodily harm."  *Id*. at 1147.  *Acosta* was
23   decided in 1996, well before the incident in this case occurred.  Moreover, the officer in *Acosta* was
24   denied qualified immunity because the law at the time of the incident in *that* case was also "clearly
25   established."

26   ORDER – 10

Finally, to the extent that Defendants argue, based on Plaintiff's reliance on *Vaughan*, that the law of "seizure" was insufficiently established at the time this incident occurred, the Court disagrees. While *Vaughan* provides a useful example though that decision itself cannot be the basis for "clearly established" law in the instant case, the Court's finding, *supra*, that this case indeed involved a seizure for purposes of the Fourth Amendment's applicability depends on pre-2003 cases. Moreover, the *events* in *Vaughan* occurred in 1998, and the Court's finding of a seizure in that case relied on the 1989 *Brower* decision, as well as distinguishing characteristics between other circuits' hostage and bystander cases and the facts of *Vaughan*. Similarly, this Court's finding of a seizure in the instant case does not rely on the outcome in *Vaughan*, but rather relies on the principles of *Brower*.

### III.  CONCLUSION

For the reasons set forth in this Order, Defendants' Motion for Partial Summary Judgment is hereby DENIED in its entirety. Defendant Clift is not entitled to qualified immunity.

SO ORDERED this 22nd day of September, 2006.

John C. Coughenour

United States District Judge

ORDER – 11