HON. JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NICOMEDES TUBAR, III,<br><br>                    Plaintiff,<br><br>    v.<br><br>JASON CLIFT; and THE CITY OF KENT, WASHINGTON, a municipal corporation,<br><br>                    Defendants. | No. C05-1154 JCC<br><br>PLAINTIFF'S MOTION *IN LIMINE* TO LIMIT THE TESTIMONY OF DEFENSE WITNESS DR. LEWINSKI PURSUANT TO FRE 702<br><br>**Noted for: December 5, 2008** |

Plaintiff moves *in limine* to limit the testimony of defense expert psychologist William Lewinski to areas in which he is qualified as an expert under Federal Rule of Evidence 702. Specifically, plaintiff asks that Dr. Lewinski—who is a psychologist, not a weapons expert, a physicist or an accident or crime scene reconstructionist—not be allowed to testify as to Officer Clift's position in the parking lot when he shot Nico Tubar, or to the validity or significance of the defense reconstruction of the incident, or of spent cartridge location evidence. Further, pursuant to Federal Rules of Evidence 401 and 403, Plaintiff moves for an order excluding demonstrative videos to be shown by Dr. Lewinski that have no apparent relevance to this case and can only confuse and distract the jury.

PL'S MOT. *IN LIM* TO LIMIT TEST. OF DR. LEWINSKI - 1
USDC WDW No.C05-1154 JCC

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

I. BACKGROUND

William Lewinski is a professor of Police Psychology at Mankato State University in Mankato, Minnesota. He is also a professional expert witness who testifies for police officers and charges $950 per hour of deposition or testimony. *See* Ex. 1,[1] Lewinski Dep. 3:15-20; . Dr. Lewinski holds a Ph.D. degree from "Union Institute for Experimenting Colleges and University", an on-line institution headquartered in Cincinnati, Ohio. Lewinski (Ex. 1) Dep. at 7:18-8:19. His degree was in "police psychology," which he named himself. *Id.* He also holds an M.A. in counseling at the University of Arizona in Tucson, and a B.A. in Psychology and Sociology from Lakehead University, Ontario, Canada. Ex. 2; Lewinski CV at 1.

Dr. Lewinski has written many police magazine articles and given many media presentations, but claims to have written only one article in a peer reviewed journal, an article called "Command Types Used in Police Encounters" published with other authors in the "Law Enforcement Executive Forum." *See id.* at 9:7-24. Dr. Lewinski has published extensively in police magazines on the subject of "Human Performance in Lethal Force Encounters." Lewinski Report (Ex. 3) at 2. He claims to have been qualified "as an expert on action reaction, perception and memory in force or lethal encounters in criminal courts" in a number of state and federal courts. *Id.* at 2 ¶ 3. In June 2008 he wrote that his "current research focuses on subject and officer movement in lethal and force encounters as well as action/reaction parameters (including judgment time), perception and memory." *Id.* at ¶ 2.

Dr. Lewinski was first listed as a defense expert in this case in June 2008 after the remand from the Court of Appeals. *See ibid.* His initial report dealt with the issue on which he has published and testified most frequently, "the action perception, attention, behavior and reaction times of an average officer." *See id.* at 6. However, after defendants offered those opinions from Dr. Lewinski, plaintiff produced demonstrative evidence indicating that the

---

[1] All references to "Ex. __" are to documents attached to the the Declaration of Timothy K. Ford filed in support of this motion.

PL'S MOT. *IN LIM* TO LIMIT TEST. OF DR. LEWINSKI - 2
USDC WDW No.C05-1154 JCC

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

sequence of events posited by the defense reconstruction experts were inconsistent with the tape record of the incident. *See* Ford Dec. ¶ 7.

