1    Hon. John C. Coughenour

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF WASHINGTON AT SEATTLE
8

9    NICOMEDES TUBAR III,                 No. C05-1154 JCC

             Plaintiff,                   JOINT STATEMENT OF DISPUTED JURY
10                                         INSTRUCTIONS

11        v.

     JASON CLIFT; and THE CITY OF KENT,
12   WASHINGTON, a municipal corporation,

13           Defendants.

14

15            JOINT STATEMENT OF DISPUTED INSTRUCTIONS

16                         (With Citations)

16        The parties hereby respectfully submit their joint statement of disputed instructions.

17

18   MacDONALD HOAGUE & BAYLESS      KEATING, BUCKLIN & McCORMACK,
                                      INC., P.S.
19

20

21   By:   /s/Joseph R. Shaeffer         By:   /s/Mary Ann McConaughy
            Timothy K. Ford, WSBA #5986        (per e-mail authority)
22          Joseph R. Shaeffer, WSBA #33273    Mary Ann McConaughy, WSBA- #8406
            Attorneys for Plaintiff           Steven L. Thorsrud WSBA #12861
23                                             Attorneys for Defendants

24

25

26

27

DISPUTED JURY INSTRUCTIONS - 1

No. C05-1154 JCC

1

**DISPUTED INSTRUCTIONS – TABLE OF CONTENTS**

2

| Inst. | Title | Source / Authority | Page | Proponent |
|-------|-------|--------------------|------|-----------|
| P 1 | Claims and Defenses | PI 1.2 (modified) | 6 | Plaintiff |
| D 2 | Claims and Defenses | PI 1.2 (modified) | 8 | Defendants |
| P 2 | Police Officer Witnesses | | 11 | Plaintiff |
| P 3 | Presumption of Intent | *N.L.R.B. v. International Broth. of Elec. Workers, Local 11, AFL-CIO* 772 F.2d 571, 576 (9th Cir. 1985) | 13 | Plaintiff |
| D 30 | Intentional Conduct Defined – Tegman Instruction | *Hanson PLC v. National Union*, 58 Wn. App. 561, 571 (1990); *Bradley v. American Smelting*, 104 Wn.2d 677, 682 (1985).WPI (5th ed.) 15.01 (modified); *Tegman v. American Med. Investigations*, 150 Wn.2d 102, 109 (2003) | 14 | Defendants |
| P 4 | No presumption regarding knowledge of a passenger in a car | *Rohde v. City of Roseburg*, 137 F.3d 1142, 1144 (9th Cir. 1998) | 17 | Plaintiff |
| D 35 | Advice of Attorney | *Knorr-Bremse v. Dana Corp.*, 385 F.3d 1337 (D.C. Cir. 2004); *Hunter v. State*, 82. Md.App. 679, 573 A.2d 85 (1990). | 19 | Defendants |
| P 5 | Stipulated Facts | PI 2.1 (modified to include stipulated facts from the pretrial order) | 21 | Plaintiff |
| P 6 | Impeachment Evidence | PI 2.8 | 22 | Plaintiff |
| P 7 | Acts and Knowledge of an Attorney Attributable to the client | *Link v. Wabash R. Co.* 370 U.S. 626, 634 (U.S. 1962) | 23 | Plaintiff |
| P 8 | False Statements | *Hattem v. U.S.* 283 F.2d 339, 343 (9th Cir. 1960). | 24 | Plaintiff |
| P 9 | Notice – When established | U.S. v. Bobadilla-Lopez 954 F.2d 519, 523 (C.A.9 (Cal.),1992) | 25 | Plaintiff |
| P 10 | Section 1983 – | PI 9.18 (first half, | 26 | Plaintiff |

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

| | | Unreasonable Seizure of person | modified); Court's SJ order Dkt. No. 156 and Ninth Circuit decision | | |
|---|---|---|---|---|---|
| | D 20 | Section 1983 – Unreasonable Seizure of person | PI 9.18 (modified) | 28 | Defendants |
| | P 11 | Section 1983 – Unreasonable Seizure – Excessive Force | PI 9.22 (modified); *Tennessee v. Garner*, 471 U.S. 1 (1985) | 31 | Plaintiff |
| | D 22 | Section 1983 – Unreasonable Seizure – Excessive Force | PI 9.22 (modified) | 34 | Defendants |
| | P 12 | Section 1983 – Municipal liability – Ratification and/ or Failure to Train/Supervise | PI 9.6, 9.7 (modified) Court's SJ order on muni liability, Dkt. 286 | 37 | Plaintiff |
| | P 13 | Deliberate indifference defined | PI 9.6 | 41 | Plaintiff |
| | D 23 | Section 1983 – Municipal liability – Negligent training | PI 9.6 | 42 | Defendants |
| | D 24 | Section 1983 – Municipal liability – Ratification | PI 9.7 | 45 | Defendants |
| | D 36 | "Bad Tactics" and Negligent Training not Grounds for Municipal Liability | *Billington v. Smith*, 292 F.3d 1177 (2000) | 48 | Defendants |
| | P 14 | Seizure defined | *See* Ninth Circuit Memorandum Opinion. *See also, California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991). See *also, Ogletree v. Columbia County*, 34 F.Supp. 2d 1349, 1360 (M.D.Fla.1997). | 51 | Plaintiff |
| | P 15 | Intentional Seizure of Plaintiff Established | Court's Order, Dkt. No. 156, and Ninth Circuit memorandum opinion | 53 | Plaintiff |
| | P 16 | Stopping a Car by Shooting | *Forrett v. Richardson*, 112 F.3d 416, 419, 420 (9th Cir.1997) (citing Tennessee v. Garner, 471 U.S. 1, 3, 105 S.Ct. 1694, 1697, 85 L.Ed.2d 1 (1985)). | 54 | Plaintiff |

DISPUTED JURY INSTRUCTIONS - 3

No. C05-1154 JCC

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

| | | | | |
|---|---|---|---|---|
| | | *See also Bray v. County of San Diego* 1994 WL 65305, 3 (9th Cir. 1994) (unpublished). | | |
| P 17 | Shots Analyzed Separately | Court's Prior Ruling on Summary Judgment, Dkt. No. 156, affirmed by Ninth Circuit memorandum disposition. *Greenidge v. Ruffin*, 927 F.2d 789, 792 (4th Cir. 1991) | 56 | Plaintiff |
| D 33 | Aiming at Driver and Mistakenly Hitting Plaintiff | *Sacramento v. Lewis*, 523 U.S. 833 (1998); *Rucker v. Harford Co.*, 946 F.2d 278, 281 (4th Cir. 1991); *Landol-Rivera v. Cosme*, 906 F.2d 791 (1st. Cir 1990); *Childress v. Arapahoe*, 210 F.3d 1154 (10th Cir. 2001). | 58 | Defendants |
| D 18 | Self Defense is a Complete Defense | | 59 | Defendants |
| D 17 | Self Defense Defined | Ninth Circuit Pattern Criminal Instruction 6.7; *Grisom v. Logan*, 334 F.Supp. 273, 279-280 (C.D. Calif. 1971); Prosser, *Law of Torts* 113 (1964). | 61 | Defendants |
| P 18 | "Unreasonable" Defined | Black's Law Dictionary | 63 | Plaintiff |
| P 19 | "Unreasonable" distinguished from malicious | *Acosta v. City and County of San Francisco*, 83 F.3d 1143, 1145 (9th Cir. 1996) | 65 | Plaintiff |
| D 34 | "Objectively Reasonable" defined | *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Saucier v. Katz*, 533 U.S. 194, 205 (2001); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); | 66 | Defendants |

DISPUTED JURY INSTRUCTIONS - 4

No. C05-1154 JCC

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

| | | | | |
|---|---|---|---|---|
| | | *Hunter v. Bryant*, 504 U.S. 224, 228 (1991) | | |
| P 20 | Negligent Supervision, Retention and Training | Court's Order, Dkt. No. 286, citing *Niece v. Elmview Group Home*, 929 P.2d 420, 426 (Wash. 1997). WPI 10.01 (negligence generally) WPI 15.01 (proximate cause) | 68 | Plaintiff |
| D 27 | Negligence definition | WPI 10.01 | 71 | Defendants |
| D 28 | Contributory Negligence | WPI 10.02, 11.01, 11.7 | 72 | Defendants |
| D 30 | Tegman Instruction | WPI (5th ed.) 15.01 (modified); *Tegman v. American Medical Investigations*, 150 Wn.2d 102, 109 (2003) | 75 | Defendants |
| D 31 | Deadly Weapon | RCW 9A.04.110(6); *United States v. Aceves-Rosales,* 832 F.2d 1155, 1157 (9th Cir. 1987) | 78 | Defendants |
| D 32 | Right and Duty to Enforce Laws; Self Defense | RCW 10.93.070; RCW 9A.04.110(4)(b); *Bailey v. Forks*, 737 P.2d 1257 (1987) | 80 | Defendants |
| P 21 | Compensatory Damages – Burden of Proof, measure | PI 5.1 PI 5.2 (modified) | 82 | Plaintiff |
| D 15 | Compensatory Damages – Burden of Proof, measure | PI 5.1 PI 5.2 (modified) | 83 | Defendants |
| D 16 | Mitigation of Damages | PI 5.3 | 86 | Defendants |
| P 22 | Punitive Damages | PI 5.5 (modified) *Pacific Mut. Life Ins. Co. v. Haslip* 499 U.S. 1, 21-22, 111 S.Ct. 1032, 1045 (1991) | 88 | Plaintiff |
| P 23 | Return of Verdict | PI 3.3 | 91 | Plaintiff |
| D 13 | Return of Verdict | PI 3.3 Modified – WPI (5th ed. 1.11 | 92 | Defendants |

DISPUTED JURY INSTRUCTIONS - 5

No. C05-1154 JCC

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**PLAINTIFF'S INSTRUCTION NO. 1**

**CLAIMS AND DEFENSES**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff Nick Tubar claims that defendant Jason Clift, a Kent police officer, violated his constitutional rights when he seized the plaintiff in an unreasonable manner by placing himself in the car's way and pointing his gun at it, and shooting the car three times. The third shot hit the plaintiff. The Court has ruled that when he stopped the car, Officer Clift seized both its occupants, including Plaintiff. Plaintiff also contends that the unreasonable seizure resulted from the policies and customs of the City of Kent under former Police Chief Ed Crawford. The plaintiff also contends the City of Kent is liable for the negligent supervision, discipline and/or retention of Officer Clift.

The plaintiff has the burden of proving these claims.

The defendants deny all the plaintiff's claims. They specifically deny that Officer Clift was trying to stop the car, and say he only shot at the car to protect himself. They deny that Officer Clift's actions were unreasonable and deny that they resulted from the policies or customs of the City of Kent. Further, defendants claim that plaintiff failed to mitigate his damages. Plaintiff denies these claims.

Ninth Circuit Pattern Jury Instruction 1.2 (modified)


Plaintiff's Proposing Statement:  This is a neutral statement of the parties' positions. Plaintiff agrees that the "seizure" issue has been conclusively decided for purposes of these instructions.

DISPUTED JURY INSTRUCTIONS - 6

No. C05-1154 JCC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Defendants' Opponents' Statement:   Attempting to "stop a car" or the Officer Clift's positioning himself cannot be deemed constitutional violations.  The defense opposes the notion that the reasonableness of these background facts have a logical connection to Fourth Amendment liability.  Plaintiff claims that Clift's running "in front of the car" either provoked Ms. Morehouse to assault him or was consciously undertaken to provide an excuse to shoot at the car to stop it.  None of the eyewitnesses, including plaintiff will testify that Officer Clift ran in front of the car, and neither will plaintiff's expert (although expert Abrous will claim he ran alongside the car in inadmissible and unfounded expert opinion that should not be admitted.)  The Court should not give this slanted, inadmissible version of the facts of the case.

    The rendition of plaintiff's injury is slanted and unnecessary detail for purposes of this instruction.     Plaintiff's municipal liability theory is "ratification" and not a "custom and policy" theory resting on a wholly separate factors which the defense believes cannot be supported on the available evidence.  Thus, this summary of that claim is incorrect.

    Defendants' strongly oppose this slanted version of their claims.  It leaves out the self-defense, contributory negligence and related issues in defense affirmative defenses.  It claims defendants "deny" the officer was trying "to stop the car."  Officer Clift certainly was trying to get the car to stop—by gaining Ms. Morehouse's voluntary compliance with his legitimate commands.  The defense adamantly denies the officer was trying to "stop" the car by shooting at it for the sole purpose of apprehending the occupants.

DISPUTED JURY INSTRUCTIONS - 7

No. C05-1154 JCC

**DEFENDANTS' INSTRUCTION NO. 2**

CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties.

The plaintiff claims that Officer Jason Clift violated his federal Fourth Amendment rights by using excessive force when he fired shots at a vehicle in which plaintiff was riding as a passenger. Plaintiff further claims that the City of Kent ratified Officer Clift's unconstitutional conduct by exonerating him from wrongdoing following the incident. The plaintiff has the burden of proving these claims.

The defendant denies those claims [and also contends that [*defendant's counterclaims and/or affirmative defenses*]].

The defendants deny each of these claims. On the state law negligence claim the City affirmatively alleges that plaintiff was contributorily negligent and that the driver's intentional criminal conduct caused plaintiff's damages. Further, Defendants claim that plaintiff failed to mitigate his damages. Plaintiff denies these claims.

[The plaintiff denies [*defendant's counterclaims and/or affirmative defenses*].]

The defendants have the burden of proof on these affirmative defenses.

9th Cir. Model Civil Jury Instruction (2007) 1.2 (modified)

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**DEFENDANTS' PROPONENTS' STATEMENT:**

The defense believes this proposal is a neutral statement of the parties' claims which accurately states the legal theories proposed by each side. Contrary to plaintiff's position "firing shots at the vehicle" is the only manner in which the officer "seized" the vehicle because until the suspect vehicle complied, and shots struck plaintiff no "seizure" (thus no Fourth Amendment violation) had even occurred. *California v. Hodari D*., 499 U.S. 621, 626, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991)

Plaintiff's Opposing Statement:  Plaintiff contends that this statement of the parties claims is biased toward the defense, in particular the suggestion that Plaintiff's contention is that plaintiff's claims are limited to excessive force in "firing shots at a vehicle."   Plaintiff contends that Officer Clift acted unreasonably in placing himself in the path of the vehicle with gun drawn, and then firing.  In the alternative, Plaintiff contends that even if the first two shots do not incur liability because Officer Clift made a "tactical error" that necessitated his shooting, that the third shot was entirely unnecessary and excessive, given that any potential danger had passed.