After that was disclosed, the defendants produced a supplemental report from Dr. Lewinski on completely different subjects: accident reconstruction animations and the significance of the cartridge shell locations. Lewinski Supplemental Report (Ex. 4). In this supplemental report, Dr. Lewinski opined that a revised animation from the defendants' reconstruction expert, John Hunter, made after the disclosure of plaintiff's soundtrack animation, "reflects the approximate position of Officer Clift, the path of the vehicle and the time required for Officer Clift's perception of the change in direction of the vehicle toward him and the time required for him to broadcast that change, before he fired his first shot." *Id.* at 1. It goes on to state that "*in this animation*, the next round fired as the vehicle progresses toward Officer Clift is fired in one-quarter of a second" and "the second shot, illustrated in the animation, also reflects the quarter-second time gap between the shots, the approximate speed of the vehicle and the direction of travel of the vehicle." *Id* at 4 (emphasis added) The report then says the "time and realignment … illustrated in this video recreation [which] … occurs in the video just prior to Officer Clift's third shot" and the "longer time frame (approximately three-quarters of a second) … included in the animation between shots two and three…." *Id.* at 2.

However, during Dr. Lewinski's deposition, it turned out that *there were no shots depicted in the animation* his Supplemental Report purported to describe, and in fact he had never seen the Hunter animation the defendants have produced in this case. Lewinski Dep. (Ex. 1) at 20:17-23:7. So despite Dr. Lewinski's statements in his report that "This animation reflects . . ." and "as illustrated in the animation . . .", he testified that "At the time of this deposition, I have not seen the animation [Hunter] put together. My understanding in our discussion is he would enter the shots and the shot placement on there." *Compare* Ex. 4 *with* Ex. 1 (Lewinski Dep. at 23:4-7).

Dr. Lewinski's supplemental report raised another new point, as well: the significance of the cartridge shell locations plotted by the officers at the scene and utilized by all the experts in

PL'S MOT. *IN LIM* TO LIMIT TEST. OF DR. LEWINSKI - 3
USDC WDW No.C05-1154 JCC

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

this case. Up to this point in the litigation, all of the police investigators and expert witnesses in the case had deduced Officer Clift's location based on the location of the spent cartridge shell ejected from Officer Clift's gun. *See* Clark Dec., Dkt. 33, Para. 8; Sgt. Bob Crouch Dec., Dkt. 34, Para. 6; John Hunter (Dkt. 78-08 at 5); and Dr. Abdelouahab Abrous, Dkt. No. 41 (relying on Clark placement of Clift). Despite this, and despite Defendants' own representations to this Court and the Court of Appeals that Officer Clift's location could be determined by the location of the shell casings, Dr. Lewinski opined in that supplemental report that "Any effort at including the spent shell casings as an anchor point is fundamentally flawed." Dr. Lewinski's supplemental report went on to say "With a weapon of this type th[e] area [in which a handgun discharging cartridges was fired] could be a circle with a 24-foot diameter, without including any bounce factor of the ejected casing on asphalt." Ex. 4 at 2.

Dr. Lewinski's supplemental report gave no scientific or other basis for this. In deposition it was revealed that Dr. Lewinski has no degrees in physical sciences, no degrees in engineering, but had commissioned an unpublished study regarding cartridge locations. Ex. 1; Lewinski Dep. at 9:3-6; 10:7-11:19. The research done in connection with that subject was not being done by Dr. Lewinski himself, but actually by a Dr. Bill Hudson of the Electrical and Computer Engineering Department at Minnesota State University. Ex. 1; Lewinski Dep. 10:7-11:19.

Plaintiff's evidence at trial will show that many of Dr. Lewinski's reaction time psychological experiments have limited relevance here, partly because of conceptual flaws, but that generally they support Plaintiff's claim, showing that Officer Clift had more than adequate time to stop shooting between the first and third shots fired at the Morehouse vehicle.[2] However,

---

[2] According to Dr. Lewinski's most widely publicized study, "In the first couple of tests in this experiment, the ones that most effectively caused the officers to multitask, the officers stopped pulling the trigger in 35/100ths of a second. The main body of officers, 68%, stopped pulling the trigger between 1/10th and 6/10ths of a second. The more effectively the officers multitasked, the closer they were to the 5/10ths to 6/10ths of a second." Bill Lewinski & Bill Hudson. · Reaction Times In Lethal Force Encounters- The Tempe Study. 4. *Police Marksman* 9/03 (Exhibit 6). According to the original report of defense expert John Hunter, issued before plaintiff pointed out the omission of the time for the radio broadcast, "[t]he total time between the first and third shot was approximately 1.3 seconds." Hunter Report at 2, Dkt. 78-08 at 2. However, according to Kent Officer Rodd Joseph, the shots were

PL'S MOT. *IN LIM* TO LIMIT TEST. OF DR. LEWINSKI - 4
USDC WDW No.C05-1154 JCC

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

in a transparent effort to avoid this, the defendants have *changed their own reconstruction of the event* to make Officer Clift's actions fit Dr. Lewinski's published reaction time data. To do this they have changed the timing of the shots fired in their reconstruction, and have changed the position where they contend Officer Clift was standing when the shots were fired, moving him approximately 10 feet away from the position originally posited. *See* Ex. 4; Ford Dec. ¶ 8 and Ex. 8.