Regarding the Defendants' contentions, Plaintiff disagrees that Defendants have any claim for "contributory negligence" against Plaintiff.  As stated in other discussions of these instructions, Defendants now contend that Plaintiff was "negligent" in getting into the car driven by Ms. Morehouse.  But negligence is based on foreseeability, and there is no way that Mr. Tubar could have foreseen, at the time he entered the car, the events that transpired.  There is no evidence that Mr. Tubar knew the car was stolen.  And there was no reason for Mr. Tubar to believe that an officer would shoot at the vehicle in an attempt to get it to stop.  Simply put, there is no evidence that Mr. Tubar was "negligent" in getting into a car, and instructing the jury that

DISPUTED JURY INSTRUCTIONS - 9

No. C05-1154 JCC

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1    he might be only plays to potential prejudices jurors might have about a young single man going

2    to the store with a young single man late at night.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DISPUTED JURY INSTRUCTIONS - 10

No. C05-1154 JCC

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1

**PLAINTIFF'S INSTRUCTION NO. 2**

2

**POLICE OFFICER TESTIMONY**

3        There was testimony in this case by law enforcement officers. The fact that a witness is a

4  law enforcement official does not mean that his or her testimony is necessarily deserving of more

5  or less consideration or greater or lesser weight than that of another witness.

6

7

8

9  <u>Plaintiff's Proposing Statement</u>:

10       Plaintiff contends that jurors may be inclined in either direction to prejudicially place

11  more or less weight on police officer testimony, and that this is a fair and balanced instruction

12  that instructs the jury to treat police officer testimony like that of any other witness.

13

14

15  <u>Defendants' Opponents' Statement:</u>

16       Other instructions adequately cover witness credibility and jurors' obligation to be

17  impartial, see Model Instructions 1.1C, 1.11, 2.8 (proposed jointly).  This proposed instruction is

18  argumentative, and can readily be argued from existing instructions. Prejudicial error results

19  when, looking to the instructions as a whole, the substance of the applicable law [is] not fairly

20  and correctly covered." *Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1092-93 (9th Cir.

21  2007) (citing *Swinton v. Potomac Corp.*, 270 F.3d 794, 802 (9th Cir.2001)) (emphasis added).  It

22  is presumed to be prejudicial error when jury instructions incorrectly state the law.  *See ibid.*

23

24       Nor should jury instructions be "slanted or argumentative" in favor of either party.  *See*

25  *Wall Data Inc. v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 786 (9th Cir. 2006).

26  Argument must be left to counsel; it has no place in the court's instructions to the jury.

27

DISPUTED JURY INSTRUCTIONS - 11

No. C05-1154 JCC

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1   AMERICAN JURISPRUDENCE, *Improper Instructions* § 964 (2008).  Accordingly, the Court

2   should not endorse this argumentative instruction.

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

2

3

**PLAINTIFF'S INSTRUCTION NO. 3**

**PRESUMPTION OF INTENT**

4

The law presumes that a person or entity intends the natural and foreseeable

5

consequences of their conduct.

6

7

8

Plaintiff's Proposing Statement:  Plaintiff must show that Officer Clift intentionally seized

9

Plaintiff.  If Defendants agree that Officer Clift acted intentionally in all respects when he moved

10

in front of the vehicle and fired his weapon, Plaintiff agrees this particular instruction is

11

unnecessary, but that additions should be made to other instructions to reflect this admission.

12

*N.L.R.B. v. International Broth. Of Elec. Workers, Local 11, AFL-CIO*  772 F.2d 571, 576 (9th

13

Cir. 1985)

14

15

16

Defendants' Statement:  The *intentionality* of Officer Clift's shooting was discussed and *decided*

17

in the Court's order on summary judgment when it rejected defense arguments that Tubar was

18

not "seized" when a bullet intended for Morehouse struck him. Dkt.156, 6 ff.  It is not an issue

19

for jury determination.  Plaintiff refuse to acknowledge that *objective* reasonableness is the

20

standard—the only standard—for judging his acts.

21

This language is substantially duplicative of language proposed by the defense for

22

purposes of arguing Ms. Morehouse's intent on the *Tegman* issue.  To the extent plaintiff's offer

23

this language to argue about Officer Clift's intent, it erroneously misstates the legal standard:

24

there is no issue on Officer's Clift subjective intent, given the "objective reasonableness"

25

standard.

26

27

DISPUTED JURY INSTRUCTIONS - 13

No. C05-1154 JCC

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

2

**DEFENDANTS' INSTRUCTION NO. 30**

**INTENTIONAL CONDUCT DEFINED – TEGMAN INSTRUCTION**

3

4

If you find in favor of plaintiff on the state law negligence claim, you must also consider

5

whether Ms. Morehouse's intentional conduct was a proximate cause of plaintiff's injuries and

6

damages.

7

A person acts with intent to achieve a particular result if the evidence demonstrates either

8

(1) that the person wants to achieve the particular result or (2) that the person knows the

9

particular result is substantially certain to follow from his or her conduct.  This instruction

10

relating to whether the driver acted intentionally should guide your deliberations only as to Ms.

11

Morehouse's state of mind at the time, and not the conduct of other individuals or parties.

12

13

Defendants' Proponents' Statement:  The defense proposed this instruction for purposes of

14

arguing Ms. Morehouse's intent on the *Tegman* issue.  The defense added language limiting its

15

application to the issue related to Morehouse, so as to avoid confusion on the "objective

16

reasonableness" standard.

17

18

To the extent plaintiff's offered the similar language in the preceding instruction to argue

19

about Officer Clift's intent, it erroneously misstates the legal standard:  There is no issue on

20

Officer's Clift subjective intent, given the "objective reasonableness" standard.

21

Because this instruction is offered for a limited purpose, it should be modified with the additional

22

language in the last paragraph.

23

24

Plaintiff misrepresents the defense position; defendants do not claim that "fault" must be

25

apportioned.  Rather,  plaintiff must *segregate* damages caused by intentional conduct from that

26

caused by the City's alleged "negligence."  The issue is discussed in more detail in defendants'

27

trial brief.

DISPUTED JURY INSTRUCTIONS - 14

No. C05-1154 JCC

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

2

3

4

*Hanson PLC v. National Union*, 58 Wn. App. 561, 571 (1990); *Bradley v. American Smelting*, 104 Wn.2d 677, 682 (1985); WPI (5th ed.) 15.01 (modified); *Tegman v. American Medical Investigations*, 150 Wn.2d 102, 109 (2003)

5

6

7

8

9

10

<u>Plaintiff's Opposing Statement:</u>  Plaintiff disagrees that the notion of "intent" is only relevant to Plaintiff's state law negligence claim.  *See* Plaintiff's Instruction on "intent" above.  As explained in Plaintiff's trial brief, depending on the court's rulings on motions in limine with regard to Plaintff's Monell / supervision claim, the negligence claim may prove redundant and confusing, and Plaintiff may elect not to submit it to the jury.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Plaintiff also strongly disagrees that Defendants are entitled to any apportionment on the negligence claim relating to Ms. Morehouse's alleged intentional conduct.  Apportionment of "fault" does not include intentional tortfeasors, and the jury is not entitled to apportion fault to them.  Washington's statutory definition of "fault" excludes intentional conduct, so the acts of alleged intentional tortfeasors fall outside that statute and "fault" cannot be allocated to them.  Under *Welch v. Southland Corp.*, 134 Wn.2d 629, 952 P.2d 162 (1998), as affirmed in *Tegman v. Accident & Medical Investigations, Inc.*, 150 Wn.2d 102, 75 P.3d 497 (2003), negligent defendants cannot segregate damages or allocate their fault to non-party intentional tortfeasors.  *See also Rollins v. King County Metro Transit,*  148 Wash.App. 370, 376, 199 P.3d 499, 502 (Wash.App. Div. 1,2009) (citing *Welch*, noting that "under the statute, apportionment occurs only between at fault entities, which do not include intentional tortfeasors. The Supreme Court thus held that a negligent defendant is not entitled to apportion liability to an intentional tortfeasor.").  Because RCW 4.22.015 excludes intentional acts from the definition of fault, fault cannot be allocated to intentional tortfeasors under RCW 4.22.070(1).  *See Morgan v. Johnson*,

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

137 Wn.2d 887, 895-98, 976 P.2d 619, 622-23 (1999) ("a negligent tortfeasor is not entitled to

apportion liability to an intentional tortfeasor."); *Price v. Kitsap Transit*, 125 Wn.2d 456, 464,

886 P.2d 556, 560 (1994) ("[I]ntentional torts are part of a wholly different legal realm and are

inapposite to the determination of fault pursuant to RCW 4.22.070(1)."); Further, the facts of this

case fall squarely under *Welch* and not *Tegman*, as Ms. Morehouse is not a party to this

litigation.  These cases stand for the proposition that "fault" may not be apportioned to a non-

party intentional tortfeasor.

DISPUTED JURY INSTRUCTIONS - 16

No. C05-1154 JCC

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

# PLAINTIFF'S INSTRUCTION NO. 4

## NO PRESUMPTION OF KNOWLEDGE OR WRONGDOING AGAINST PASSENGER IN A CAR

It is not a crime to be a passenger in a stolen vehicle.  Absent affirmative evidence that the passenger stole the vehicle or knew it was stolen, it may not be presumed that a passenger in a stolen car knows that the car has been stolen, or that the passenger is or has been engaged in any wrongdoing.

Plaintiff's Proposing Statement:  This is a neutral and correct statement of the law.  Neither an officer nor the jury is entitled to believe that a passenger in a stolen car has done anything wrong by simply being there, absent specific evidence to the contrary.

This instruction is necessary because of Defendants' overt attempts to assign blame to Mr. Tubar for being in the car, in particular in the assertion of a "contributory negligence" instruction.  Defendants assert that they will be entitled to such an instruction, but there is no evidence that Mr. Tubar was "at fault" for getting into the vehicle with Ms. Morehouse.  As noted in other objections, the notion of contributory negligence on the facts of this case serve only to play to jurors' potential biases and prejudices about a young man's decision to ride to the grocery store with a young woman at night.

*Rohde v. City of Roseburg*, 137 F.3d 1142, 1144 (9th Cir. 1998) (law enforcement officers may not impute knowledge of a vehicle's legal condition absent evidence of more of a relationship than simply passenger and driver).

Defendants' Opponents' Statement:  This is a slanted and confusing instruction which suggests that the passenger's wrongdoing has something to do with the officer's liability for civil rights violations.  The standard for Officer Clift's having shot under the circumstances is covered in other instructions, and this language could be read to contradict those instructions.  This

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1    instruction also impliedly negates the officer's right to protect himself from the risk of imminent

2    death or substantial bodily injury.

3        Finally, if the jury is instructed on the state law negligence claim, which the Court has

4    indicated it will do, the question of Tubar's contributory negligence must be decided. This

5    instruction could be read to direct a verdict on Tubar's contributory negligence. "Contributory

6    negligence is generally [an issue] for the jury to determine from all the facts and circumstances

7    of the particular case." *Bertsch v. Brewer,* 97 Wn.2d 83, 91, 640 P.2d 711 (1982).  The Court

8    should instruct on contributory negligence unless the evidence is "such that all reasonable minds

9    would agree that the plaintiff had exercised the care which a reasonably prudent man would have

10   exercised for his own safety under the circumstances." *Id.*

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# DEFENDANTS' INSTRUCTION NO. 35

## ADVICE OF ATTORNEY

Parties have the right to seek the advice of an attorney, and you may not infer that by doing so Chief Crawford or any city official or employee receiving legal advice were subjectively aware of wrongdoing and are, for that reason, liable for violation of plaintiff's civil rights.

*Knorr-Bremse v. Dana Corp.,* 385 F.3d 1337 (D.C. Cir. 2004); *Hunter v. State,* 82. Md.App. 679, 573 A.2d 85 (1990).

## DEFENDANTS' PROPONENTS' STATEMENT:

Proof that any city official consulted an attorney about this shooting is inadmissible to permit an inference of consciousness of "guilt" or civil wrongdoing. In the criminal context, such an argument would be prosecutorial misconduct potentially resulting in a mistrial. Permitting an inference of consciousness of guilt is both illogical and unwarranted. The "fact to be inferred— the consciousness of guilt—is not made more probable (or less probable) from the mere seeking of legal advice or representation, and so evidence of the predicate fact is simply irrelevant. On pure evidentiary grounds, it is inadmissible." *Hunter v. State*, 82 Md. App. 679, 691, 573 A.2d 85 (1990); *Knorr-Bremse v. Dana Corp.,* 383 F.3d 1337, 1147 (D.C. Cir. 2004).

The defense agrees that if the instruction is given it should be modified to apply to all parties.

Plaintiff's Opponent Statement:  This instruction directly contradicts this Court's finding in its Order Denying Summary Judgment on Municipal Liability, Dkt. No. 286 at 9, that the fact that the City's insurance defense lawyers began billing on a case coded "adv. Tubar" showed that the

DISPUTED JURY INSTRUCTIONS - 19

No. C05-1154 JCC

1

2

City had knowledge of the potential for constitutional claims to be made against the City.  At

best, this instruction would confuse the jury because to the extent the billings can be used to

3

4

establish notice of constitutional claims, they are evidence of one element of Plaintiff's

municipal liability claim.

5

6

Further, while there are well-founded policies against prosecutors using the seeking of

7

advice against a *criminal defendant* at trial, there are no such prohibitions in a civil case.  *See*

8

*Settlegoode v. Portland Public Schools*, 371 F.3d 503, 520 (9th Cir. 2004):

9

> Kafoury is not a prosecutor, subject to "constraints and responsibilities that don't apply to other lawyers." *United States v. Kojayan,* 8 F.3d 1315, 1323 (9th Cir.1993). As an advocate in a civil lawsuit, he was perfectly entitled to argue that the jury should disbelieve the opposing party's witnesses for any number of reasons, including that they may have been guided by advice of their lawyers.

10

11

12

13

Finally, this instruction is slanted toward the defense in that it only refers to "Chief Crawford or

14

any city official or employee."  If the Court is inclined to give this instruction, it should at least

be modified to state that no inference is to be drawn against any party for seeking legal advice.

15

16

Plaintiff is aware that Defendants intend to assert that Mr. Tubar changed his recollection of

17

events after seeking advice from attorneys.

18

19

20

21

22

23

24

25

26

27

DISPUTED JURY INSTRUCTIONS - 20

No. C05-1154 JCC

1

**PLAINTIFF'S INSTRUCTION NO. 5**

2

**STIPULATIONS OF FACT**

3

4      The parties have agreed to certain facts. You should therefore treat these facts as having

5      been proved.  I will read those facts to you now.

6

7      1.      Shortly after midnight on June 26, 2003, plaintiff Nico Tubar was a passenger in a
2001 Kia Rio, License No. 168 LNB that had been stolen by Heather Morehouse.

8      2.      Ms. Morehouse was Mr. Tubar's neighbor in an apartment building next door to a
small office building 10618 Kent Kangley Road.

9

10     3.      At the time, Jason Clift was a Kent police officer acting within the scope of his
duties as such, and under color of state law.