To facilitate this change, Dr. Lewinski has provided two pieces of testimony that go outside his area of expertise: an opinion that a new version of the defense animation showing the location and timing of the shots "reflects the approximate position of Officer Clift" (even though he had never seen it) and the opinion that "the presence of a spent shell casing is not helpful at all" in locating a shooter. Ex. 4.

On both of these subjects, Dr. Lewinski has gone beyond limits of Federal Rule of Evidence 702. Regarding the animation, his opinions are beyond the scope of 702 both because Dr. Lewinski is not an expert in crime scene reconstruction because an expert can't give an opinion on something he hasn't seen. Regarding the cartridges, it is so for the obvious reason that Dr. Lewinski is not an engineer or physicist, has no qualifications in those areas, and has done no studies himself on the subject.

In addition, Dr. Lewinski apparently proposes to play several videos during his testimony. One shows a basketball game, and viewers are asked to count the number of passes a team makes while a person in a gorilla suit walks through the middle of the court. Ex. 1, Lewinski Dep. at 40. Another video shows a simulated robbery and shooting to illustrate "external specific focus" and "inattentional blindness." *Id.* at 41:11, 25. Another shows a farm scene with a bathtub slowly appearing in the background (*id.* at 40:24-25), others such things as

---

fired "in two seconds, or less" and "shots one and two were closer together than shots two and three." Joseph Dec. Dkt. 35 at 2.

PL'S MOT. *IN LIM* TO LIMIT TEST. OF DR. LEWINSKI - 5
USDC WDW No.C05-1154 JCC

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

a basketball game "buzzershot" and a commercial showing gunfighters. See Ford Dec. ¶ 9 and Ex. 9.

None of these videos has been shown to be relevant to any psychological concept relevant to this case. Officer Clift has never claimed shot at the Morehouse vehicle because he was distracted by something else, or was multitasking (although, of course, one of *plaintiff's* contentions is that Officer Clift was distracted *prior to* the shootings, by a cellphone conversation with a paramour, when he was supposed to be making a "threat assessment," *see e.g.*, Dkt. 232-2 at 5-6). None of Dr. Lewinski's expressed opinions appear to rest on any of these videos or involve subjects touched on by them. Plaintiff therefore moves to exclude their use under FRE 401 and 403.

## II. ARGUMENT

### A. DR. LEWINSKI DOES NOT HAVE THE TRAINING OR EXPERIENCE OR RELIABLE DATA TO CHALLENGE THE VALIDITY OF CARTRIDGE STUDIES.

To give an opinion under FRE 702, an expert must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. If that threshold is met, the expert may testify regarding "scientific, technical, or other specialized knowledge" if, and only if, "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.*

#### 1. Dr. Lewinski is Not Qualified to Opine on Cartridge Ejection

A witness's qualifications must relate to the opinion he is espousing. *United States v. Chang*, 207 F.3d 1169, 1173 (9th Cir. 2000) (affirming exclusion of "international finance" expert because he had "no experience in identifying counterfeit foreign securities."). A proposed "expert" on a given topic, a witness must have "appropriate qualifications-i.e., some special knowledge, skill, experience, training or education *on that subject matter.*" *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (emphasis added).

PL'S MOT. *IN LIM* TO LIMIT TEST. OF DR. LEWINSKI - 6
USDC WDW No.C05-1154 JCC

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

Here, Dr. Lewinski has none of the requisite qualifiers. Dr. Lewinski has no degrees in physical sciences, no degrees in engineering, and has never published any peer-reviewed articles on the subject. Ex. 1; Lewinski Dep. at 9:3-6; 10:7-11:19. The only research he has been involved with in connection with that subject is an incomplete study commissioned as a result of an expert witness appearance, that was not being done by him, but by a colleague in the Electrical and Computer Engineering Department at Minnesota State University. See Ex. 1 at 10:7-11:19.