11     4.      At approximately 11:50 pm on June 25, 2003, Officer Clift saw the Kia in a
parking lot behind the office building.  He radioed license information to Valley

12     Communications Center and was informed that the vehicle was stolen.

13

14     Plaintiff's Proposing Statement:  Here, the plaintiff proposes instruction on all of the stipulated

15     facts included in the agreed pretrial order.  If there were other undisputed factual matters the

16     defendants' wanted to include, they certainly could have proposed such at the time of the pretrial

17     order filing.

18     Ninth Circuit Pattern Instruction Number 2.1 (modified with language from the Parties' pretrial

19     order.

20

21     Defendants' statement:  Although there are many factual matters the parties do not dispute, we

22     do not concur that these or any others of the multiple facts that are not disputed should be singled

23     out and thereby emphasized.  We withdraw our objection.

24

25

26

27

DISPUTED JURY INSTRUCTIONS - 21

No. C05-1154 JCC

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# PLAINTIFF'S INSTRUCTION NO. 6

# IMPEACHMENT EVIDENCE—WITNESS

The evidence that a witness has been convicted of a crime may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

Plaintiff's Proposing Statement:  Plaintiff agrees that this is a correct statement of the law.  The scope of what is discussed at trial regarding Ms. Morehouse's conviction for Assault III is the subject of a motion in limine.  In that motion, Plaintiff argued that the fact of her conviction – that is the fact that she had been convicted of a felony, not the nature of the felony--could be admitted, but not for the purpose Defendants' propose, namely, for proof that Ms. Morehouse was intending to drive the car at Officer Clift.  Plaintiff incorporates those arguments by reference here.  Dkt. 250.

Defendants' Opposition Statement:  The defense does not agree that evidence of Morehouse's conviction comes in *only* for impeachment purposes—although it clearly comes in for that purpose.  The evidence is powerful direct evidence of the soundness of investigation information supporting investigators' and prosecutors' conclusions she had committed assault, and therefore Officer Clift was justified in shooting in self defense. This is directly relevant to, and defeats, the Fourth Amendment claim against Officer Clift and particularly the "ratification" claim.

Ninth Circuit Pattern Jury Instruction 2.8

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**PLAINTIFF'S INSTRUCTION NO. 7**

**ACTS AND KNOWLEDGE OF ATTORNEY ATTRIBUTABLE TO CLIENT**

Each party is bound by the acts of his lawyer.  An action taken by an attorney on behalf of the attorney's client is attributable to the client as if the client himself had performed the act.

Similarly, a person or entity is deemed to have knowledge of facts and circumstances known to their attorneys.

Plaintiff's Proposing Statement:  The first paragraph of this instruction should be given only if the court denies both parties' motions in limine regarding Heather Morehouse's guilty plea.  If evidence regarding the circumstances leading up to that plea is admitted, this paragraph would appropriately inform the jury that the actions of defendants' lawyers and Kent's City Attorney are properly attributed to the defendants.

The second paragraph of this proposed instruction embodies the principle recognized by this court in its order denying Kent's motion for summary judgment.  Dkt. 286.  There the court found that that the fact that the City's insurance defense lawyers began billing on a case coded "adv. Tubar" showed that the City had knowledge of the potential for constitutional claims to be made against the City.

*Link v. Wabash R. Co*., 370 U.S. 626, 634 (1962)

Defendants' Opposition Statement:   The defense is at a loss about what evidence plaintiff will offer of defendants' attorneys' "acts" or "knowledge of facts and circumstances" this is supposed to apply to.  Therefore, they cannot concur in this instruction.

DISPUTED JURY INSTRUCTIONS - 23

No. C05-1154 JCC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**PLAINTIFF'S INSTRUCTION NO. 8**

**FALSE STATEMENTS**

If you find that any witness in this trial has willfully testified falsely as to any material

fact in the case, then you are at liberty wholly to disregard all of the testimony of that witness, if

you consider it to be wholly unworthy of credence. However, you are not obliged to so disregard

all of the testimony of such witness and should not do so if, and to the extent that, in your

opinion any part or parts of such testimony be worthy of belief.

Plaintiff's Proposing Statement:  Plaintiff believes this instruction should be added to the last

section of Pattern Instruction 1.11 (see joint instructions).  It is an accurate statement of the law.

*Hattem v. U.S*.  283 F.2d 339, 343 (9th Cir. 1960).

Defendants' Opponents' Statement:  Defendant objects to this instruction; adequate instructions

are available for assessing witness credibility.

DISPUTED JURY INSTRUCTIONS - 24

No. C05-1154 JCC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**PLAINTIFF'S INSTRUCTION NO. 9**

**NOTICE – WHEN ESTABLISHED**

A person or entity is deemed to be on notice of wrongdoing either when the person or entity has actual knowledge of the wrongful act, or when the surrounding circumstances would have put any reasonable person on notice that the wrongful acts have occurred.

Plaintiff's Proposing Statement:  This is a correct statement of the law, and provides direction both on Plaintiff's municipal liability claims and the state law negligence claim.  *U.S. v. Bobadilla-Lopez*  954 F.2d 519, 523 (9th Cir.1992); *See also, e.g., Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*  522 F.3d 1049, 1057 (9th Cir. 2008) (discovery rule in civil cases for purposes of tolling of statute of limitations).

Defendants' Opponents' Statement:  The legal standard for "ratification" is very specific.  This instruction would allow plaintiff to argue that Chief Crawford "ratified" some conclusory assessment of events (as plaintiff sees them) embedded in the array of events and circumstances in the shooting investigation.  The Model ratification instruction should not be embellished in this way.

DISPUTED JURY INSTRUCTIONS - 25

No. C05-1154 JCC

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

**PLAINTIFF'S INSTRUCTION NO. 10**

**PARTICULAR RIGHTS—FOURTH AMENDMENT—UNREASONABLE SEIZURE OF PERSON—GENERALLY**

As previously explained, the plaintiff has the burden to prove that the acts of defendant Jason Clift deprived the plaintiff of particular rights under the United States Constitution.  In this case, the plaintiff alleges the defendant deprived him of his particular rights under the Fourth Amendment to the Constitution when he placed himself in front of the car in which plaintiff was a passenger with gun drawn and shot, and thereby seized the plaintiff.

Under the Fourth Amendment, a person has the right to be free from an unreasonable seizure of his person. In order to prove the defendant Officer Clift deprived the plaintiff of this Fourth Amendment right, the plaintiff must prove the following elements by a preponderance of the evidence:

1. Officer Clift seized the plaintiff's person;

2. in seizing the plaintiff's person, Officer Clift acted intentionally; and

3. the seizure was unreasonable.

I am instructing you that Officer Clift intentionally seized the Plaintiff when he placed himself in front of the car in which plaintiff was a passenger with gun drawn and shot plaintiff, so the first and second elements require no proof.

You must determine whether Officer Clift's seizure of Plaintiff was reasonable or unreasonable.  You may determine that the seizure was unreasonable in one of two ways:  You may find that Officer Clift acted unreasonably under the totality of the circumstances in shooting the plaintiff, or you may find that the third shot alone was unreasonable.  If you find that either Officer Clift's seizure was unreasonable, your verdict should be for the Plaintiff.  If, however,

DISPUTED JURY INSTRUCTIONS - 26

No. C05-1154 JCC

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1    ==you find that Officer Clift acted reasonably, your verdict on this claim should be for Defendant==

2    ==Clift.==

3    Plaintiff's Proposing Statement:  The first half of this instruction is nearly word for word from

4    the model instruction. (modified language is shaded).  Plaintiff also agrees with Defendants that

5    the entire second have of the model instruction should not be used (beginning with the words "A

6    defendant 'seizes' the plaintiff's person when . . ."), but for different reasons.  Both this Court

7    and the Ninth Circuit have already held that Defendant Clift seized Mr. Tubar by shooting him.

8    So the jury need not consider factors to determine whether or not Plaintiff was seized.  They do,

9    however, have to determine whether that seizure was reasonable or unreasonable.

10         Plaintiff's added language (shaded) is intended to harmonize this general instruction with

11   the specific excessive force instruction.

12         Plaintiff also contends that the last paragraph of the model instruction discussing

13   intentionality need not be given because there is no dispute that Officer Clift acted intentionally

14   when he fired his weapon.  Plaintiff will move for a directed verdict on this issue if it is not

15   stipulated to by Defendants.

16   Ninth Circuit PI 9.18 (modified); Court's SJ order Dkt No. 156; Ninth Circuit Memorandum

17   Opinion at 6.

18   Defendants' Opponents' Statement:  The language describing the two ways liability can be found

19   can be argued, and unnecessarily focuses on plaintiff's perspective of the case.  Again, using the

20   word "reasonable" when objective reasonableness is the standard creates confusion by implying

21   reasonableness means something different.  See proponents' statement in the following

22   instruction.

DISPUTED JURY INSTRUCTIONS - 27

No. C05-1154 JCC

1

**DEFENDANTS' INSTRUCTION NO. 20**

2

PARTICULAR RIGHTS – FOURTH AMENDMENT –
UNREASONABLE SEIZURE OF A PERSON - GENERALLY

3

4

As previously explained, the plaintiff has the burden to prove that the acts of defendant

5

Officer Jason Clift deprived the plaintiff of particular rights under the United States Constitution.

6

In this case, the plaintiff alleges ~~defendant~~ Officer Clift deprived him of his rights under the

7

Fourth Amendment to the Constitution when Officer Clift fired at the stolen vehicle striking

8

plaintiff.

9

Under the Fourth Amendment, a person has the right to be free from an unreasonable

10

seizure of his person.  In order to prove the defendant deprived the plaintiff of this Fourth

11

Amendment right, the plaintiff must prove, by a preponderance of the evidence, that when

12

Officer Clift fired at the stolen vehicle, striking plaintiff, this seizure of plaintiff was not

13

objectively reasonable.

14

15

~~1. [Name[s] of applicable defendant[s]] seized the plaintiff's person;~~
~~2. in seizing the plaintiff's person, [name[s] of same person[s]] acted intentionally; and~~
~~3. the seizure was unreasonable.~~

16

17

~~A defendant "seizes" the plaintiff's person when [he] [she] restrains the plaintiff's liberty by~~
~~physical force or a show of authority. A person's liberty is restrained when, under all of the~~

18

~~circumstances, a reasonable person would not have felt free to ignore the presence of law~~
~~enforcement officers and to go about [his] [her] business.~~

19

~~In determining whether a reasonable person in the plaintiff's position would have felt free to~~

20

~~leave, consider all of the circumstances, including:~~

21

~~1. the number of officers present;~~
~~2. whether weapons were displayed;~~

22

~~3. whether the encounter occurred in a public or nonpublic setting;~~
~~4. whether the officer's manner would imply that compliance would be compelled; and~~

23

~~5. whether the officers advised the plaintiff that [he] [she] was free to leave.~~

24

25

9th Cir. Model Civil Jury Instruction (2007) 9.18 (modified)

26

27

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1

**DEFENDANTS' PROPONENTS' STATEMENT:**

2

Defendants *are not waiving* their right to further appeal the trial court's finding that a

3

Fourth Amendment "seizure" occurred on this fact, i.e., when a bullet intended for Morehouse

4

struck plaintiff. Defendants are aware the Ninth Circuit agreed with the trial court on this point,

5

but defendants want to preserve their opportunity to further appeal this issue at a later time.

6

Defendants will object to giving this instruction at all because they contend whether a seizure

7

occurred in this case should be decided by the Court in defendants' favor as a matter of law, not

8

as a matter of fact by the jury. *Defendants only offer this modified version because they*

9

*understand the Court will instruct on the issue.*

10

11

The added sentence at the end of the second paragraph (before the numbered items) is

12

added to focus the jurors on plaintiff's Fourth Amendment claim against the officer.

13

The entire remainder of Model Instruction is stricken for two reasons: (1) the seizure

14

issue has previously been decided by the Court as a matter of law (albeit, defendants contend in

15

error), and (2) the language of the Model Instruction requires jurors to consider facts about what

16

*plaintiff knew* as if that has a bearing on whether he was seized. The considerations set forth are

17

not only irrelevant here, but also confusing. The instruction could be misinterpreted to imply

18

that the officer's liability depends upon *plaintiff's* understanding of events—instead of the

19

"objective reasonableness" standard.

20

Defendants' version uses the term "objectively reasonable" because it is the proper

21

standard. Use of the term "reasonable" without that qualifier creates confusion about the proper

22

standard for deciding liability, which is: an assessment of the officer's *acts* based upon the

23

circumstances and information he had at the time, but without any consideration of his subjective

24

state. *See* proponents' statement for Instruction 34, below.

25

26

27

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Plaintiff's Opposing Statement:  Plaintiff believes his proposed instruction is a more accurate statement of the law.  *See above.*  Defendants' proposed instruction improperly focuses the reasonableness inquiry on the officer's shooting "at the stolen vehicle" rather than on his actions as a whole.  It also fails to properly direct the jury to analyze the three shots separately, and that Officer Clift may be found liable for the third shot alone, even his actions prior to that could be considered "reasonable."  And it omits entirely any mention of excessive force.  As the Ninth Circuit held, "a jury could conclude that Clift was never in danger, and even assuming that he acted reasonably when he fired the first two shots, the vehicle was no longer a threat when he fired the third shot."  Memorandum Opinion at 6.

Plaintiff agrees that the multi-factored test for determination of whether a seizure has occurred should not be included when using this model instruction as applied to the facts of this case.

Also, this instruction fails to include the Court's prior ruling that Officer Clift seized the plaintiff by shooting him.  Dkt. No. 156.

1

## PLAINTIFF'S INSTRUCTION NO. 11

2

### PARTICULAR RIGHTS—FOURTH AMENDMENT—UNREASONABLE SEIZURE OF PERSON—EXCESSIVE FORCE

3

4        In general, a seizure of a person is unreasonable under the Fourth Amendment if a police

5   officer acts unreasonably or uses excessive force in making a seizure.  Thus, in order to prove an

6   unreasonable seizure in this case, the plaintiff must prove by a preponderance of the evidence

7   that the officer acted unreasonably or used excessive force when he seized plaintiff.

8

9        Under the Fourth Amendment, a police officer may only use such force and means to

10  effect a seizure of a person as is "objectively reasonable" under all of the circumstances.  In other

11  words, you must judge the reasonableness of a particular use of force from the perspective of a

12  reasonable officer on the scene and not with the 20/20 vision of hindsight.

13       In determining whether the officer used excessive force in this case, consider all of the

14  circumstances known to the officer on the scene, including:

15

16       1. The severity of the crime or other circumstances to which the officer was responding;

17       2. Whether the plaintiff posed an immediate threat to the safety of the officer or to others;

18       3. Whether the plaintiff was actively resisting arrest or attempting to evade arrest by

19       flight;

20       4. The amount of time and any changing circumstances during which the officer had to

21       determine the type and amount of force that appeared to be necessary;

22

23       5. The type and amount of force used;

24       6. The availability of alternative methods to take the plaintiff into custody;

25   A police officer may not use deadly force solely to seize a person for a nonviolent crime such as

26   car theft.