In short, Dr. Lewinski has no qualifications under FRE 702 to render the opinions on the significance of cartridge ejection patterns that he puts forward in his supplemental report. Ex. 4.

### 2. Dr. Lewinski Has No Data or Scientific Methods On Which To Base His Opinions, and His Opinions Will Not Assist the Trier of Fact

> *Daubert* enumerated a list of factors that, while not constituting a "definitive checklist or test," a district court might consider in evaluating *whether a proffered expert opinion has the required indicia of scientific reliability:* whether a theory or technique had been and could be tested, whether it had been subjected to peer review, what its error rate was, and whether scientific standards existed to govern the theory or technique's application or operation. *See Daubert*, 509 U.S. at 593-94. In addition to setting forth these criteria for testing an expert's methodology, the Supreme Court has also stated that *reliability within the meaning of Rule 702 requires a sufficiently rigorous analytical connection between that methodology and the expert's conclusions.* "Nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146, 139 L. Ed. 2d 508, 118 S. Ct. 512 (1997).

Nimely v. City of New York, 414 F.3d 381, 397 (2d Cir. 2005) (emphasis added).

Dr. Lewinski does not base his opinions on any reliable data or studies he has performed. He has done no scientific cartridge ejection studies on the Sig-Sauer, or any other weapon. He does not cite any reliable scientific methods that underpin his conclusions. The data gathered in his commissioned study has not been published or peer reviewed. In short, Dr. Lewinski has no scientific or other specialized basis for opining that "any effort at including the spent shell casing as an anchor point is fundamentally flawed."

Indeed, the gist of Dr. Lewinski's opinion is the unsurprising notion that if shell casings are disturbed, then their location can not predict the position of the shooter. No expert

PL'S MOT. *IN LIM* TO LIMIT TEST. OF DR. LEWINSKI - 7
USDC WDW No.C05-1154 JCC

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

knowledge is required for that opinion, and the suggestion that the cartridges in this case were somehow *all* disturbed should not be given the imprimatur of "expert" opinion.

       3.      <u>There is No Basis To Undermine the Cartridge Study in This Case</u>

Cartridge studies are common in police work. They were done in this case by Det. Randey Clark, relied on by the prosecution, reported to the Kent police department. See Clark Dec., Dkt. 33, Para. 8. They were relied upon by Kent's original reconstructionist, Sgt. Bob Crouch Dec., Dkt. 34, Para. 6. They were relied on by both defense reconstruction expert John Hunter (Dkt. 78-08 at 5) and plaintiff's expert Dr. Abdelouahab Abrous, see Dkt. No. 41 (relying on Clark placement of Clift)—until defendants hired Dr. Lewinski, who opines without basis that the cartridge study is "not helpful at all."

Dr. Lewinski says that the cartridge studies are flawed because "knowledge of how a weapon is held and manipulated as it is discharged is not known" and "the spent shell casing cannot be guaranteed as being undisturbed." Not only is he not qualified to make these opinions, they assume improbable facts. Essentially, Dr. Lewinski's out-of-hand rejection of the cartridge locations and the accompanying study assumes that *all three cartridges* somehow flew away from the shooting scene or were disturbed after the fact. Nothing supports this.

In short, Dr. Lewinski's opinions are not backed by expert knowledge, are not grounded in reliable scientific methods or data, and are contrary to the facts of the case that have been accepted by everyone for years. This does not meet the standards of Rule 702.

B.    **DR. LEWINSKI CANNOT OPINE THAT THE DEFENSE'S NEW ANIMATION CORRECTLY REPRESENTS OFFICER CLIFT'S LOCATION WHEN HE HAD NEVER SEEN THE ANIMATION.**

An expert opinion must be "based upon sufficient facts or data." Fed. R. Evid. 702. "An expert's opinion must be supported by 'more than subjective belief and unsupported speculation' and should be supported by 'good grounds,' based on what is known." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) (quoting *Pomella v. Regency Coach Lines, Ltd.*, 899 F.Supp. 335, 342 (E.D.Mich.1995) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993)))