27

DISPUTED JURY INSTRUCTIONS - 31

No. C05-1154 JCC

1

2
Plaintiff's Proposing Statement:  Plaintiff believes that this statement accurately reflects the law,

3
and harmonizes the general instruction on "unreasonable seizure" and this more specific

4
"excessive force" instruction.  (modifications are shaded).  The addition of language about acting

5
unreasonably is necessary to explain to the jury that Officer Clift may have acted unreasonably

6
on the whole in seizing plaintiff, or in his use of force through the third shot.

7
        The final statement is an accurate statement of the law, and brings the instruction as a

8
whole into the factual context of this case.

9

10
Ninth Circuit Pattern Jury Instruction 9.22 (modified); *Tennessee v. Garner*, 471 U.S. 1 (1985).

11
Defendants' Opponents' Statement:  Defendants object to the use of the term "unreasonable" in

12
in the absence of the qualifier "objectively (unreasonable)."  The statement used at the end of the

13
first paragraph "that the officer acted unreasonably or used excessive force when he seized

14
plaintiff" suggests that acting unreasonably and using excessive force are different things--and

15
finding *either* could result in liability. As has been repeatedly briefed by the parties, "bad tactics"

16
or officer negligence does not independently amount to a Constitutional violation. *Billington v.*

17
*Smith*, 292 F.3d 1177, 1190 (9th Cir. 2002).

18

19
        By now plaintiff's approach is crystal clear:  he intends to argue the general

20
"unreasonableness" of Clift's actions in a manner indistinguishable from negligence.  Even if an

21
officer "negligently provokes" the need for deadly force, it does not implicate § 1983.  *Id.*

22
Consequently, a juror could conclude that any unreasonable act occurring during the event

23
amounts to a § 1983 violation.  This is a misstatement of law, compounded by the fact that

24
plaintiff's proposed instruction qualifies the factors listed as pertaining only to "excessive force"

25
(not reasonableness).

26

27

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

Inexplicably, plaintiff's version *completely* leaves defendants' theory out of the case. Plaintiff leaves out the Model language "in defending himself" in the first sentence which is critical to the defense theory.   The officer believed that it was necessary to "defend himself," as provided for in the Model Instruction.  Since the seizure issue has been decided, it is confusing to add "when he seized plaintiff."  It is more straightforward to simply refer to plaintiff being shot.

Referring to whether "plaintiff" posed a threat or was actively resisting arrest (paragraphs 2-3) is misleading in the facts of this case.  See defense proposal on this instruction, below.  The focus should be on "the vehicle," not "the plaintiff (Tubar)" in the factors for the jury to consider.  That is consistent with the facts and previous briefing of the parties.

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

**DEFENDANTS' INSTRUCTION NO. 22**

2

PARTICULAR RIGHTS – FOURTH AMENDMENT – UNREASONABLE SEIURE OF A
PERSON EXCESSIVE (DEADLY AND NONDEADLY FORCE)

3

4

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police

5

officer uses excessive force in ~~making~~ attempting to make a lawful arrest or in defending

6

himself. Thus, in order to prove an unreasonable seizure in this case, the plaintiff must prove by

7

a preponderance of the evidence that the officer used excessive force when he fired shots at the

8

stolen vehicle.

9

Under the Fourth Amendment, a police officer may only use such force as is "objectively

10

reasonable" under all of the circumstances. In other words, you must judge the reasonableness of

11

a particular use of force from the perspective of a reasonable officer on the scene and not with

12

the 20/20 vision of hindsight.

13

14

In determining whether the officer used excessive force in this case, consider all of the

15

circumstances known to the officer on the scene, including:

16

17

1.      The severity of the crime or other circumstances to which the officer was
        responding;

18

19

2.      Whether the ~~plaintiff~~ vehicle posed an immediate threat to the safety of the
        officer ~~or to others~~;

20

3.      Whether the driver was actively resisting arrest or attempting to evade
        arrest by flight;

21

22

4.      The amount of time and any changing circumstances during which the
        officer had to determine the type and amount of force that appeared to be
        necessary; and

23

24

5.      The type and amount of force used.

25

9th Cir. Model Civil Jury Instruction (2007) 9.22 (modified)

26

27

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

**DEFENDANTS' PROPONENTS' STATEMENT:**

2

Officer Clift does not have to prove he had probable cause to arrest Tubar, the passenger.

3

Plaintiff concedes there was probable cause to suspect the driver of a crime.  Plaintiff concedes

4

the Officer Clift had probable cause to arrest Morehouse, and therefore was authorized to use

5

lawful force in attempting to accomplish the arrest.  Furthermore, self defense is a complete

6

defense for the officer, even though plaintiff, a non-suspect, was injured.  *See* defendants'

7

statement for their Instruction No. 18 (Self Defense is a Complete Defense).  Finally, the Model

8

Instruction includes language about self defense, but nowhere defines the term.

9

10

Defendants make the changes in item 2, because there is no claim here that *plaintiff*

11

*Tubar* represented the risk—the approaching vehicle did.  Finally, "or to others" is deleted

12

because there is no claim that anyone other than Officer Clift was endangered by Ms.

13

Morehouse's actions.

14

15

Plaintiff's Opposing Statement:  Plaintiff objects to the focus being placed on the vehicle and

16

driver in items 3 and 4.  Officer Clift seized the Plaintiff, and it is that seizure that must be

17

assessed for reasonableness and excessive force, not the seizure of the vehicle or driver.

18

19

Plaintiff strongly objects to Defendants' omission of element 6 of the Model instruction,

20

which requires consideration of "the availability of alternative methods to take plaintiff into

21

custody."  This element is particularly important under the facts of this case, where Officer Clift

22

has admitted that he "could have" stepped to safety and let the car pass but chose instead to try to

23

stop the car on foot, and where he had called for backup and officers were arriving imminently.

24

Officer Clift knew the license plate and make of the vehicle, the tire was flat, and in all

25

likelihood, the car would have been stopped within minutes had he simply let it go.

26

27

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

2

Plaintiff believes his proposed instruction more appropriately instructs the jury under the facts of this case.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

**PLAINTIFF'S INSTRUCTION NO. 12**

**SECTION 1983 CLAIM AGAINST LOCAL GOVERNING BODY DEFENDANTS BASED ON RATIFICATION AND/OR POLICY OF FAILURE TO TRAIN AND SUPERVISE OR DISCIPLINE—ELEMENTS AND BURDEN OF PROOF**

In order to prevail on his Section 1983 claim against defendant City of Kent the plaintiff must prove policies of the City of Kent caused him to be deprived of his Fourth Amendment rights.  In this case, there are two ways the plaintiff may prove this.

One way plaintiff may prove this is by showing ratification.  To prove this, the plaintiff must prove each of the following elements by a preponderance of the evidence:

> 1. Officer Jason Clift acted under color of law and his acts caused plaintiff to be deprived of his Fourth Amendment right to be free from unreasonable seizure;

> 2. Chief Crawford ratified Officer Clift's acts and the basis for them, that is, Chief Crawford knew of and specifically approved of Officer Clift's acts;

> 3.  Chief Crawford had final policymaking authority within the City of Kent concerning the approval or disapproval of the acts of Officer Clift.

A second and alternative way the plaintiff may prove his § 1983 claim against defendant City of Kent is by proving a policy of failure to supervise and/or discipline.  To prove this, the plaintiff must prove each of the following elements by a preponderance of the evidence:

> 1. Officer Jason Clift acted under color of law and the acts of Officer Clift caused plaintiff to be deprived of his rights to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution;

> 2. the supervision policies and practices of the defendant City of Kent and Chief Crawford were not adequate to supervise and/or discipline Officer Clift in the use of force during arrests, a usual and recurring situation with which officers in his position must deal;

> 3. the defendant City of Kent or its Police Chief were deliberately indifferent to the obvious consequences of the failure to supervise and/or discipline Officer Clift adequately; and

> 4. the failure to provide adequate training or supervision caused the deprivation of the plaintiff's rights; that is, the defendant's failure to supervise and/or discipline is so

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

I instruct you that Officer Clift was acting "under color of law," and that Chief Crawford had final "policymaking authority" for purposes of approving or disapproving of Officer Clift's acts, and therefore those elements require no proof.

The plaintiff needs only to prove one of these sets of elements, not both. If you find the plaintiff has proved either of these alternative sets of elements, your verdict should be for the plaintiff against the City of Kent on Plaintiff's Section 1983 claim. If, on the other hand, the plaintiff has failed to prove any one or more of these elements on each set of elements, your verdict should be for the defendant.

Plaintiff's Proposing Statement: This instruction is a combination of two model instructions and has therefore been "modified" throughout. A combined statement using Model Instructions 9.6 and 9.7 is appropriate here, where both theories of liability are at issue and either will lead to municipal liability. The jury should be clearly instructed that either theory is sufficient, and that the plaintiff need not prove both theories to establish liability.

To avoid overlength and confusion, Plaintiff has separated the definition of "deliberate indifference" included in Model Instruction 9.6.

Ninth Circuit Pattern Jury Instruction 9.6, 9.7 (modified)
Court's SJ order on muni liability, Dkt. 286

Defendants' Opponents' Statement: The defense believes it is more appropriate to instruct on different theories in different instructions. Defendant respectfully disagrees with the Court's reasoning that ratification "does not require knowledge that the approved conduct is actually

DISPUTED JURY INSTRUCTIONS - 38

No. C05-1154 JCC

unconstitutional" but only that the policymaker has "knowledge of the *alleged* constitutional violation and its factual basis prior to ratifying the conduct in question." Dkt. 286 at 9. In this situation the police chief had exactly the same knowledge as an independent prosecutor who prosecuted Ms. Morehouse, the defense attorney who counseled her to enter a plea, and a superior court judge who accepted her guilty plea. It is not reasonable to expect the police chief to have come to some other conclusion because plaintiff criticizes Officer Clift for approaching the vehicle, or plaintiff's experts think Clift should have been questioned earlier in the investigation. There is no evidence of fraud or wrongdoing in the investigation.

The fact that the City sought legal advice is not proof of a guilty conscience on the part of someone at the City. The fact a party sought legal advice is not admissible to permit an inference of knowledge of wrongdoing. *Hunter v. State,* 82 Md.App. 679, 691, 573 A.2d 85 (1990). *Knorr-Bremse v. Dana Corp.*, 383 F.3d 1337, 1347 (D.C. Cir. 2004).

Defendant City also does not agree that the jury should be instructed on the failure to train, discipline, or supervise theory of municipal liability. Plaintiff will not be able to prove improper training or discipline rises to the level of municipal liability. He will not be able to show a policy of custom of "deliberate indifference" to situations that lead to the *unlawful* use of deadly force by officers. All examples of the use of deadly force will provide ample proof of the dangers the involved officers confronted when they shot—even plaintiff's experts Lou Reiter does not argue otherwise. Rather, he criticizes the officers' approaching suspect vehicles in Clift's three shootings to minimize the risk *criminals would react by assaulting them*. Yet all three circumstances involved suspects who repeatedly ignored commands to stop, fled, and then assaulted police officers. According to Reiter, officers should simply back away in the face of

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

assault.   This theory of liability requires strict compliance with causation and culpability

requirements, which plaintiff has not, and can not, meet.

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

**PLAINTIFF'S INSTRUCTION NO. 13**

**DELIBERATE INDIFFERENCE DEFINED**

"Deliberate indifference" is the conscious choice to disregard the consequences of one's acts or omissions. The plaintiff may prove deliberate indifference in this case by showing that the defendant City of Kent knew its failure to supervise or discipline adequately made it highly predictable that Officer Clift would engage in conduct that would deprive persons such as the plaintiff of his rights.

Plaintiff's Proposing Statement:  Plaintiff has made this portion of Model Instruction 9.6 a separate instruction, but has changed no words of the definition.  Plaintiff believes that the municipal liability theories should be combined in one instruction for the reasons stated in the previous instruction.  Separation of this instruction simply keeps the previous instruction from becoming too long.

Ninth Circuit Pattern Instruction 9.6 (excerpt)

Defendants' Opponents' Statement:  Defendant City does not agree that the jury should be instructed on the failure to train, discipline, or supervise theory of municipal liability which would require defining "deliberate indifference." The Model Instruction already includes this definition, and presumably should be used if the Court instructs on the theory.  *See additional comments on Plaintiff's Proposed Model Instruction 9.6*

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

**DEFENDANTS' INSTRUCTION NO. 23**

2

SECTION 1983 CLAIMS AGAINST LOCAL GOVERNING BODY DEFENDANTS BASED
ON RATIFICATION – ELEMENTS AND BURDEN OF PROOF

3

4

In order to prevail on his § 1983 claim against defendant City of Kent alleging liability

5

based on ratification by a final policymaker, the plaintiff must prove each of the following

6

elements by a preponderance of the evidence:

7

1.   Officer Clift acted under color of law;

8

2.   The acts of Officer Clift deprived the plaintiff of his particular rights under the United
States Constitution as explained in later instructions;

9

3.   Chief Ed Crawford acted under color of law;

10

4.   Chief Ed Crawford had final policymaking authority from defendant City of Kent
when he reviewed the circumstances of this shooting following an investigation to
determine if Officer Clift followed city policy; and

11

12

5.   Chief Ed Crawford ratified Officer Clift's acts and the basis for them, that is, Ed
Crawford knew that Officer Clift's shootings under the circumstance of this case and
other cases was unjustified and the Chief nevertheless specifically approved of
Officer Clift's acts.  In the alternative, Chief Crawford ratified Officer Clift's acts
knowing that he (Chief Crawford) was relying upon a grossly flawed investigation
which in some material manner misrepresented or obscured the unjustified nature of
Officer Clift's conduct.

13

14

15

16

A person acts "under color of law" when the person acts or purports to act in the

17

performance of official duties under any state, county, or municipal law, ordinance, or

18

regulation. I instruct you that Officer Clift acted under color of law.

19

I instruct you that Chief Ed Crawford had final policymaking authority from defendant

20

City of Kent concerning the act at issue and, therefore, the fourth element requires no proof.

21

If you find the plaintiff has proved each of these elements, and if you find that the

22

plaintiff has proved all the elements he is required to prove under Instructions [Model

23

Instructions 9.18 and 9.22 (as modified)], your verdict should be for the plaintiff. If, on the other

24

hand, the plaintiff has failed to prove any one or more of these elements, your verdict should be

25

for the defendant.

26

9th Cir. Model Civil Jury Instruction (2007) 9.6

27

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

2

**DEFENDANTS' STATEMENT:**

3

4

Defendant City does not waive its right to appeal the Court's rejection of its summary

5

judgment motion on municipal liability based on claims of ratification.  *Defendant City is only*

6

*offering this modified version of the Model Instruction because it understands the Court will*

7

*instruct on the issue.*

8

Defendant respectfully disagrees with the Court's reasoning that ratification "does not

9

require knowledge that the approved conduct is actually unconstitutional" but only that the

10

policymaker has "knowledge of the *alleged* constitutional violation and its factual basis prior to

11

ratifying the conduct in question."  Dkt. 286 at 9.  In this situation the police chief had exactly

12

the same knowledge as an independent prosecutor who prosecuted Ms. Morehouse, the defense

13

attorney who counseled her to enter a plea, and a superior court judge who accepted her guilty

14

plea.  It is not reasonable to expect the police chief to have come to some other conclusion

15

because plaintiff criticizes Officer Clift for approaching the vehicle, or plaintiff's experts think

16

Clift should have been questioned earlier in the investigation and there is no evidence of fraud or

17

wrongdoing in the investigation.