PL'S MOT. *IN LIM* TO LIMIT TEST. OF DR. LEWINSKI - 8
USDC WDW No.C05-1154 JCC

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

Dr. Lewinski's supplemental report opines that the new "animation reflects the approximate location of Officer Clift, the path of the vehicle and the time required for Officer Clift's perception of the change in direction of the vehicle toward him and the time required for him to broadcast that change, before he fired his first shot." Ex. 4. He also opines that "in this animation, the next round fired as the vehicle progresses toward Officer Clift is fired in one quarter of a second. The second shot, *as illustrated in the animation*, also reflects the quarter second time gap between the shots, the approximate speed of the vehicle and the direction of travel of the vehicle." Ex. 4. Finally, Dr. Lewinski opines that "This time and realignement [of Officer Clift] is illustrated in this video recreation and occurs in the video just prior to Officer Clift's third shot." Ex. 4.

Again, all these opinions lie outside Dr. Lewinski's expertise as a psychologist and involve issues of accident and crime scene reconstruction. Beyond that, Dr. Lewinski rendered these opinions in his report in this case without even seeing the animation he was purporting to describe—and in fact the animation does not even portray the shots that Dr. Lewinski says it accurately depicts. See Lewinski Dep. (Ex. 1) at 20:17-23:7. His opinions about what the animation shows, and its accuracy, is pure speculation, which in not permitted by Rule 702.

C.  DR. LEWINSKI'S VIDEOS SHOULD NOT BE SHOWN TO THE JURY UNLESS SHOWN TO BE RELEVANT UNDER FRE 401 AND 403

"Federal Rule of Evidence 702 provides that a court may admit testimony from a qualified expert *if it will help the trier of fact understand the evidence or determine a fact in issue.* Such evidence must still be relevant; "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *United States v. 87.98 Acres of Land More or Less in the County of Merced*, 530 F.3d 899, 904 (9th Cir. 2008) (emphasis added) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) (internal quotation marks and citation omitted)).

As noted above, the videos Dr. Lewinski proposes to show the jury appear to illustrate interesting psychological phenomena and concepts, but nothing that is relevant to any issue in

PL'S MOT. *IN LIM* TO LIMIT TEST. OF DR. LEWINSKI - 9
USDC WDW No.C05-1154 JCC

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

this case. None are mentioned or relied on in either of Dr. Lewinski's reports. None appear calculated to help the jury understand evidence or determine any fact in issue, and will simply waste time. Their primary purpose appears to be to help Dr. Lewinski provide an entertaining introductory lecture in which he can establish rapport with the jury and bolster his credibility. These are not legitimate reasons for admitting evidence.

Plaintiff therefore respectfully asks the Court to prohibit defendants and Dr. Lewinski from presenting these videos to the jury pursuant to FRE 401 and FRE 403, unless the defendants demonstrate before trial that they are relevant to an issue in this case and are not distracting and wasteful of time.

### III.   CONCLUSION

Plaintiff respectfully asks this Court to enter an order limiting Dr. Lewinski's testimony to areas in which he is qualified—police psychology—and prohibiting him from opining on matters he is not, namely cartridge ejection studies and their significance, and the accuracy of a video reconstruction he had never seen and is not qualified to evaluate. Finally, Plaintiff requests an order prohibiting use of Dr. Lewinski's entertainment videos unless they are shown to have direct relevance to matters at issue in this case.

DATED this 20 day of November, 2008.

Respectfully submitted,

MacDONALD HOAGUE & BAYLESS

By_____
Timothy K. Ford, WSBA #5986
Joseph R. Shaeffer, WSBA #33273
Attorneys for Plaintiff

PL'S MOT. *IN LIM* TO LIMIT TEST. OF DR. LEWINSKI - 10
USDC WDW No.C05-1154 JCC

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961

CERTIFICATE OF SERVICE

I hereby certify that on the ___20___ day of November, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to:

Steven L. Thorsrud     sthorsrud@kbmlawyers.com
Mary Ann McConaughy     mmcconaughy@kbmlawyers.com

_____
Timothy K. Ford

PL'S MOT. *IN LIM* TO LIMIT TEST. OF DR. LEWINSKI - 11
USDC WDW No.C05-1154 JCC

MacDONALD HOAGUE & BAYLESS
1500 HOGE BUILDING
705 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1745
(206) 622-1604
FAX: (206) 343-3961