18

The fact that the City sought legal advice is not proof of a guilty conscience on the part of

19

someone at the City.  *Id.* at 9.  The fact a party sought legal advice is not admissible to permit an

20

inference of knowledge of wrongdoing.  *Hunter v. State,* 82 Md.App. 679, 691, 573 A.2d 85

21

(1990).  *Knorr-Bremse v. Dana Corp.*, 383 F.3d 1337, 1347 (D.C. Cir. 2004).

22

Plaintiff's Opposing Statement:  Plaintiff disagrees with Defendants' slanted instruction in

23

Element 5 of this instruction.  As the Court has held, Dkt. No. 286, Chief Crawford need not

24

have known that Officer Clift's actions were in fact unconstitutional.  Rather, he must have been

25

on notice of their potential unconstitutionality.  For purposes of ratification, Plaintiff need not

26

27

DISPUTED JURY INSTRUCTIONS - 43

No. C05-1154 JCC

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1  show that Officer Clift's "other" shootings were unjustified, or that Chief Crawford approved of

2  these "other" acts.

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

**DEFENDANTS' INSTRUCTION NO. 24**

SECTION 1983 CLAIMS AGAINST LOCAL GOVERNING BODY DEFENDANTS BASED
ON FAILURE TO TRAIN – ELEMENTS AND BURDEN OF PROOF

In order to prevail on his §1983 claim against defendant City of Kent alleging liability

based on a policy of failure to train its police officers, the plaintiff must prove each of the

following elements by a preponderance of the evidence:

1. The acts of Officer Clift deprived the plaintiff of his particular rights under the
   United States Constitution as explained in later instructions;

2. Officer Clift acted under color of law;

3. The training policies of the defendant City of Kent were not adequate to train
   Officer Clift to handle the usual and recurring situations with which he must
   deal;

4. The defendant City of Kent was deliberately indifferent to the obvious
   consequences of its failure to train its police officers adequately; and

5. The failure of the defendant City of Kent to provide adequate training caused
   the deprivation of the plaintiff's rights by Officer Clift; that is, the defendant's
   failure to train is so closely related to the deprivation of the plaintiff's rights as
   to be the moving force that caused the ultimate injury.

A person acts "under color of law" when the person acts or purports to act in the

performance of official duties under any state, county, or municipal law, ordinance, or

regulation.  I instruct you that Officer Clift acted under color of law.

"Deliberate indifference" is the conscious choice to disregard the consequences of one's

acts or omissions.  The plaintiff may prove deliberate indifference in this case by showing that

the defendant City of Kent knew its failure to train adequately made it highly predictable that its

police officers would engage in conduct that would deprive persons such as the plaintiff of his

rights.

If you find the plaintiff has proved each of these elements, and if you find that the

plaintiff has proved all the elements he is required to prove under Instruction [9th cir. 9.8], your

verdict should be for the plaintiff.  If, on the other hand, the plaintiff has failed to prove any one

or more of these elements, your verdict should be for the defendant.

9th Cir. Model Civil Jury Instruction (2007) 9.7

DISPUTED JURY INSTRUCTIONS - 45

No. C05-1154 JCC

1

**DEFENDANTS' STATEMENT:**

2

3       *Defendant City is only offering this modified version of the Model Instruction if the Court*

4   *decides to instruct on a municipal civil rights theory of unconstitutional training, hiring or*

5   *supervision using Model Instruction 9.7.*  Defendant City opposes instructing on the failure to

train, discipline, or supervise theory of municipal liability.

6
        Plaintiff will not prove improper training or discipline rises to the level of municipal
7
liability.  He will not be able to show a policy of custom of "deliberate indifference" to situations
8
that lead to the *unlawful* use of deadly force by officers.  All examples of the use of deadly force
9
will provide ample proof of the dangers the involved officers confronted when they shot—even
10
plaintiff's expert experts not argue otherwise.
11
        Plaintiff criticizes Officer Clift's approaching suspect vehicles in his three shootings to
12
minimize the risk *criminals would react by assaulting them*. Yet all three circumstances involved
13
suspects who repeatedly ignored commands to stop, fled, and then assaulted police officers.
14
According to expert Reiter, officers should simply back away in the face of assault.  This theory
15
of liability requires strict compliance with causation and culpability requirements, which plaintiff
16
has not, and can not, meet.
17
        Plaintiff's attempts to argue Officer Clift's emotional state somehow has a bearing on this
18
case should be rejected.  In *Davis v. City of Ellensburg*, 86 F.2d 1230 (9th Cir. 1989), the Ninth
19
Circuit ruled as a matter of law there is no "deliberate indifference" when a police department
20
seeks professional psychological advice about its officer's ability to perform their jobs, and
21
follows advice received.  That is exactly what happened in this case, and claims about Officer
22
Clift's emotional situation are not admissible on any theory.
23

24      Plaintiff's Opposing Statement:  Plaintiff thinks this instruction is more appropriately combined
25  with Model Instruction 9.6.  *See* above.
26

27

DISPUTED JURY INSTRUCTIONS - 46

No. C05-1154 JCC

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Plaintiff also disagrees that this instruction should be solely limited to a failure to adequately "train" Officer Clift and others.  The words "discipline or supervise" should be substituted in every instance in which the instruction mentions training.

Also, this is a municipal liability instruction and "Officer Clift" should be replaced by "The City of Kent" in the introduction and "The defendant" should be replaced with "Officer Clift" in the instruction ("I instruct you that Officer Clift acted under color of law").

DISPUTED JURY INSTRUCTIONS - 47

No. C05-1154 JCC

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

**DEFENDANTS' INSTRUCTION NO. 36**

"BAD TACTICS" AND NEGLIGENT TRAINING
NOT GROUNDS FOR MUNICIPAL LIABILITY

You may have heard evidence or argument that Officer Clift acted improperly because he approached the stolen vehicle before it started to move or later in positioning of himself in the parking lot as the car was moving.  In addition, you may have heard claims that Officer Clift's driving or use of vehicle impact maneuvers in other instances were improper.  You may not consider this evidence in determining Fourth Amendment liability of Officer Clift or the City— whether or not you believe Officer Clift should not have approached the car or positioned himself as he did, or whether he should have been retrained.

In considering the Fourth Amendment Claim against Officer Clift, you should consider if it was objectively reasonable for him to shoot under the circumstances.  You may consider his actions leading up to his decision to shoot.  But even if you believe his actions were unwise, he may still defend himself if an objectively reasonable officer in the same situation could conclude he was facing an imminent threat of death or substantial bodily harm at the time he decided to shoot.

You may not consider alleged, improper or unwise decisions and actions of the officer in determining the City's civil rights liability, but you may consider them on the state law negligence claim.

*Billington v. Smith*, 292 F.3d 1177 (2001)

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

**DEFENDANTS' PROPONENTS' STATEMENT:**

Given the many criticisms of various tactical decisions made by Officer Clift, the Court should recognize that jurors may conclude that faulty, "negligent," or unwise decision making by the officer *before* the shooting events set the stage that lead to the shooting.  Arguments that Officer Clift "got himself into" a situation where he had to shoot do not suffice to violate constitutional rights when the act in question is not itself a constitutional violation.  *Billing v. Smith*, 292 F.3d 1177 (2001).

Arguments that the claims about tactics apply to the City are wrong.  Plaintiff cannot meet the substantial burden of proving both "policy or custom" and "moving force" causation for the Court to instruct on municipal liability based upon training by the City.  Any evidence plaintiff has falls far short of "deliberate indifference."  The City will object to the Court's instructing on the state law negligence claim, but recognizes the Court's previously stated decision that it would do so.  Thus the evidence of "negligence" in training may be deemed appropriate on the state law claim.  In that case, this cautionary instruction in vital to avoid the confusion of conflicting standards applicable to the different theories of liability—if the municipal civil rights theory of unconstitutional acts by the City relating to training is given.  *Billington v. Smith*, 292 F.3d 1177 (2001)

Plaintiff's Opposing Statements:  Plaintiff objects to such a one-sided slanted instruction.  As this Court and the Ninth Circuit have already held, a jury may find a constitutional violation if it concludes that Officer Clift was "never in danger."  This includes whether he unreasonably concluded that his life was in danger.

In addition, Plaintiff's contends that Officer Clift was attempting to make an unreasonable seizure of a stolen vehicle using only his body and a gun by intentionally

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1   positioning himself in the only exit to the parking lot with his gun pointed at the vehicle.  Officer

2   Clift has repeatedly stated and testified that he was trying to stop the vehicle.  Plaintiff has

3   argued that, objectively viewed, Officer Clift's conduct indisputably constituted a stop and an

4   unreasonable one.  See Pl's motion for partial summary judgment.  Dkt. 190.  The court has

5   denied summary judgment on that claim, but plaintiff expects to renew that motion at the close

6   of evidence because he does not believe any rational juror could accept the defendant's

7   arguments on this point.

8

9        This instruction also has the potential to confuse the jury, insofar as it appears to conflict

10  with the Instruction on Excessive Force, which states that the jury is to determine whether the

11  force used was "objectively reasonable under all of the circumstances."  Plaintiff submits that

12  "all of the circumstances" include the circumstances that led to Officer Clift's position in the

13  parking lot.

14

15       Regarding municipal liability, Plaintiff contends that the City was deliberately indifferent

16  to the rights of citizens, including Plaintiff, in its failure to discipline or supervise its officers,

17  including Officer Clift.  Officer Clift's repeated failures to follow proper procedure, whether

18  intentionally or not, are evidence of the City's deliberate indifference.

19

20

21

22

23

24

25

26

27

DISPUTED JURY INSTRUCTIONS - 50

No. C05-1154 JCC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# PLAINTIFF'S INSTRUCTION NO. 14

## SEIZURE DEFINED

A defendant "seizes" the plaintiff's person when he restrains the plaintiff's liberty by physical force or a show of authority. A person's liberty is restrained when, under all of the circumstances, a reasonable person would not have felt free to ignore the presence of law enforcement officers and to go about his business.

A police officer who uses force or a show of authority to stop a vehicle "seizes" that vehicle and all passengers inside it.

The Court already ruled that a "seizure" occurred when Officer Clift shot the plaintiff.

Plaintiff's Proposing Statement:  This instruction is a correct statement of the law, and is the law of the case.  *See* Ninth Circuit Memorandum Opinion at 6.  *See also, California v. Hodari D*., 499 U.S. 621, 626, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991). See *also, Ogletree v. Columbia County*, 34 F.Supp. 2d 1349, 1360 (M.D.Fla.1997).

Even though the jury will not be called on to decide whether or not a seizure occurred, as that has been conclusively established as a matter of law, the jury should be instructed on the definition of seizure so that it may determine whether that seizure was reasonable.  Specifically, the jury will be required to determined whether Officer Clift's show of force was reasonable, and whether his shots, including the third shot, were reasonable.

Defendants' Opponents' Statement:  Defendants *are not waiving* their right to further appeal the trial court's finding that a Fourth Amendment "seizure" occurred in this case when a bullet intended for Morehouse struck plaintiff.  Defendants are aware the Ninth Circuit agreed with the

DISPUTED JURY INSTRUCTIONS - 51

No. C05-1154 JCC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

trial court on this point, but defendants want to preserve their opportunity to further appeal this issue at a later time.  Furthermore, whether there was a "seizure" in this case has already been decided as a matter or law—although the defense claims it was decided in error.

Plaintiff's proposed seizure instruction misstates the law when it proclaims that "[a] defendant 'seizes' the plaintiff's person when he restrains the plaintiff's liberty by physical force or a show of authority."  As a matter of law, there is no seizure unless there is an application of force or a *submission to the assertion to authority*.  Like these authorities acknowledge, the scope of the seizure turns on when Plaintiff "submitted to" Officer Clift's show of force.  According to Clift, he did not submit until the third shot.  This is a question of fact.  *See* Dkt. 156.  Plaintiff's suggestion that a "show of authority" *is* a seizure is incorrect.  He may not unilaterally increase the scope of the inquiry by eviscerating the limitation articulated in the *Hodari D.* case which he cites.

Defendants object to giving this instruction for the stated reasons, and because lack of knowledge of the passenger's criminal status is irrelevant.  The officer had probable cause to suspect Morehouse of car theft, and a right and duty to try to apprehend her.  He was also privileged to act in self-defense when he was threatened by Morehouse's driving.

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## PLAINTIFF'S INSTRUCTION NO. 15

## INTENTIONAL SEIZURE OF PLAINTIFF ESTABLISHED

I am instructing you that the first two elements have been met.  In other words, you must accept as proven that Officer Clift did seize plaintiff, and that he acted intentionally, when he shot plaintiff.  It will be for you to decide whether, under all the circumstances, Officer Clift acted unreasonably in doing so.

Plaintiff's Proposing Statement:  Plaintiff believes it will necessary for the jury to fully understand the elements required for Plaintiff to prove liability, then to instruct the jury on the elements that have been admitted to or established as a matter of law.  It is not simply that some elements are "not at issue" – rather it is that those elements have been established.

Court's SJ Order Dkt. 156 and Ninth Circuit Memorandum

Defendants' Opponents' Statement:  Again, plaintiff focuses on intent—a subjective consideration—and asks the Court instruct that intent has been conclusively determined.  This is highly confusing given plaintiff's instructions elsewhere suggesting the jury must consider the officer's intent.  The defense believes that instructing and defining multiple elements, then informing the jury the elements are not at issue unnecessarily confuses and lengthens the instructions.  Defendants' offer their proposed version of Model Instruction 9.18 at page ____.

DISPUTED JURY INSTRUCTIONS - 53

No. C05-1154 JCC

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

# PLAINTIFF'S INSTRUCTION NO. 16

## STOPPING A CAR BY SHOOTING

To prevent the escape of a felony suspect, a police officer may use deadly force only when it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a threat of serious harm, either to the officer or others.

Shooting at a suspected stolen car in order to stop it from escaping, or to stop, seize, or arrest the occupants of the car for stealing it, is excessive and unreasonable.

Plaintiff's Proposing Statement:  This is a correct statement of the law.  *Forrett v. Richardson*, 112 F.3d 416, 419, 420 (9th Cir.1997) (citing Tennessee v. Garner, 471 U.S. 1, 3, 105 S.Ct. 1694, 1697, 85 L.Ed.2d 1 (1985)).  *See also Bray v. County of San Diego*  1994 WL 65305, 3 (9th Cir. 1994) (unpublished).

This instruction is especially warranted if any of the Defense instructions on self-defense are given in order to balance the suggestion in those instructions that Officer Clift was acting in self defense.

Defendants' Opponents' Statement: This instruction sets out an erroneous standard for considering Officer Clift's conduct.  Plaintiff has repeatedly focused on arguments about Officer Clift's "real" motive in shooting, which plaintiff claims was merely to "stop the car."  This argument necessarily requires jurors to consider the officer's subjective motivation when the objective reasonableness standard is the only proper focus of deliberations. Giving this instruction would encourage consideration of subjective motivation, and likely constitute reversible error for that reason.

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

　　　　The instruction is confusing without defining "felony suspect" and "probable cause." The second paragraph is argumentative and a comment on the evidence.  Furthermore, matters relating to the officer's authority to shoot are fully and adequately covered elsewhere.  By making no mention of the officer's right to self-defense, the instruction is incomplete concerning the officer's right to use deadly force.

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

**PLAINTIFF'S INSTRUCTION NO. 17**

**SHOTS ANALYZED SEPARATELY**

In assessing the reasonableness of Officer Clift's use of force in this case, you must separately analyze and determine the reasonableness of each shot fired. Reasonableness must be determined exclusively upon an examination and weighing of the information Officer Clift possessed immediately prior to and at the very moment he fired each shot.

If you find that any of those shots were unreasonable and excessive and were fired in an effort to stop or seize the plaintiff or the car in which he was riding, you should award plaintiff compensation for any damages caused by that unreasonable use of force.

Plaintiff's Proposing Statement: This is a correct statement of the law, and is the law of the case. Both this court and the Ninth Circuit stated that liability could be established if the jury found that Officer Clift was never in danger to begin with, OR that he fired the third shot unreasonably after any potential danger had passed.

Ninth Circuit Pattern Jury Instruction 9.18 (modified)

Court's Prior Ruling on Summary Judgment, Dkt. No. 156, affirmed by Ninth Circuit memorandum disposition; *Greenidge v. Ruffin*, 927 F.2d 789, 792 (4th Cir. 1991)


Defendants' Opponents' Statement: This instruction directs jurors how they should decide and evaluate disputed evidence. This instruction directly negates language of Model Instruction 9.22 stating that in evaluating excessive force the jurors should consider "The amount of time and any changing circumstances during which the officer had to determine the type and amount of force that appeared to be necessary." Instruction 9.22 specifically warns *against* the reasoning of the proposed instruction. The instruction invites hindsight evaluation negating the notion that events

DISPUTED JURY INSTRUCTIONS - 56

No. C05-1154 JCC

should be viewed from the officer's on-scene perspective.  Expert testimony will address what it

known about human performance, especially under stress:  a person cannot react instantaneously,

and that it takes time to perceive changing circumstances and adjust he physical response

accordingly.  Specifically, the expert will testify there is ample evidence that officers do not

experience shooting each shot in a tense and dangerous circumstance as discrete and independent

decision.The jury is not to apply the "20/20 vision of hindsight."  *Reid v. Ford,* 2005 U.S. Dist

Lexis 11184, 17 (M.D. N.C. 2005)(officer's actions initiated while the danger is apparent, but

concluded after it has passed, should not be dissected into milliseconds to form basis for judging

actions.)

It is unclear why plaintiff cites Model Instruction 9.18, which neither states, nor infers,

anything about weighing shots separately.

If the jury believes Officer Clift—as they are entitled to do at trial—the three shots were

"one transaction," occurring during the course of an attempt to run him down.  Plaintiff may

dispute this, but his theory can be argued within the factors set forth in Model Instruction 9.22

("In determining whether the officer used excessive force in this case, consider all of the

circumstances known to the officer on the scene").

DISPUTED JURY INSTRUCTIONS - 57

No. C05-1154 JCC

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

**DEFENDANTS' INSTRUCTION NO. 33**

2

AIMING AT DRIVER AND MISTAKENLY HITTING PASSENGER

3

If you find that Officer Clift intentionally fired his weapon in an effort to hit the

4

driver, but mistakenly hit the passenger instead, no Fourth Amendment seizure occurred, and

5

your verdict should be for the officer on the Fourth Amendment claim.

6

7

8

9

**DEFENDANTS' PROPONENTS' STATEMENT:**

10

Defendants reiterate at the outset that they ***are not waiving*** their right to further appeal

11

the trial court's finding that a Fourth Amendment "seizure" occurred on this facts, i.e., when a

12

bullet intended for Morehouse struck plaintiff.  Defendants are aware the Ninth Circuit agreed

13

with the trial court on this point, but defendants want to preserve their opportunity to further

14

appeal this issue at a later time.

15

*Sacramento v. Lewis,* 523 U.S. 833 (1998); *Rucker v. Harford Co.,* 946 F.2d 278, 281 (4th Cir.

16

1991); *Landol-Rivera v. Cosme*, 906 F.2d 791 (1st. Cir 1990); *Childress v. Arapahoe,* 210 F.3d

17

1154 (10th Cir. 2001).

18

19

20

21

Plaintiff's Opposing Statement:  As Defendants concede, this instruction is not appropriate given

22

this Court's and the Ninth Circuit's opinions.  It is the law of the case that Officer Clift seized

23

Plaintiff.

24

25

26

27

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**DEFENDANTS' INSTRUCTION NO. 18**

SELF DEFENSE IS COMPLETE DEFENSE

If you find under all the circumstances it was reasonable for Officer Clift to shoot at the vehicle to protect himself from substantial bodily harm or death, your verdict should be for Officer Clift even though a bullet struck the plaintiff passenger.

*Grisom v. Logan,* 334 F.Supp. 273, 279-280 (C.D. Calif. 1971); Prosser, *Law of Torts* 113 (1964); *cf. Scott v. Clay County*, 205 F.3d 867, 878 (6th Cir. 2000).

**DEFENDANTS' PROPONENTS' STATEMENT:**

See Defendants' Proponents' Statement at Defendants' Proposed Instruction No. 17.

Plaintiff's Opposing Statement:  Plaintiff objects to this instruction as it is an incorrect statement of the law.  In particular, this instruction does not take into account the fact that Officer Clift shot *three times* and that the three shots must be analyzed separately.  This is the law of the case.  *See* Court's Prior Ruling on Summary Judgment, Dkt. No. 156, affirmed by Ninth Circuit memorandum disposition. *See also Greenidge v. Ruffin*, 927 F.2d 789, 792 (4th Cir. 1991)

This is particularly important in this case, where there is officer testimony and forensic evidence that Officer Clift fired twice, paused, and fired again.  Defendants' instruction would direct the jury to render a verdict for the defendants if the jury concludes that Officer Clift reasonable perceived that he was *ever* in danger.  In essence, the instruction states that Officer Clift was justified in shooting as many times as he wanted, for as long as he wanted, so long as he reasonably perceived himself to be in danger *at some point*.  The law is otherwise.  Each shot must have been reasonable under all the circumstances presented to Officer Clift at the time.

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1   This includes the determination of whether or not it was reasonable to for Officer Clift to

2   continue firing after the car had passed him and had nearly come to a complete stop.

3       Moreover, plaintiff contends that any need Officer Clift may have had to defend himself

4   was created by his own unreasonable conduct by seizing plaintiff by placing himself in front of a

5   moving car with gun drawn and pointed.

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1
2

**DEFENDANTS' INSTRUCTION NO. 17**

3

SELF-DEFENSE DEFINITION

4

~~The defendant~~ Officer Clift has offered evidence of having acted in self-defense.  Use of

5

force is justified when a person reasonably believes that it is necessary for the defense of oneself

6

or another against the immediate use of unlawful force.  However, a person must use no more

7

force than appears reasonably necessary under the circumstances.

8

Force likely to cause death or ~~great~~ substantial bodily harm is justified in self-defense

9
10

only if a person reasonably believes that such force is necessary to prevent death or ~~great~~

11

substantial bodily harm.

12

~~The government must prove beyond a reasonable doubt that the defendant did not act in~~

13

~~reasonable self-defense.~~

14

15

Ninth Circuit Model Criminal Jury Instruction No. 6.7 (modified)

16

17

**DEFENDANTS' PROPONENTS' STATEMENT**

18

Defendant Clift has affirmatively pleaded self defense.  The Model Instruction relating to

19
20

excessive force (No. 9.22) refers to an officer "defending himself," but nowhere defines self-

defense for the § 1983 context.  Self defense is a complete defense in a § 1983 case if an officer

21

reasonably defends himself against an assailant.  Here the assailant was Ms. Morehouse driving a

22

vehicle directing toward him, in which plaintiff was a passenger.  The officer "bears no liability

23

for accident injury to a third party." *Grisom v. Logan*, 334 F. Supp. 273, 279-280 (C.D. Calif.

24

1971); Prosser, *Law of Torts* 113 (1964).

25

26

27

DISPUTED JURY INSTRUCTIONS - 61

No. C05-1154 JCC

1   The Model Instruction is modified to specifically indicate "Officer Clift."  The final

2   sentence is deleted because this is not a criminal case.  The word "substantial" is exchanged for

3   "great" to confirm with the use of the term "substantial bodily harm" consistently throughout.

4

5

6   Plaintiff's Opposing Statement:  Plaintiff objects to this instruction for all the same reasons

7   stated in opposition to the previous instruction.  As stated above, this instruction does not take

8   into account the fact that Officer Clift fired *three times* and that these shots must be analyzed

9   separately.

10      In addition, Plaintiff objects to the conclusory nature of the introductory comment that

11  "Officer Clift has offered evidence of having acted in self-defense."  This statement is slanted

12  and unnecessary.

13      Moreover, plaintiff contends that any need Officer Clift may have had to defend himself

14  was created by his own unreasonable conduct by seizing plaintiff by placing himself in front of a

15  moving car with gun drawn and pointed.

16

17

18

19

20

21

22

23

24

25

26

27

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

**PLAINTIFF'S INSTRUCTION NO. 18**

2

3

**"UNREASONABLE" DEFINED**

4

"Unreasonable" means not guided by reason.  Actions that are the result of panic are not

5

reasonable.

6

7

8

<u>Plaintiff's Proposing Statement</u>:  The language of this instruction is taken from Black's Law

9

Dictionary, 1537 (7th ed. 1999).  The principle it embodies is established by the Fourth

10

Amendment case law reflected in Model Instruction 9.22, which defines reasonableness for

11

purposes of the Fourth Amendment in objective terms.  Plaintiff believes this specific instruction

12

is needed to amplify that definition in that instruction because the proposed testimony from the

13

defense expert witness Dr. Lewinski that the shooting of the plaintiff was reasonable even

14

though objectively unnecessary, because Officer Clift was in a panic and could not stop shooting.

15

<u>Defendants' Opponents' Statement</u>:    This slanted definition should not be given.  Defining

16

"unreasonable," when "objective reasonableness" is the applicable standard, misstates the

17

applicable law. "Objective reasonableness" is explained in Model Instruction 9.22, which

18

includes multiple factors for jury consideration.  Plaintiff requests an instruction defining

19

"unreasonable", as a matter of law, to mean "not guided by reason," and further ordering

20

"actions that are the result of panic are not reasonable."  This is a transparent attempt to hijack a

21

factual issue and lower plaintiff's burden of proof, contrary to the Model Instructions.

22

23

Plaintiff selectively quotes Black's Law Dictionary.  Besides Plaintiff's cited text, the

24

unreasonable is further defined as "… irrational or capricious."  Black's Law Dictionary (8th ed.

25

2004).  This section, which is adverse to the plaintiff, was not volunteered.

26

27

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1

2      Plaintiff may argue his theory—that panic is never reasonable—but the ultimate question

3  is for the jury.   A dictionary definition for the word "reasonable" is incorrect and unprecedented.

4  In excessive force lawsuits, courts defer to juries to determine what is and is not reasonable in a

5  given context.  *See, e.g., Fikes v. Cleghorn*, 47 F.3d 1011, 1014 (9th Cir. 1995) (instructing jury

6  to consider the totality of the circumstances); *Forrester v. City of San Diego*, 25 F.3d 804, 806

7  (9th Cir. 1994) ("[w]hether the amount of force used was reasonable is usually a question of fact

8  to be determined by the jury") (citation omitted).  This likely explains plaintiff's failure to offer

9  any jurisprudence supporting this unprecedented instruction.

10      This definition—as quoted by Plaintiff—is analytically incorrect.  A reaction of brief

11  panic can be perfectly reasonable *in context.*  An elderly widow who faints during the course of a

12  home-invasion robbery did not act "unreasonably," despite the fact that fainting is not "guided

13  by reason."

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DISPUTED JURY INSTRUCTIONS - 64

No. C05-1154 JCC

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

**PLAINTIFF'S INSTRUCTION NO. 19**

2

3

**"UNREASONABLE" DISTINGUISHED FROM MALICIOUS**

4        A person, including a police officer, can act unreasonably even if he or she does not act

5    with any evil motive or intent.  The question is whether the officer's actions are objectively

6    reasonable in light of the facts and circumstances confronting him without regard to his

7    underlying intent or motivation. An officer's "evil" intentions will not make a constitutional

8    violation out of an objectively reasonable use of force; nor will an officer's good intentions make

9    an objectively unreasonable use of force constitutional.

10

11

12    Plaintiff's Proposing Statement:  This instruction instructs the jury *not* to focus on subjective

13    intent, in particular not to require subjective evil motive.  Instead, the jury should assess whether,

14    given all of the circumstances, the officer's actions were reasonable.  *Acosta v. City and County*

15    *of San Francisco,*  83 F.3d 1143, 1145 (9th Cir. 1996)

16

17

18    Defendants' Opponents' Statement:  Defendants' do not object to this instruction.

19

20

21

22

23

24

25

26

27

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**DEFENDANTS' INSTRUCTION NO. 34**

OBJECTIVELY REASONABLE - DEFINITION

"Objectively reasonable" means you should consider the officer's actions without regard to his subjective motivation.  You must consider whether an another officer in the same situation Officer Clift confronted when shots were fired, and possessing the information known to Officer Clift, would have been reasonable to respond as the defendant officer did.  The subjective motivation of the officer has no bearing on whether a particular seizure is reasonable or not under the Fourth Amendment.

If you find that the defendant officer made a mistake about some factual matter or in some action he took in the situation, this does not necessarily mean he violated plaintiff's rights as long as under all the surrounding circumstances the actions were reasonable.

*Graham v. Connor,* 490 U.S. 386, 397 (1989); *Saucier v. Katz,* 533 U.S. 194, 205 (2001); *Anderson v. Creighton,* 483 U.S. 635, 641 (1987); *Hunter v. Bryant*, 504 U.S. 224, 228 (1991)

**DEFENDANTS' PROPONENTS' STATEMENT:**

Defendants believe this instruction is important given the heavy reliance by plaintiff on attempts to argue Officer Clift's subjective state, including "he fired shots not because he was in danger, but because he wanted to "stop" the suspects"—his so-called "real purpose;" and "he paused before firing shots to demonstrate his control and intention to shoot directly at the two." Plaintiff will also claim the officer was distracted by a personal phone call, disturbed about private events in his life, etc—all issues relating to the officer's subjective state and drawing attention away from what should be the jurors' focus—what he knew about the situation at hand

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1   and the objective reasonableness of his response.  Defendants have requested these matters be

2   excluded as irrelevant to the legal issues presented.

3        Also, it is readily foreseeable that the jury may need guidance because the passenger was

4   struck by a bullet, instead of the driver.  Model Instructions do not address how "reasonable

5   mistakes" should be handled, yet the caselaw is clear on the subject.

6        Case law has repeatedly held that "mistakes" do not make objectively reasonable conduct

7   unconstitutional.  That is particularly important information for the jury in this case given officer

8   Clift's testimony that he was always aiming at Morehouse.  Given plaintiff's heavy reliance on

9   claims about Officer Clift's subjective state, this instruction will be necessary.

10

11   Plaintiff's Opposing Statement:  This proposed instruction contradicts the defendants' position

12   that Officer Clift was not attempting to stop the vehicle, even though, objectively viewed, all of

13   his conduct was directed toward that end.  This instruction could also mislead the jury, by its

14   suggestion that the officer's expressed intentions to stop the vehicle are irrelevant.  This

15   instruction also wrongly replaces the concept of a reasonable officer with "another officer." The

16   fact some other officer in this situation might have engaged in the same unconstitutional conduct

17   as Officer Clift does not make his conduct reasonable.

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1

PLAINTIFF' S INSTRUCTION NO. 20

2

**NEGLIGENT SUPERVISION, DISCIPLINE OR RETENTION**

3

Negligence is the failure to exercise ordinary care. It is the doing of some act that a

4

reasonably careful person would not do under the same or similar circumstances or the failure to

5

do some act that a reasonably careful person would have done under the same or similar

6

circumstances.

7

Employers have a duty to use reasonable care to supervise and discipline their employees

8

in a manner that reduces the risk that they will harm others with whom they are likely to come

9

into contact.

10

In order to prove his claim against the City of Kent for negligent supervision, discipline

11

or retention, Officer Clift, plaintiff must show that the City of Kent failed to exercise ordinary

12

care that a reasonable municipality would have exercised under similar circumstances in

13

supervising or disciplining or retaining Officer Clift, and that this failure proximately caused

14

injury to plaintiff.

15

16

17

Plaintiff's Proponent Statement:

18

This instruction is based on the Court's Order, Dkt. No. 286, citing *Niece v. Elmview*

19

*Group Home*, 929 P.2d 420, 426 (Wash. 1997); WPI 10.01 (negligence generally); WPI 15.01

20

(proximate cause).  As explained above, and as explained in Plaintiff's trial brief, depending on

21

the court's rulings on motions in limine with regard to Plaintff's Monell / supervision claim, the

22

negligence claim may prove redundant and confusing, and Plaintiff may elect not to submit it to

23

the jury.

24

25

Defendants' arguments regarding Officer Clift's negligence and the scope of his duties

26

was already disposed of by the Court in its order denying summary judgment.  Dkt. No. 286.

27

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

Further, Defendants' arguments that the City could wrongfully be held liable for a failure to supervise even if Officer Clift were not at fault is not logical.  The instruction specifically states that the failure to train or supervise must have "proximately caused" the injury to the plaintiff.

Defendants' instructions only include "negligence" as a general proposition without any context, and without instructing the jury that the City may be held liable for its own negligence, wholly apart from its vicarious liability for Officer Clift's own negligence (which Plaintiff does not allege).

As indicated above, and in plaintiff's trial brief, should the court find plaintiff's evidence of Monell liability based on inadequate supervision and discipline, plaintiff's claim for negligence may be withdrawn to avoid confusion.

Defendants' Opponents' Statement: The City has admitted Clift was acting within the course and scope of his duties.  Thus, if plaintiff had made a state law claim against Clift, and Clift was found liable on that claim, the City would be automatically liable to plaintiff—making it entirely unnecessary for the plaintiff to prove "negligent hiring, retention," etc.  Tubar presumably knows this, but decided *not* to bring a state law claim against Clift for tactical reasons.

This Court denied the defense summary judgment motion on this issue stating that the City's admission of scope has no consequence for whether the negligent hiring and retention theory should also be available:   the scope of liability "test does not dictate whether the employer can be held *directly liable* for breaching its own duty of care through negligent hiring, supervision, or training."  Dkt. 286 at 12.  The Court cites *Smith v. Sacred Heart Med. Ctr.,* 144 Wn.App 537, 543, 184 P.3d 646 (2008), but that case is a typical example of employee acts (sexual conduct with plaintiff) outside the scope of his employment, precisely the circumstance

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1   under which the alternative negligent hiring, supervision theory is applied.  That is not the

2   situation is this case.

3        The Court's ruling *uncouples* Officer Clift's liability for alleged wrongdoing in the

4   shooting and makes possible City liability even if Officer Clift did nothing wrong.  A jury could

5   find Officer Clift was *acting lawfully* within the scope of his employment, but the City still could

6   be held "negligent" under the state theory (on some training or supervision issue) *despite* the fact

7   that Officer Clift was not tortiously liable. That is not countenanced in the law.  *If the underlying*

8   *conduct was not tortious, whether the City negligently supervised or trained Officer Clift is*

9   *irrelevant*.  As stated in *Shielee v. Hill*, 47 Wn.2d 362, 366, 287 P.2d 479 (1955), "[I]t seems

10  clear that so far as the liability of the employer to a third person is concerned, his failure to hire

11  only competent and experienced employees does not *of itself* constitute an independent ground of

12  actionable negligence."

13       Furthermore, plaintiff's proposal presents a convoluted open-ended question about

14  whether the exercise of care was related to the proximate cause of the injury.  This completely

15  disregards the "knew or should have known" analysis that would apply in a proper case, as well

16  as the "risk of danger" determination, both stated in *Niece*.    And, the proposed instruction

17  imposes a duty on employers—absent from case law—to "supervise… in a manner that *reduces*

18  the risk" of harm.  This duty to "lower risk"—as distinct from ordinary care—is seemingly made

19  up.  This instruction should not be given.

DISPUTED JURY INSTRUCTIONS - 70

No. C05-1154 JCC

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

2

3

**DEFENDANTS' INSTRUCTION NO. 27**

NEGLIGENCE – ADULT- DEFINITION

Negligence is the failure to exercise ordinary care.  It is the doing of some act that a reasonably careful person would not do under the same or similar circumstances or the failure to do some act that a reasonably careful person would have done under the same or similar circumstances.

WPI (5th ed.) 10.01 (modified)

Plaintiff's Opposing Statement:  This instruction is incomplete, and therefore confusing.  The instruction gives no context, and does not let the jury know that it may find the City liable for its own negligence, whether or not the jury finds that Officer Clift acted negligently.

As indicated above, and in plaintiff's trial brief, should the court find plaintiff's evidence of Monell liability based on inadequate supervision and discipline, plaintiff's claim for negligence may be withdrawn to avoid confusion.

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1

**DEFENDANTS' INSTRUCTION NO. 28**

2

CONTRIBUTORY NEGLIGENCE – DEFINITION

3

ORDINARY CARE – ADULT – DEFINITION
DETERMINING THE DEGREE OF CONTRIBUTORY NEGLIGENCE

4

<u>If you find for plaintiff on the state law claim, you must then consider defendants' claim</u>

5

<u>that plaintiff was contributorily negligent</u>.  Contributory negligence is negligence on the part of a

6

person claiming injury or damage that is a proximate cause of the injury or damage claimed.

7

<u>Defendants claim that, by accompanying Ms. Morehouse under the circumstances,</u>

8

<u>plaintiff was contributorily negligent.  Every person has a duty to exercise ordinary care for his</u>

9

<u>own safety</u>.  Ordinary care means the care a reasonably careful person would exercise under the

10

same or similar circumstances.

11

If you find ~~contributory negligence,~~ <u>that plaintiff was contributorily negligent</u>, you must

12

determine the degree of negligence, expressed as a percentage, attributable to the person

13

claiming injury or damage. The court will furnish you a special verdict form for this purpose.

14

Your answers to the questions in the special verdict form will furnish the basis by which the

15

court will apportion damages, if any.

16

17

18

19

WPI (5th ed.) 11.01, 10.02, 11.07 (modified)

20

21

**DEFENDANTS' PROPONENTS' STATEMENT:**

22

If the Court instructs the jury on the negligent hiring and supervision issue, it should then

23

also instruct on the issue of plaintiff's contributory negligence.  Mr. Tubar's testimony will

24

establish that shortly before the shooting, Ms. Morehouse was quizzing him, over drinks, on

25

whether he took "speed," and offered him some of her prescription medication.  Yet, he accepted

26

her invitation to drive to a nearby store stating they should take her new "fast" car.  He watched

27

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1    as she cleared the front seat leaving behind a crack pipe which he sat on as they began the trip.

2    Plaintiff did not protest when Morehouse ignored the presence of a "security guard" shining a

3    flashlight into the back of the stolen car, even though neither of them had ever seen security

4    guards in the area before.  He ignored Officer Clift's repeated commands "Stop. Police," noises

5    from the front tire being rapidly deflated, and the continued presence of the officer shining his

6    flashlight into the vehicle.  The jury should consider whether Mr. Tubar's own conduct

7    contributed to his injury.

8

9        "Contributory negligence is generally [an issue] for the for jury to determine from all the

10   facts and circumstances of the particular case." *Bertsch v. Brewer*, 97 Wn.2d 83, 91, 640 P.2d

11   771 (1982).  The Court should instruct on contributory negligence unless the evidence is "such

12   that all reasonable minds would agree that the plaintiff had exercised the care which a reasonably

13   prudent man would have exercised for his own safety under the circumstances." *Id.*

14   Plaintiff's Opposing Statement:  As stated elsewhere, Plaintiff objects to any instruction on

15   contributory negligence.  Plaintiff cannot be deemed "negligent" for being a passenger in Ms.

16   Morehouse's car.  Defendant's factual allegations are merely innuendo intended to play to jurors'

17   potential biases and prejudices against a young man who went to the grocery store with a young

18   woman.  And there is no evidence that Plaintiff "ignored" Officer Clift's purported "commands"

19   to stop.  Both Ms. Morehouse and Mr. Tubar have testified that they heard no such commands.

20

21       Both have similarly testified that they did not hear or notice that the tire had deflated.

22   Plaintiff also objects to Defendants labeling this their "claim" for contributory negligence.  If this

23   instruction is given at all, it should be modified to read that the jury "may consider whether or

24   not the plaintiff was contributorily negligent.

25

26

27

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Plaintiff also objects to the slanted statement that "Defendants claim that, by accompanying Ms. Morehouse under the circumstances, plaintiff was contributorily negligent." That statement should be confined to the "Claims and Defenses" instruction outlining the positions of the parties if it is to be included anywhere, but it should not be included in a substantive instruction.

As indicated above, and in plaintiff's trial brief, should the court find plaintiff's evidence of Monell liability based on inadequate supervision and discipline, plaintiff's claim for negligence may be withdrawn to avoid confusion.

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**DEFENDANTS' INSTRUCTION NO. 30**

TEGMAN INSTRUCTION

If you find in favor of plaintiff on the state law negligence claim, you must also consider whether Ms. Morehouse's intentional conduct was a proximate cause of plaintiff's injuries and damages.

A person acts with intent to achieve a particular result if the evidence demonstrates either (1) that the person wants to achieve the particular result or (2) that the person knows the particular result is substantially certain to follow from his or her conduct. This instruction relating to whether the driver acted intentionally should guide your deliberations only as to Ms. Morehouse's state of mind at the time, and not the conduct of other individuals or parties.

WPI (5th ed.) 15.01 (modified); *Tegman v. American Medical Investigations*, 150 Wn.2d 102, 109 (2003); *Hanson PLC v. National Union*, 58 Wn. App. 561, 571 (1990); *Bradley v. American Smelting*, 104 Wn.2d 677, 682 (1985).

**DEFENDANTS' PROPONENTS' STATEMENT:**

If the Court instructs on the state law "negligent hiring, retention" theory, it should instruct consistent with *Tegman v. American Medical Investigations*, 150 Wn.2d 102 (2003). Washington's comprehensive scheme of apportioning liability distinguishes between negligent tort-feasors and intentional tort-feasors. *Price v. Kitsap Transit*, 125 Wn.2d 456 (1994). The liability of negligent tort-feasors is *not apportioned* to intentional tort-feasors. *Welch v. Southland*, 134 Wn.2d 629, 636-37 (1998). In this case, plaintiff strategically decided not to sue Ms. Morehouse for her intentional criminal conduct. Furthermore, he chose not to bring state law claims against Officer Clift, but he did include a negligence state law claim against the City.

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1
2
3
4
5
6

Under RCW 4.22.070, the trier of fact must determine the total fault for any injury. RCW 4.22.070(1); *Price*, *supra*. Fault under RCW 4.22 includes negligent acts and omissions. RCW 4.22 .015. But the definition of fault does not include *intentional* acts or omissions. *Tegman supra* at 109. "Intentional torts are part of a wholly different legal realm, and inapposite to the determination of fault pursuant to RCW 4.22.070(1)." *Price v. Kitsap Transit*, 125 Wn.2d at 464.

7
8
9
10
11
12
13
14
15
16

Where both negligent and intentional acts combine to cause plaintiff's damage, the *negligent actors* are jointly and severally liable for "that part of the total damage that they negligently cause." *Tegman*, 150 Wn.2d at 114. Defendants who act negligently "are not jointly and severally liable under RCW 4.22.070(1)(b) for any damages resulting from intentional acts or omissions." *Id*. at 114. These rules require a jury to assess the damages and segregate them. "The damages due to intentional acts must be segregated" from negligent acts. *Tegman*, 150 Wn.2d at 115. And the negligent defendants are never jointly and severally liable for the intentional damages. *Id*.

17
18
19
20

Plaintiff's Opposing Statement:  As indicated above, and in plaintiff's trial brief, should the court find plaintiff's evidence of Monell liability based on inadequate supervision and discipline, plaintiff's claim for negligence may be withdrawn to avoid confusion.

21
22
23
24
25
26
27

Plaintiff also strongly disagrees that Defendants are entitled to any apportionment on the negligence claim relating to Ms. Morehouse's alleged intentional conduct. Apportionment of "fault" does not include intentional tortfeasors, and the jury is not entitled to apportion fault to them. Washington's statutory definition of "fault" excludes intentional conduct, so the acts of alleged intentional tortfeasors fall outside that statute and "fault" cannot be allocated to them. Under *Welch v. Southland Corp.*, 134 Wn.2d 629, 952 P.2d 162 (1998), as affirmed in *Tegman v. Accident & Medical Investigations, Inc.*, 150 Wn.2d 102, 75 P.3d 497 (2003), negligent

DISPUTED JURY INSTRUCTIONS - 76

No. C05-1154 JCC

defendants cannot segregate damages or allocate their fault to non-party intentional tortfeasors. *See also Rollins v. King County Metro Transit,* 148 Wash.App. 370, 376, 199 P.3d 499, 502 (Wash.App. Div. 1,2009) (citing *Welch*, noting that "under the statute, apportionment occurs only between at fault entities, which do not include intentional tortfeasors. The Supreme Court thus held that a negligent defendant is not entitled to apportion liability to an intentional tortfeasor.").  Because RCW 4.22.015 excludes intentional acts from the definition of fault, fault cannot be allocated to intentional tortfeasors under RCW 4.22.070(1).  *See Morgan v. Johnson*, 137 Wn.2d 887, 895-98, 976 P.2d 619, 622-23 (1999) ("a negligent tortfeasor is not entitled to apportion liability to an intentional tortfeasor."); *Price v. Kitsap Transit*, 125 Wn.2d 456, 464, 886 P.2d 556, 560 (1994) ("[I]ntentional torts are part of a wholly different legal realm and are inapposite to the determination of fault pursuant to RCW 4.22.070(1)."); Further, the facts of this case fall squarely under *Welch* and not *Tegman*, as Ms. Morehouse is not a party to this litigation.  These cases stand for the proposition that "fault" may not be apportioned to a non-party intentional tortfeasor.

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

2

3

**DEFENDANTS' INSTRUCTION NO. 31**

DEADLY WEAPON – DEFINITION

4

A statute provides:

5

6

    "Deadly weapon" shall include any vehicle which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm.

7

8

9

10

11

RCW 9A.04.110(6); *United States v. Aceves-Rosales,* 832 F.2d 1155, 1157 (9th Cir. 1987)

12

13

**DEFENDANTS' PROPONENTS' STATEMENT:**

14

    This instruction informs jurors that a vehicle can be considered a "deadly weapon" under

15

Washington law and is necessary for their consideration of Ms. Morehouse's intentional conduct

16

as a proximate cause of plaintiff's damages.

17

    Since one of the factors to be considered in determining objective reasonableness is "the

18

severity of the crime or other circumstances to which the officer was responding," the jury

19

should be instructed that, under Washington law, a vehicle is a deadly weapon if driven in a

20

manner "readily capable of causing death or substantial bodily harm."  RCW 9A.04.110(6).

21

22

23

<u>Plaintiff's Opposing Statement</u>:  Plaintiff objects to this instruction as slanted for the obvious

24

purpose of implying to the jury that Ms. Morehouse was intending to drive at Officer Clift, using

25

her car as a deadly weapon.  No other instruction contains the phrase "deadly weapon" and so

26

does not need to be defined.  In addition, it is not a term governing federal constitutional law.

27

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1   This notion is adequately covered by other instructions directing the jury to determine whether

2   Officer Clift reasonably perceived that he was in danger of death or serious bodily harm.  The

3   jury does not need a separate instruction to know that a car can cause serious injury or death.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DISPUTED JURY INSTRUCTIONS - 79

No. C05-1154 JCC

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

**DEFENDANTS' INSTRUCTION NO. 32**

2

RIGHT AND DUTY TO ENFORCE LAWS; SELF-DEFENSE

3

Officer Clift, as a commissioned police officer for the City of Kent, has a right and a duty

4

to enforce criminal laws within the city and to take reasonable actions to apprehend law violators

5

when he has reason to believe a violation has occurred.  He is authorized to use reasonable force

6

in preventing the escape of a criminal suspect, and may use reasonable force including deadly

7

force if objectively reasonable under the circumstances, to protect himself from the risk of

8

substantial bodily harm or death.

9

10

"Substantial bodily harm" means bodily injury which involves a temporary but

11

substantial disfigurement, or which causes a temporary but substantial loss or impairment of the

12

function of any bodily part or organ, or which causes a fracture of any bodily part."

13

14

RCW 10.93.070; RCW 9A.04.110(4)(b); *Bailey v. Forks*, 737 P.2d 1257 (1987)

15

16

**DEFENDANTS' PROPONENTS' STATEMENT:**

17

18

The defense is proposing this affirmative statement of Officer Clift's right and duty to

19

enforce the law and apprehend violators.  Further, the instruction defines "substantial bodily

20

harm" which is language used in the deadly weapon statute which specifically includes vehicles

21

if driven in an assaultive manner.

22

23

Plaintiff's Opposing Statement:  Plaintiff objects to this one-sided and unnecessary instruction.

24

By cloaking Officer Clift in a higher status of being "commissioned" with a "right and duty" and

25

the "authority" to act, defendants are attempting to bolster his credibility and justify his actions

26

based on unwarranted assumptions.   If the Court is inclined to give this instruction, Plaintiff

27

DISPUTED JURY INSTRUCTIONS - 80

No. C05-1154 JCC

1    contends that his proposed instruction regarding credibility of law enforcement officer witnesses

2    is imperative.

3          The first part of this instruction would purport to overrule *Tennessee v. Garner* by

4    holding that an officer is permitted to stop a stolen vehicle by shooting at it.

5          Further, Plaintiff objects to Defendants definition of "substantial bodily harm" in

6    particular because it lowers the threshold of what is "substantial" by including "temporary"

7    injuries, includes "impairment" (an undefined term), and includes "a fracture of any bodily part."

8    This definition, read in conjunction with other instructions Defendants propose, means that if

9    Officer Clift perceived his finger might get broken, he would be justified in using deadly force to

10   prevent it.

DISPUTED JURY INSTRUCTIONS - 81

No. C05-1154 JCC

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

## PLAINTIFF'S INSTRUCTION NO. 21

2

### COMPENSATORY DAMAGES – BURDEN OF PROOF AND MEASURES OF DAMAGES

3

4      It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

5

6      If you find for the plaintiff, you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was

7    caused by the defendant. You should consider the following:

8    In determining the measure of damages, you should consider:

9          The nature and extent of the injuries;

10         The disability, disfigurement, loss of enjoyment of life plaintiff has experienced and which with reasonable probability will be experienced in the future;

11

12         The mental, physical, emotional pain and suffering experienced and which with reasonable probability will be experienced in the future;

13         The reasonable value of necessary medical or health care, treatment, counseling and services received to the present time;

14

15         The reasonable value of necessary medical or health care, treatment, counseling and services which with reasonable probability will be required in the future;

16         The reasonable value of wages and earnings lost to the present time;

17         The reasonable value of necessary household help plaintiff required to the present time;

18    It is for you to determine what damages, if any, have been proved.

19    Your award must be based upon the evidence presented at trial.

20

21    Plaintiff's Proposing Statement:  Plaintiff will present evidence on each of the above categories.

22    Specifically, plaintiff to this day has not fully recovered emotionally, and has been forever

23    changed by the experience.  He experienced excruciating pain from the bullet wounds and

24    medical treatment.  He needs future monitoring of the bullet to make sure that it has not

25    migrated.  Finally, plaintiff will present evidence that his sister had to take care of him in the

26    weeks after the shooting.

27

DISPUTED JURY INSTRUCTIONS - 82

No. C05-1154 JCC

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1    Ninth Circuit Pattern Jury Instruction 5.1 and 5.2 (modified)

2

3    <u>Defendants' Opponents' Statement</u>:  Plaintiff's statement lists elements of damages that will not

4    be covered by the evidence.  There will be no admissible proof of future "mental or physical,

5    disability, disfigurement, or loss of enjoyment of life; likewise there will be no admissible proof

6    of the need for any future treatment or past "necessary household help."  The proposal also

7    leaves off the Model Instruction language in the last sentence:  "Your award must be based upon

8    evidence and not upon speculation, guesswork or conjecture."

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**DEFENDANTS' INSTRUCTION NO. 15**

DAMAGES – PROOF/MEASURE OF TYPES OF DAMAGES

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff, you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant. You should consider the following:

In determining the measure of damages, you should consider:

The nature and extent of the injuries;

The physical and emotional pain and suffering experienced;

The reasonable value of necessary medical care, treatment, and services received to the present time; and

The reasonable value of earnings lost to the present time.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

9th Cir. Model Civil Jury Instructions 5.1 – 5.2

DISPUTED JURY INSTRUCTIONS - 84

No. C05-1154 JCC

1

**DEFENDANTS' PROPONENTS' STATEMENT:**

2    This listing of elements covers the anticipated items of damages available in this case

3 which can be supported by reasonable medical probability.

4

5 <u>Plaintiff's Opposing Statement</u>:  This instruction does not include all elements of damages that

6

7 Plaintiff's evidence will support.  See comments in support of prior instruction.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DISPUTED JURY INSTRUCTIONS - 85

No. C05-1154 JCC

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

**DEFENDANTS' INSTRUCTION NO. 16**

DAMAGES - MITIGATION

The plaintiff has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

      1.      that the plaintiff failed to use reasonable efforts to mitigate damages; and

      2.      the amount by which damages would have been mitigated.

9th Cir. Model Civil Jury Instruction (2007) 5.3

DISPUTED JURY INSTRUCTIONS - 86

No. C05-1154 JCC

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1

**DEFENDANTS' PROPONENTS' STATEMENT:**

2

The defense expects evidence to show plaintiff's psychologist repeatedly recommended

3

medication to treat his emotional condition following this incident.

4

5

6

Plaintiff's Opposing Statement: Plaintiff objects to this instruction because it does not give a

7

context or criteria for efforts a plaintiff must take under the facts of this case.

8

It cannot be argued that Plaintiff did not fully mitigate his physical damages, as his time

9

of physical disability was relatively short.  So it is not clear what Defendants are alleging that

10

Plaintiff failed to mitigate.  Similarly, Defendants have identified no witnesses or documents that

11

support this affirmative defense.  They have no expert witness who will testify regarding what

12

Plaintiff reasonably should have done to mitigate damages.  (Indeed, they have precluded

13

Plaintiff from calling their Rule 35 expert Dr. Fred Wise, as he concurred in plaintiff's treating

14

psychologist's diagnosis).  As this is an affirmative defense, Defendants had an obligation to

15

identify witnesses and documents under Rule 26(a) as part of their initial disclosures.  Failure to

16

do so precludes use of such evidence at trial.  *See* Rule 37.

17

18

19

20

21

22

23

24

25

26

27

DISPUTED JURY INSTRUCTIONS - 87

No. C05-1154 JCC

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

# PLAINTIFF'S INSTRUCTION NO. 22

# PUNITIVE DAMAGES

If you find that Officer Clift violated plaintiff's constitutional rights, you may, but are not required to, award punitive damages against Officer Clift. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate a plaintiff.

The plaintiff has the burden of proving by a preponderance of the evidence that punitive damages should be awarded, and, if so, the amount of any such damages.

You may award punitive damages only if you find that Officer Clift's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by the misuse or abuse of authority or power or by the taking advantage of some weakness or disability or misfortune of the plaintiff.

In awarding punitive damages, you may consider

1.  the relationship between the punitive damages award and the harm likely to result from the defendant's conduct in the future as well as the harm that actually has occurred;
2.  the degree of reprehensibility of the defendant's conduct;
3.  the duration of that conduct;
4.  the defendant's awareness, any concealment, and the existence and frequency of similar past conduct; and
5.  the existence of other civil awards against the defendant for the same conduct.

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct.

Under no circumstances should your award of punitive damages exceed 10 times the amount you award for compensatory damages.

Punitive damages may not be awarded against the City of Kent.

Plaintiff's Proposing Statement:  Plaintiff has attempted to fashion his punitive damage instructions in a way that comports with the growing Supreme Court jurisprudence governing punitive damages.  *See, e.g., Philip Morris USA v. Williams,* 549 U.S. 346, 127 S.Ct. 1057 (2007); (punitive damages award based may not be based on jury's desire to punish defendant for harming nonparties); *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 123 S.Ct. 1513 (2003) (greater than 9-1 ratio between punitive and compensatory damages does not  comport with due process unless a particularly egregious act has resulted in only a small amount of economic damages); *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589 (1996) (grossly excessive punitive damage award violates due process); *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032 (1991) (in light of jury  instruction stating that purpose of punitive damages was to punish defendant and to protect public by deterring future wrongdoing and that jury had to consider character and degree of wrong shown and necessity of preventing similar wrong, punitive damage award did not violate due process).  Plaintiff has no objection to any different or additional instructional language necessary to embody the principles of these cases.  Plaintiff submits that defendant Clift's failure to offer any such instructions or to propose

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

any such language, constitutes a waiver of any objection to the terms or adequacy of the

instruction on punitive damages.

Ninth Circuit Pattern Jury Instruction 5.5 (modified)

*Pacific Mut. Life Ins. Co. v. Haslip*  499 U.S. 1, 21-22, 111 S.Ct. 1032, 1045 (1991)


<u>Defendants' Opponents' Statement</u>:  It is difficult to imagine what evidence in this case would

support a finding that Officer Clift acted in a manner  "malicious, oppressive or in reckless

disregard of the plaintiff's rights."  Plaintiff is forced to make arguments addressed to matters the

jury should not even consider—"subjective" concerns like the officer's "real purpose."  Parts of

the proposed instruction appear simply made up.  For example, the list of factors that the jury

*must* consider is absent from the Model Instruction, as well as the case cited.  Contrary to

plaintiff's position, *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991), approves of jury

discretion, subject to the bounds of the jury instruction.  It did not promulgate mandatory factors,

as plaintiff urges.


Similarly, there is nothing in the authorities cited that poses a target of "ten times compensatory

damages."  This is a transparent attempt to frame the jury's analysis and imply that a factor of

ten (or a multiplier in general) is normal.  It is improper to instruct in this regard.  The "list of

factors" and "use of multipliers" have no legal basis in the punitive damages instruction, and

should not be offered.

DISPUTED JURY INSTRUCTIONS - 90

No. C05-1154 JCC

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1

2

3

**PLAINTIFF'S INSTRUCTION NO. 23**

4

**RETURN OF VERDICT**

5

6

A verdict form has been prepared for you. After you have reached unanimous agreement

7

on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it,

8

and advise the court that you are ready to return to the courtroom.

9

10

11

12

13

14

Ninth Circuit Pattern Jury Instruction 3.3

15

16

17

18

19

20

21

22

23

24

25

26

27

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

**DEFENDANTS' INSTRUCTION NO. 13**

RETURN OF VERDICT

~~A verdict form has been prepared for you. [*Any explanation of the verdict form may be given at this time.*]~~  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

You will be given the exhibits admitted in evidence and these instructions.  You will also be given a special verdict form that consists of several questions for you to answer.  You mist answer the questions in the order in which they are written, and according to the directions on the form.  It is important that you read all the questions before you begin answering, and that you follow the directions exactly.  Your answer to some questions will determine whether you are to answer all, some, or none of the remaining questions.

9th Cir. Model Civil Jury Instruction (2007) 3.3; WPI (5th ed.) 1.11 (modified)

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1

**DEFENDANTS' PROPONENTS' STATEMENT:**

2     The Court should instruct the jury on completing the special verdict form.  Underlined

3  language is taken from Washington Patter Instruction 1.11

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961